

1920 L Street, N.W., Suite 535
Washington, D.C. 20036

150 South Wacker Drive, Suite 2400
Chicago, IL 60606

October 12, 2021

**Via ECF**
The Honorable Carol Bagley Amon, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Zobay et al. v. MTN Group Ltd., et al.*, No. 1:21-cv-3503

Dear Judge Amon,

We represent the Plaintiffs in the above-captioned matter. We write to respond to ZTE (USA), Inc.'s ("ZTE USA") and ZTE (TX) Inc.'s ("ZTE TX" and, with ZTE USA, "Defendants") letter requesting a conference prior to filing a motion to dismiss (the "ZTE Letter") (D.I. 24).[1]

### I. Plaintiffs State Primary and Secondary Liability Claims Under the ATA

Plaintiffs are 53 Americans who were injured, or whose loved ones were killed or injured, in attacks committed by Joint Cells of Iran-backed terrorists in Iraq. The Joint Cells were comprised of Lebanese Hezbollah, the IRGC Qods Force, and Jaysh al-Mahdi, and Plaintiffs' loved ones were attacked by these terrorists who received direct and indirect support from Defendants.

Plaintiffs' Complaint sets forth detailed allegations regarding each of ZTE USA and ZTE TX deliberately facilitating illicit transactions enabling notorious terrorist front companies, including Irancell and TCI, to serve their purpose: to channel millions of dollars and vital weapons technology components key for making bombs and rockets to Iran's terrorist proxies Lebanese Hezbollah and Jaysh al-Mahdi, for use to attack Americans in Iraq. Compl. ¶¶ 322–51. The Complaint adequately alleges that Joint Cells used Defendants' financial and technical resources, which flowed through their illicit deals with Irancell and TCI, to reach Hezbollah and Jaysh al-Mahdi. *Id.* ¶¶ 117–87. Funding and arming Iranian terrorist proxies was not an incidental benefit of IRGC's takeover of the Iranian telecom space: As alleged in the Complaint, funding and arming terrorists was the entire point of doing so. *Id.* ¶¶ 188–201. Plaintiffs suffered the foreseeable consequences of ZTE USA's and ZTE TX's acts, *id.* ¶¶ 435–587, and thus bring primary liability claims, *id.* ¶¶ 588–602, and a secondary liability claim for aiding-abetting, *id.* ¶¶ 603–13.

At the pleading stage, Plaintiffs' allegations are presumed true and all reasonable inferences must be made in Plaintiffs' favor. The ZTE Letter, however, forecasts Defendants' intent to mischaracterize, recast, and/or ignore Plaintiffs' well-pleaded allegations and the reasonable

---

[1] Plaintiffs do not believe the Court should grant leave to file a motion to dismiss but, should the Court decide otherwise, may amend their Complaint upon review of Defendants' full motion.

SPARACINO
—— PLLC

inferences therefrom. For example, Plaintiffs detail how the IRGC, including the Qods Force, executed a comprehensive takeover of Irancell and TCI in the early 2000s. *Id*. ¶¶ 117–87. The Complaint further alleges that, by no later than 2004, ZTE USA and ZTE TX each understood Irancell and TCI were fronts for the IRGC, including the Qods Force, which funded and logistically armed Iranian terrorist proxies generally, and Lebanese Hezbollah specifically. *Id*. ¶¶ 188–201. Defendants wish to cast Plaintiffs' allegations as being about general economic growth in Iranian telecom, which indirectly flowed to terrorists. While there is a question of law as to whether Defendants' characterization would plausibly state an ATA claim, Plaintiffs allege much more, and with specificity, sufficient to state their claims.

**Primary Liability (Counts I and II).** Plaintiffs sufficiently allege the "act of international terrorism" element for primary liability because Defendants' counterparties Irancell and TCI, unlike the counterparties in every case cited by Defendants, were notorious terrorist fronts. *See id*. Irancell and TCI were specifically known to pursue the sub-species of illicit economic transactions alleged for the purpose of aiding Hezbollah terrorist attacks against Americans in the Middle East. *Id*. ¶¶ 117–58. The primary liability cases cited by Defendants are inapposite because, *inter alia*, (1) Plaintiffs allege ZTE USA's and ZTE TX's financial and technical resources flowed through Irancell and TCI to the IRGC, including the Qods Force, Hezbollah, and Jaysh al-Mahdi, *e.g.*, *id*. ¶¶ 8, 53, 119–20, 138, 146, 151, 177–78, 334, 363, 446–51, and therefore ZTE USA and ZTE TX transferred value directly aiding the "person" who attacked Plaintiffs; (2) Plaintiffs allege ZTE USA and ZTE TX purposefully reached into the United States for technology they knew would be used against Americans, and Plaintiffs have plausibly alleged that ZTE USA and ZTE TX supported ZTE Corporation's pro-Taliban corporate strategy, *id*. ¶¶ 359–74; and (3) Plaintiffs allege that Defendants agreed to the Qods Force's "terrorist template" contract, *id*. ¶¶ 364–67. Plaintiffs' "act of international terrorism" allegations are the type that have been approved time and again. *See*, *e.g.*, *Schansman v. Sberbank of Russia PJSC, et al.*, 2021 WL 4482172, at *6 (S.D.N.Y. Sept. 30, 2021); *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 46–47 (E.D.N.Y. 2019); *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 690–91 (7th Cir. 2008); *Wultz v. Islamic Rep. of Iran*, 755 F. Supp. 2d 1, 53 (D.D.C. 2010); *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1317–18 (S.D. Fla. 2018).

Plaintiffs also more than sufficiently allege proximate causation. For example, Plaintiffs allege a direct line from Defendants' illicit conduct[2] to the Joint Cells—comprised of the IRGC, including the Qods Force, Hezbollah (which itself is a part of the IRGC), and Jaysh al-Mahdi (Hezbollah's and the IRGC's Shiite terrorist proxy in Iraq)—that committed the attacks that injured Plaintiffs, and Plaintiffs further allege ZTE technology was in the EFP, rocket, and kidnapping attacks that injured Plaintiffs. *Id*. ¶¶ 29–63, 117–87, 435–51. These types of allegations were sufficient to state claims of primary liability even in the cases cited in the ZTE Letter, as well as many others. *See*, *e.g.*, *Schansman*, 2021 WL 4482172, at *6; *Miller*, 372 F. Supp. 3d at 46–47; *Boim*, 549 F.3d at 690–91; *Wultz*, 755 F. Supp. 2d at 53; *Chiquita*, 284 F. Supp. 3d at 1317–18.

---

[2] Defendants' recharacterizations of Plaintiffs' allegations regarding Defendants' shocking misconduct are notable given ZTE Corporation's admitted criminal conduct on core matters related to the Complaint, conduct for which it pleaded guilty. Compl. ¶¶ 323, 332, 354.

SPARACINO PLLC

**Secondary Liability (Count III).** Plaintiffs successfully allege secondary liability under *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854–67 (2d Cir. 2021), as well as this Court's prior opinion in *Bartlett v. Société Générale de Banque Au Liban SAL*, 2020 WL 7089448, at *8–16 (E.D.N.Y. Nov. 25, 2020).[3] Defendants assert Plaintiffs must allege Defendants "substantially assisted" a designated FTO, but that is not the law. Under JASTA, Plaintiffs need allege only that Defendants substantially assisted, directly or indirectly, the "person"[4] who proximately caused the act of international terrorism that injured Plaintiffs. 18 U.S.C. § 2333(d). Plaintiffs allege Defendants' illicit transactions allowed millions of dollars' worth of funds and equipment to flow through to Hezbollah and the other Joint Cell members for use in attacks against Americans in Iraq. *Id*. ¶¶ 8, 53, 119–20, 138, 146, 151, 177–78, 334, 363, 446–51. After *Kaplan*, such allegations are the heartland of JASTA aiding-abetting liability. Defendants' other arguments lack merit.[5]

## II. This Court May Exercise Personal Jurisdiction Over Defendants

This Court may exercise personal jurisdiction over Defendants because Defendants have ample contacts with the forum (the United States as a whole). Plaintiffs seek to hold Defendants accountable under the ATA and JASTA, including those statutes' nationwide service provisions. Defendants do not contest, nor could they, that each of ZTE USA's and ZTE TX's conduct has a close nexus to the United States—Defendants contest only the nexus to New York. Under the ATA, however, the forum is the entire United States, not just any one state, and as long as the Defendants' contacts with the United States satisfy the requirements of Due Process, any District Court may exercise jurisdiction if (a) one or more Plaintiffs resides from the District; and/or (b) one or more Defendants hail from the District. 18 U.S.C. § 2334(a). Personal jurisdiction over each Defendant is proper under this standard.

## III. Plaintiffs Have Permissibly Pleaded Allegations Against Each ZTE Defendant

Plaintiffs allege that ZTE USA and ZTE TX each knowingly facilitated illicit transactions between ZTE Corporation (their Chinese parent), on the one hand, and Iranian terrorist front counterparties, Irancell and TCI, on the other by, among other things, providing the critical—and irreplaceable—U.S. technology the terrorist fronts needed. Compl. ¶¶ 322–351. The Complaint sufficiently alleges facts specific to each Defendant.

Sincerely,

/s/ Eli J. Kay-Oliphant
ELI J. KAY-OLIPHANT
SPARACINO PLLC

cc: All counsel of record (via ECF)

---

[3] Notably, Defendants omit any discussion of *Kaplan* or *Bartlett* in the ZTE Letter.

[4] Here, Plaintiffs specifically allege that "person" is Lebanese Hezbollah, the IRGC, including the Qods Force, and Jaysh al-Mahdi, acting together as a Joint Cell.

[5] Plaintiffs respectfully submit that they sufficiently allege Defendants' general awareness (*e.g.*, Compl. ¶¶ 189, 190, 195, 332) and allege with sufficient specificity the illicit transactions at issue (*e.g.*, *id.* ¶¶ 589, 590, 610). Further, that Defendants' illicit transactions evaded sanctions does not exculpate them; and, regardless, Plaintiffs allege more and with sufficient specificity to state their claims.