

1920 L Street, N.W., Suite 535
Washington, D.C. 20036

150 South Wacker Drive, Suite 2400
Chicago, IL 60606

November 12, 2021

**Via ECF**
The Honorable Carol Bagley Amon, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Zobay et al. v. MTN Group Ltd., et al.*, No. 1:21-cv-3503

Dear Judge Amon,

We represent the Plaintiffs in the above-captioned matter. We write to respond to MTN Group's and MTN Dubai Ltd.'s ("MTN Dubai" and, with MTN Group, "MTN") letter filed on November 5, 2021, requesting a conference prior to filing a motion to dismiss (the "MTN Letter") (D.I. 36).[1]

## I.     Plaintiffs State Primary and Secondary Liability Claims Under the ATA

Plaintiffs are 53 Americans who were injured, or whose loved ones were killed or injured, in attacks committed by Joint Cells of Iran-backed terrorists in Iraq, comprised of Lebanese Hezbollah, the IRGC (including its Qods Force), and Jaysh al-Mahdi, that targeted Americans in Iraq from 2011 through 2016. Plaintiffs were injured and killed by terrorists who received direct and indirect support from MTN Irancell, MTN Group, and MTN Dubai (the "MTN Defendants").[2]

Plaintiffs' Complaint sets forth detailed allegations regarding MTN Irancell's, MTN Group's, and MTN Dubai's acts, including committing to a joint venture with the IRGC (including the Qods Force) through which the MTN Defendants deliberately facilitated illicit transactions enabling notorious terrorist front companies, including Irancell and TCI, to channel millions of dollars, and vital weapons technology—useful and necessary to make roadside bombs, rockets, and to conduct kidnapping operations—to Iran's terrorist proxies Lebanese Hezbollah and Jaysh al-Mahdi, for use to attack Americans in Iraq. Compl. ¶¶ 202–321. Plaintiffs suffered the foreseeable consequences of Defendants' acts, *id.* ¶¶ 435–587, and accordingly, seek relief.

At the pleading stage, Plaintiffs' allegations are presumed true, and all reasonable inferences must be made in Plaintiffs' favor. The MTN Letter mischaracterizes, recasts, and/or ignores Plaintiffs' well-pleaded allegations and reasonable inferences therefrom. For example, MTN's recasting of

---

[1] Plaintiffs and all served defendants (including MTN and the ZTE Defendants) have met and conferred regarding timing for defendants' motions to dismiss and have agreed on a proposed briefing schedule whereby defendants will file their motions to dismiss by January 14, 2022, Plaintiffs' oppositions would be due March 15, 2022 and Defendants' replies would be due April 14, 2022. Plaintiffs do not believe the Court should grant leave to file the motions to dismiss but, should the Court decide otherwise, may amend their Complaint upon review of the motions.
[2] MTN's IRGC joint venture partner MTN Irancell appears unlikely to enter an appearance, consistent with the Iranian regime's general hostility towards the legitimacy of the United States. *See* Compl. ¶¶ 122 (Ayatollah's foundation, and MTN Group joint venture partner, the Bonyad Mostazafan as terrorist front), 31 (Ayatollah leading Death to America exultations), 301 (Iran recognizing U.S. as the "Great Satan").

SPARACINO
—— PLLC

Plaintiffs' "principal theory" as one regarding "profits from selling phone services to Iranians," MTN Letter at 1, does justice neither to Plaintiffs' allegations nor the specificity of the same. While it is true that sharing hundreds of millions—if not billions—in profits with a notorious anti-American terrorist front, as the MTN Defendants did, supports liability under the ATA and JASTA, Plaintiff allege much, much more. For example, the Complaint details how MTN Group orchestrated a joint venture with known terrorist fronts,[3] with the express understanding they would work with the Qods Force to advance the latter's "security" agenda outside of Iran, which MTN was generally aware to be a euphemism for anti-American terrorism. *Id.* ¶¶ 202–18.

With regard to primary liability,[4] the MTN Letter asserts in relevant part that Plaintiffs do not plausibly allege that either MTN aided and abetted Iraqi militants or that the MTN Defendants themselves committed acts of terror. But the Complaint alleges enough, including that terrorist Joint Cells used MTN Irancell's, MTN Group's, and MTN Dubai's financial and technical resources, which flowed through MTN's joint venture with the IRGC, including the Qods Force, through Irancell, to reach Hezbollah. *Id.* ¶¶ 117–87. These were more than vanilla commercial transactions. Indeed, funding and arming Iranian terrorist proxies was not an incidental benefit to the IRGC's (including the Qods Force's) takeover of the Iranian telecom space: As alleged in the Complaint, funding and arming terror was the entire point of the exercise. *Id.* ¶¶ 188–201.

Regarding secondary liability,[5] MTN asserts Plaintiffs failed to sufficiently allege MTN had "general awareness" it was assuming a role in terrorism. But the Complaint alleges a pattern of illicit payments, some of which were denominated in Dollars and transacted through New York banks lasting from 2007 through the present. *Id.* ¶¶ 219–53. The Complaint also alleges that MTN Group reached into the United States to source sanctioned dual-use military goods for the specific purpose of aiding the Qods Force and its terrorist proxies. *Id.* ¶¶ 254–86. Plaintiffs also allege the MTN Defendants sourced weapons for the Qods Force. *Id.* ¶¶ 212, 226–28. And Plaintiffs have specific allegations that the MTN Defendants did all that with actual knowledge its transactions were enabling terror—to wit, that was the stated point of the exercise. *Id.* ¶¶ 236–286. Plaintiffs have therefore alleged sufficiently, at this stage, MTN's knowledge and substantial assistance.[6]

## II. This Court May Exercise Personal Jurisdiction Over Defendants

The MTN Defendants relied upon the U.S. financial system to pay millions in U.S. Dollar-denominated bribes to secure their joint venture with the IRGC, including the Qods Force, through Qods Force's front, Irancell. *Id.* ¶¶ 219–23, 311–13. At the request of their Qods Force joint venture partners, the MTN Defendants used their agents in Dubai, identified with precision in the

---

[3] MTN raises a factual issue, improper to be resolved at the pleading stage, regarding whether MTN Irancell's shareholders were known to be IRGC fronts—at this stage, Plaintiffs have plausibly and specifically alleged enough to learn more through discovery.
[4] Because MTN relies on many of the same legal arguments the ZTE Defendants raised regarding primary liability in their pre-motion letter, Plaintiffs incorporate their response to ZTE's pre-motion letter on those points. D.I. 27.
[5] Because MTN relies on many of the same legal arguments the ZTE Defendants raised regarding secondary liability in their pre-motion letter, Plaintiffs incorporate their response to ZTE's pre-motion letter on those points. D.I. 27.
[6] MTN's FTO argument is misplaced and premature at this stage given Plaintiffs' allegation that Lebanese Hezbollah planned, authorized, and jointly committed each attack through Joint Cells in Shiite terrorist strongholds in Iraq, like Sadr City. Here, MTN raises factual questions regarding specific linkages of particular FTOs to particular attacks which cannot be resolved at this stage. In any event, Plaintiffs plausibly allege the terrorists worked in Joint Cells in key Iraqi geographies at all relevant times, and each attack was jointly committed with an FTO (Hezbollah).

**SPARACINO**
PLLC

Complaint, to reach into the United States and obtain specific technology, *id.* ¶¶ 254–61, the Qods Force tasked MTN to obtain pursuant to MTN's contractual pledge the Qods Force's "security" needs, *id.* ¶¶ 209–11, 227, 237. The MTN Defendants' transfer of sanctioned U.S. weapons technology to the Qods Force accomplished its intended purpose, magnifying the potency of the terrorist attacks in Iraq against Americans jointly committed by the IRGC, including the Qods Force, with Lebanese Hezbollah and Jaysh al-Mahdi. *Id.* ¶¶ 159–87.

MTN expressly aimed its conduct at the United States by entering a joint venture with a known anti-American terrorist front and providing funds and weapons directly to the IRGC, including the Qods Force, and Lebanese Hezbollah, through Irancell, which MTN knew would fund and arm attacks against Americans. *Id.* ¶¶ 188–201, 208–11, 300–09. By purposefully funding such attacks, MTN subjected itself to jurisdiction here. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 678–79 (2d Cir. 2013) (extending jurisdiction to defendants that provided "support directly to al Qaeda when al Qaeda allegedly was known to be targeting the United States").

The MTN Defendants purposefully availed themselves of the benefits of the United States. And Plaintiffs allege a broad array of separate U.S. contacts by the MTN Defendants relevant to Plaintiffs' claims. Indeed, Plaintiffs allege MTN, inter alia, used the U.S. financial system to fund the IRGC, including the Qods Force, Compl. ¶¶ 219–23, 311–13, used agents to reach into the U.S. to illicitly acquire weapons parts for the IRGC, including the Qods Force, *id.* ¶¶ 254–61, and expressly targeted the United States by contractually pledging to affirmatively aid Iran's "security" agenda, *id.* ¶¶ 209–11, 227, 237, which MTN knew was designed to inflict violence against America and its allies, *id.* ¶¶ 30–31. MTN quibbles with dollar amounts and disingenuously questions the importance to the terrorists of embargoed U.S. technology, but those attempts to recast Plaintiffs' allegations ignore the robust contacts Plaintiffs allege MTN had with the U.S., which are more significant and developed than cases in which plaintiffs' ATA claims have survived. *See*, *e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 172–73 (2d Cir. 2013).

Plaintiffs' claims arise out of or relate to MTN's U.S. contacts. MTN's U.S. Dollar transfers flowed to the Qods Force and its allies through New York, MTN's technology transfers of U.S. weapons-related technologies to the Qods Force flowed through MTN's U.S. agents (as it must have, because they included U.S. technology), and MTN's joint venture targeted the U.S. by affirmatively supporting Iran's "security" agenda.

Sincerely,

*/s/ Ryan R. Sparacino*

Ryan R. Sparacino (admitted *pro hac vice*)
Sparacino PLLC
1920 L Street, N.W., Suite 535
Washington, DC  20036
ryan.sparacino@sparacinopllc.com

cc:    Counsel of Record (via ECF)

3