1

```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - - -X
 3   STEPHANIE ZOBAY,                  : 21-CV-3503 (CBA)
     individually, and for the         :
 4   Estate of STEPHEN S.              :
     EVERHART, ET AL.                  :
 5                                     :
               Plaintiffs,             :
 6                                     : United States Courthouse
          -against-                    : Brooklyn, New York
 7                                     :
     MTN GROUP LIMITED, MTN            :
 8   IRANCELL, MTN DUBAI LIMITED,      :
     ZTE CORPORATION, ZTE (USA)        :
 9   INC., and ZTE (TX) INC.,          :
                                       : Tuesday, November 30, 2021
10             Defendants.             : 2:00 p.m.
     - - - - - - - - - - - - - - - - -X
11

12

13             TRANSCRIPT OF CIVIL CAUSE FOR
               TELEPHONE PRE-MOTION CONFERENCE
14         BEFORE THE HONORABLE CAROL BAGLEY AMON
                 UNITED STATES DISTRICT JUDGE
15

16


17             A P P E A R A N C E S:

18   For the Plaintiffs:       SPARACINO PLLC
                               1920 L Street, NW
19                             Suite 535
                               Washington, DC 20036
20                             BY:  RYAN SPARACINO, ESQ.
                                    ELI J. KAY-OLIPHANT, ESQ.
21
     For the Defendants        FRESHFIELDS, BRUCKHAUS & DERINGER,
22   MTN Group Limited,           US LLP
     MTN Irancell, and         601 Lexington Avenue
23   MTN Dubai Limited:        Thirty-First Floor
                               New York, New York 10022
24                             BY:  TIMOTHY P. HARKNESS, ESQ.
                                    SCOTT A. EISMAN, ESQ.
25                                  ADAM ROSENFELD, ESQ.
```

1          A P P E A R A N C E S (CONTINUED)

2
                                 AND
3
                      COVINGTON & BURLING, LLP
4                     850 Tenth Street, NW
                      Washington, DC 20001
5                     BY:  DAVID M. ZIONTS, ESQ.
                           JORDAN L. MORAN, ESQ.
6

7  For the Defendants     BLANK ROME, LLP
   ZTE (USA) Inc. and     1271 Avenue of the Americas
8  ZTE (TX) Inc.:         Suite 15th
                          New York, New York 10020
9                         BY:  FRANK DANTE, ESQ.
                               MARTIN S. KREZELIEK, ESQ.
10                             MELISSA MURPHY, ESQ.
                               MIKE MARGOLIS, ESQ.
11

12 Court Reporter:        DAVID R. ROY, RPR
                          225 Cadman Plaza East
13                        Brooklyn, New York 11201
                          drroyofcr@gmail.com
14
   Proceedings recorded by Stenographic machine shorthand,
15 transcript produced by Computer-Assisted Transcription.

16

17          P R O C E E D I N G S

18
                      --ooOoo--
19

20          ( All participants appearing via telephone.)

21          THE COURT:  All right.  This is Judge Amon.  I

22 would ask my law clerk to call the case.

23          THE LAW CLERK:  This is Zobay v. MTN Group

24 Limited, 21-CV-3503.

25          For Plaintiffs, Ryan Sparacino; for MTN Group and

1  MTN Dubai Defendants, Timothy Harkness; for ZTE (USA) and
2  ZTE (TX) Defendants, Frank Dante; Court Reporter, David Roy.
3            THE COURT:  All right.  So good afternoon,
4  everyone.
5            Let me just raise an issue, and I don't think it's
6  an issue, but advise the parties.  Mr. Harkness, who
7  represents MTN, was a former law clerk of mine.  I don't
8  know, Mr. Sparacino, if you knew that, and, you know, I have
9  kept in touch with Mr. Harkness over the years.  I don't
10 think that in my mind this provides a basis for the Court to
11 recuse.  Certainly I have had absolutely no discussions
12 about this case at all with Mr. Harkness.  But I did want to
13 advise the parties of that.
14           As I say, I don't think that this provides a basis
15 for the Court to recuse, but I wanted to let the parties
16 know that for whatever use they wanted to put that
17 information.
18           Mr. Sparacino, were you aware of this?
19           MR. KAY-OLIPHANT:  Your Honor, this is
20 Eli Kay-Oliphant, I'm Mr. Sparacino's law partner.  And
21 Mr. Harkness actually reached out to us to advise us of this
22 issue.
23           THE COURT:  Uh-huh.
24           MR. KAY-OLIPHANT:  If Your Honor does not believe
25 that there is an issue, then we will not make an issue of

1    that either.
2         THE COURT:  Okay.
3         Mr. Harkness, do you have a concern?
4         MR. HARKNESS:  No, Your Honor.  And I did inform
5    all of the parties --
6         THE COURT:  Yeah --
7         MR. HARKNESS:  -- sometime ago.
8         THE COURT:  -- I thought you would have.  But I
9    just wanted to you know, address that right up front with
10   everyone.
11        All right.  This matter is on for a pre-motion
12   conference.
13        And, look, Mr. Sparacino, you know, the complaint
14   is 200 pages long.  I have to confess I do not have it
15   committed to memory at the present time, but could you just
16   outline for me the nature of your cause of action against
17   MTN and ZTE individually?  And also tell me whether you
18   believe that there is some correlation between the two
19   different defendants; in other words, is there some
20   inner-relationship between them that caused you to put them
21   in the same complaint?
22        MR. SPARACINO:  Yes, Your Honor.  Thank you.  To
23   answer your question directly, I would like to actually
24   briefly just discuss each.
25        With respect to MTN, our core allegation --

1  both Defendants we have sued under the Anti-Terrorism Act as
2  amended by the Justice Against --
3              THE COURT:  Right.
4              MR. SPARACINO:  -- Sponsors of Terrorism Act, or
5  JASTA.
6              THE COURT:  Right.
7              MR. SPARACINO:  Both Defendants are alleged to
8  have knowingly provided substantial assistance to the IRGC,
9  the Islamic Revolutionary Guard Corps., including its
10 foreign terror armed Qods Force, which the complaint alleges
11 flowed through the Qods Force to Lebanese Hezbollah and
12 Jaysh al-Mahdi for purposes of carrying out attacks
13 committed by joint Iranian-backed cells in Iraq.
14             With respect to MTN, the complaint alleges a
15 scheme lasting more than 15 years now.  And the core of the
16 scheme was MTN's willingness to serve as a joint venture
17 partner for a notorious terrorist front.  That is the
18 Bonyad Mostazafan, which is the largest -- as alleged in the
19 complaint, one of the largest and most notorious fronts for
20 IRGC and Lebanese Hezbollah terror and logistics being
21 known --
22             THE COURT:  Well, in what way were they associated
23 with them?  They formed a company together?  That was the
24 telecommunications company; is that --
25             MR. SPARACINO:  Yes, Your Honor.  MTN Group

Proceedings                                                                 6

1   negotiated with the IRGC, including the Qods Force, as
2   alleged in the complaint, and agreed to form a joint
3   venture, which is called MTN Irancell, in which MTN Group is
4   49 percent minority partner; and as alleged in the
5   complaint, the majority 51 percent shareholder is the IRGC
6   through this front, the Bonyad Mostazafan, and one other
7   notorious IRGC front.
8              THE COURT:  And they --
9              MR. SPARACINO:  So the --
10             THE COURT:  -- they supported them how --
11             MR. SPARACINO:  They supplied the --
12             THE COURT:  -- by forming a company or -- I'm a
13  little unclear on how you link this company to terrorist
14  actions occurring in Iraq.
15             MR. SPARACINO:  Well, the core thesis of the claim
16  against MTN is that MTN Irancell is itself a front for the
17  IRGC, including the Qods Force.  Any by that we mean
18  literally the people running MTN Irancell, according to the
19  complaint, know that they're aiding the IRGC, including the
20  Qods Force, since that is the point, the enterprise.  And
21  so --
22             THE COURT:  How are they aiding them -- how are
23  they aiding them?
24             MR. SPARACINO:  Sure.  The MTN Irancell aids the
25  IRGC, including the Qods Force, as well as Lebanese

Proceedings 7

1 Hezbollah and Jaysh al-Mahdi, through the IRGC --
2          (Pause in proceedings.)
3          MR. SPARACINO:  As alleged in the complaint,
4 MTN Irancell served as a terrorist front for the IRGC
5 Qods Force, as well as Lebanese Hezbollah, and the support
6 the MTN Irancell provided directly to those terrorist groups
7 included money, including large amounts of U.S. dollars; as
8 well as critical military components for bombs and rockets
9 and technology that support kidnapping operations.  And the
10 victims in this case are Americans who were killed by IRGC
11 joint-cell attacks that relied upon the technology and the
12 money provided by MTN Irancell.
13          So we believe that this case is different from
14 many other ATA cases in that in this case, the Defendant
15 MTN Group literally was a joint venture partner with a
16 terrorist front.  You can't say that --
17          THE COURT:  Well --
18          MR. SPARACINO:  -- about many -- yes?
19          THE COURT:  -- let me just ask a question.
20          MTN Irancell has not appeared in this action,
21 correct; or am I wrong about that?
22          MR. KAY-OLIPHANT:  Your Honor --
23          THE COURT:  Mr. Harkness?
24          MR. KAY-OLIPHANT:  I'm sorry.  This is Eli
25 Kay-Oliphant again --

Proceedings 8

1  THE COURT: Yes.
2  MR. KAY-OLIPHANT: -- Sparacino, PLLC.
3  MTN Irancell has not appeared yet. We have
4  process servers working on serving them in Iran. That is
5  in -- in process, as it were, but we don't have any final
6  service on them yet.
7  THE COURT: What about ZTE Corp.?
8  MR. KAY-OLIPHANT: We are in the process of
9  serving ZTE Corp., as well. We do not have final service
10 effectuated on them either.
11 Just to manage Your Honor's expectations as to
12 these two entities, we hope that -- we do expect ZTE Corp.
13 to eventually appear once we serve them under Chinese Law.
14 The Iranian Government, which of course as alleged
15 in the complaint, operates MTN Irancell, has a policy in
16 effect of not honoring the U.S. Courts by ever appearing in
17 them. And so we're skeptical MTN Irancell will ever enter
18 an appearance in this case. And just to the extent that
19 that's relevant, I thought I should mention that.
20 THE COURT: All right. I think the other question
21 I had was the relationship between MTN and ZTE and also what
22 your theory against ZTE is?
23 MR. SPARACINO: Yes, Your Honor. As far as to
24 Your Honor's question -- and I apologize. I apologize.
25 This is Ryan Sparacino of Sparacino, PLLC.

Proceedings 9

1    To Your Honor's question as to the relationship
2 between MTN and ZTE, the complaint alleges that, among other
3 things, they both aided and abetted the same terrorist
4 front.  And the complaint alleges that they both agreed to
5 the same IRGC Qods Force template contract, which among
6 other things as alleged in the complaint, obligated both MTN
7 and ZTE to aid Iran's, quote, "security, defenses, and
8 political" unquote, agenda.  And as alleged in the
9 complaint, "security," was a euphemism for external terror
10 operations widely understood by all.  And through that, ZTE,
11 like MTN, provided assistance directly to a known
12 anti-American terrorist front.
13         THE COURT:  But there was no relationship between
14 the two entities, correct?
15         MR. SPARACINO:  We do not allege that ZTE had any
16 relationship with MTN Group.  I believe that we have alleged
17 that ZTE aided the terrorist front activity of MTN Irancell,
18 but that's not a defendant currently appearing before
19 Your Honor.  But I agree, in general, we have not alleged
20 very much interaction with the MTN.
21         THE COURT:  Well, are they properly jointed in the
22 same complaint?
23         MR. SPARACINO:  We believe they are properly
24 joined in same complaint, because -- well, for two reasons.
25 Number one is there are several core facts that are common

1   to both defendants, most of all the -- what we call the
2   contracts, which was Exhibit 1 -- Exhibit A that we attached
3   to the complaint.  That is a contract that we believe is
4   critical to the legal analysis as to both MTN and ZTE.  And
5   for that reason, we sued them together.
6           THE COURT:  Now, your claim about personal
7   jurisdiction, it's your claim that this statute provides,
8   essentially, for nationwide jurisdiction that as long as any
9   defendant is located anywhere in the United States you can
10  sue them anywhere; is that your position?
11          MR. SPARACINO:  Yes, Your Honor, as long as -- it
12  is our position that under the Anti-Terrorism Act that as
13  long as a plaintiff resides in the District and the
14  defendant had contact with the forum -- but here "the forum"
15  is the United States, not the District of any
16  Anti-Terrorism Act, then there is personal jurisdiction.
17          THE COURT:  And you have case law that supports
18  that proposition?
19          MR. SPARACINO:  I believe so, yes, Your Honor.
20          THE COURT:  Okay.  I had one other question --
21  well, how do you have a primary claim?  I can understand
22  what at least you allege your theory is about secondary
23  liability, but how do you have a primary claim?
24          MR. SPARACINO:  Well, we're --
25          THE COURT:  And are you pursuing -- are you

1  seriously pursuing a primary claim?  We don't need to brief
2  things that you're not serious about.
3          MR. SPARACINO:  Yes, Your Honor, we are very
4  serious about our primary liability claim.  I don't think we
5  would be alleging it, frankly, if we didn't have that
6  contract.  But given that we allege that both defendants
7  signed a contract, which literally obligated them to, (A),
8  be, quote, "security," unquote, agenda of the IRGC,
9  including this Qods Force, we think that puts these
10 allegations in a very different posture primary
11 liability-wise from nearly every other -- potentially every
12 other ATA case that's been filed.  There aren't -- I mean,
13 look, there aren't many ATA cases where the defendant is
14 accused of directly engaging in a partnership with a
15 notorious FTO front -- or I shouldn't say a -- they weren't
16 a FTO at the time -- but with a notorious front that
17 funneled money and resources to FTOs.
18         THE COURT:  All right.  Now, you've seen the
19 premotion letters written by both MTN and ZTE?
20         MR. SPARACINO:  Yes, Your Honor.
21         THE COURT:  And I take it that you were willing to
22 stand on your present complaint.  I don't want the parties
23 to go through all of the time and expense of briefing these
24 issues only to have Plaintiff come back and say, Well, I can
25 amend my complaint to add X, Y, or Z.  Not that you're

1   complaint isn't long enough already, Mr. Sparacino, but...
2   You know, I'm not suggesting a 300-page complaint, but I
3   don't want everyone to be in that circumstance.
4               MR. SPARACINO:  No, I appreciate your question,
5   Your Honor.  And let me answer it with a couple of points.
6   Number one is we absolutely believe that this complaint
7   stakes its claim under the ATA.  It's an open question as to
8   whether or not we will amend at this moment.  I think it's
9   more likely than not that we will amend, depending on what
10  they say.  But also candidly, we have uncovered a lot more
11  about what the defendants did, and so --
12              THE COURT:  Well, why don't you amend now?  It
13  makes no sense to have everybody go to the expense of, you
14  know, attacking a complaint that is not going to be the
15  final complaint.
16              When are you going to be in a position to file an
17  amended complaint?
18              MR. SPARACINO:  Well, the biggest challenge in
19  answering that question is that we -- let me back up for a
20  second.
21              THE COURT:  Okay.
22              MR. SPARACINO:  The principal reason why it's
23  possible to do an amended complaint is not to add
24  substantive allegations.  We don't believe we need to add
25  any substantive allegations here.  Although with the caveat

Proceedings                                                  13

1  being, if they're filing -- of course, if they have a point
2  that, you know, we need to address, we'll address it.  But
3  we do expect -- and this is something that we have not had a
4  chance to address with opposing counsel because it's
5  something that's really only firmed up in the last few days.
6  But we do expect that there will be some additional
7  plaintiffs joining the case.  We are running a bunch of
8  things to ground, and doing it -- working as hard as
9  possible to get that done as quickly as possible.  It is my
10 expectation that we could agree to an approach with the
11 defendants to accommodate that process without materially
12 slowing the case down.
13         In Anti-Terrorism Act cases one approach that we
14 have agreed to with defendants is to have a short-form
15 complaint for new plaintiffs that doesn't add any new
16 substantive allegations, but essentially just adds what we
17 call the Client Specific Paragraphs.  And in other cases,
18 we've been willing to give Counsel the template for that
19 short-form complaint in advance so they can see we're not
20 smuggling in any new facts or anything.
21         In terms of the additional plaintiffs, though,
22 because both we have legal questions we have to run to
23 ground, as well as ethical obligations, obviously, to obtain
24 client consent and to explain the case to the clients and
25 let them think about it, et cetera, you know, we're moving

1  as fast as we can; but we hope to be in a position where if
2  we file our amended complaint as of right, we would be able
3  to fold all of those people in at the time.  If we're not
4  able to, just because of the volume, we would expect
5  probably to file another complaint and designate it as
6  related.  But, of course, we would follow Your Honor's
7  instructions if Your Honor has a preferred way to go about
8  that.
9              THE COURT:  Do you intend to add substantive
10 allegations to the complaint?  I think adding plaintiffs is
11 something that the parties can work out among themselves.  I
12 don't think that would change a legal issue.
13             MR. SPARACINO:  Yes, Your Honor.  I think if we're
14 talking about just, you know, speed and judicial economy, I
15 do believe that we probably would not need to add additional
16 substantive allegations.  But the only reason I'm hesitating
17 is because, you know, the defendants are represented by
18 excellent law firms, and they will be submitting what I
19 expect to be very detailed motions, and until I see them --
20 you know, and if it's possible that there's a paragraph or
21 two that we need to add to this complaint to address
22 something that they say in a motion, I just -- I don't
23 believe we will have to add much, if anything substantive,
24 but I don't think I'm in a position to guarantee that
25 without seeing what they say.

1          THE COURT:  All right.
2          Well, it appears to me that we ought to now set a
3   motion schedule in light of what you've said.
4          Well, Mr. Harkness and Mr. Dante, do you agree
5   that we are in a position now to set up schedules for your
6   motions?
7          Mr. Harkness?
8          MR. HARKNESS:  Yes, Your Honor -- yes, Your Honor.
9   This is Tim Harkness for the court reporter.
10         We do agree that motions are the next logical
11  step.  We pointed to a case called *Cabrera*, which is in
12  Washington, D.C. that Plaintiffs' Counsel is also in.  And
13  in that case we did full briefing just based on the
14  pleadings.  They did amend in that case, and then we redid
15  the briefing.  So that certainly might be needed here.
16         We have discussed -- the parties have all
17  discussed a motion -- a proposed motion calendar, which
18  would be --
19         THE COURT:  Okay.
20         MR. HARKNESS:  -- the defendants who have appeared
21  moving to dismiss on January 14th.
22         THE COURT:  Okay.
23         MR. HARKNESS:  An opposition on March 15th, and
24  then replies on April 14th.  I do --
25         THE COURT:  Are you still in the same year,

Proceedings                                                    16

1  Mr. Harkness?
2           MR. HARKNESS:  Yes, January 14, 2022; March 15,
3  2022 --
4           THE COURT:  Yes.
5           MR. HARKNESS:  -- yes.
6           THE COURT:  Well, that is a pretty generous
7  schedule.
8           And when is the reply due?
9           MR. HARKNESS:  We would have it a month after the
10 opposition, which is April 14th.
11          THE COURT:  Well, that's pretty generous.
12          Do the parties think that all of that time is
13 needed?
14          Mr. Sparacino, do you need all of that time?
15          MR. SPARACINO:  Well, Your Honor, I think it --
16 if, you know, given the volume of argument that we expect
17 the defendants to make, I think that -- I think that we
18 probably will need all of that time.  These cases are
19 complicated, and they raise a number of nuance -- both legal
20 and factual issues.  And so I think we probably will need
21 that time, Your Honor.
22          THE COURT:  All right.  So the reply -- just give
23 me that again.  The reply is -- what is the last day of the
24 filing?
25          MR. HARKNESS:  April 14th.

Proceedings                                                      17

1           THE COURT:  April 14th.
2           All right.  Then we will -- well, I'll ask my law
3  clerk.
4           All right.  Do we have a date, let's say three
5  weeks after that to set it down for oral argument,
6  Mr. Caulder?
7           THE LAW CLERK:  Yes, Judge.  Three weeks from
8  April 14th -- let me just look.  Three weeks from April 14th
9  would be May 5th, 2022.
10          THE COURT:  Okay.  I will set it down that -- I
11 will approve your schedule, and I will set it down on that
12 day for oral argument, okay?
13          MR. HARKNESS:  Terrific.  Thank you --
14          THE COURT:  Anything else?
15          MR. HARKNESS:   -- very much.
16          THE COURT:  All right.  Is there anything else we
17 need to take up?
18          MR. SPARACINO:  No, Your Honor.
19          MR. HARKNESS:  Thank you, Your Honor.
20          MR. SPARACINO:  Thank you, Your Honor.
21          (Matter concluded.)
22                          --ooOoo--
23    *I (we) certify that the foregoing is a correct transcript
      from the record of proceedings in the above-entitled matter.*
24
           /s/ David R. Roy                December 2, 2021
25           DAVID R. ROY                        Date

David R. Roy, RPR, CSR, CCR
Official Court Reporter