# Freshfields Bruckhaus Deringer US LLP

**TIMOTHY P. HARKNESS**

601 Lexington Avenue
New York, NY 10022

Tel +1 212-230-4610
timothy.harkness@freshfields.com

**VIA ECF**  February 18, 2022

Honorable Carol Bagley Amon, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: *Zobay v. MTN Group Ltd., et al.*, No. 1:21-cv-3503 (E.D.N.Y.) (CBA)

Dear Judge Amon,

    We, along with Covington & Burling LLP, represent Defendants MTN Group Ltd. and MTN Dubai Ltd. (the "MTN Defendants") in this action. Under the Court's rules, we respectfully request permission to file a motion to dismiss the Amended Complaint.

    In the first pre-motion conference, Plaintiffs' counsel made two representations: (1) despite the Court's concerns, Plaintiffs stood behind their direct-liability claims under the Anti-Terrorism Act ("ATA"); and, 2) Plaintiffs "absolutely believe[d]" that the original Complaint "sta[t]es its claim under the ATA" and that they would not "have to add much, if anything[,] substantive" in an amended complaint. Pre-Mot. Conf. Tr. 11:21–12:7, 14:9–14:25. Neither statement turned out to be true. Instead of defending the sufficiency of their Complaint when the defendants served their motion to dismiss, Plaintiffs filed an amended complaint that adds over 321 new pages containing over 1,000 paragraphs. Plaintiffs abandoned their direct-liability claim, replacing it with a convoluted conspiracy claim, and added a whole new conflict—in Afghanistan—to their theory.

    Despite the sheer volume of new paragraphs, the Amended Complaint merely repackages old allegations, adds conclusory or vague claims, or adds cumulative material that fails to remedy the pleading defects identified in our November 5, 2021 pre-motion letter (ECF No. 36). Thus, for largely the same reasons stated in that letter, the MTN Defendants intend to move to dismiss the Amended Complaint for lack of personal jurisdiction and for failure to state a claim.

**I.**    **Lack of New Well-Pleaded Allegations Against the MTN Defendants**

    As before, Plaintiffs claim that merely by virtue of MTN Group indirectly holding a minority stake in MTN Irancell ("Irancell"), a venture running a mobile phone network in Iran, MTN Group should be liable under the ATA for allegedly supporting acts of international terrorism.[1] Plaintiffs' principal theory is, once again, that profits from selling phone services by Irancell to Iranians benefitted two state enterprises that purportedly had ties to the Islamic Revolutionary Guard Corps ("IRGC"), which separately supported anti-American militias in Iraq.

---

[1] Like the original Complaint, the Amended Complaint contains no real allegations as to MTN Dubai. *See* ECF No. 36 at 1 n.1. Though we refer only to MTN Group here, the same arguments for dismissal apply to MTN Dubai.

Freshfields Bruckhaus Deringer US LLP

2|4

Although the Amended Complaint reflects a shift in Plaintiffs' strategy, the core allegations against MTN Group remain unchanged and still lack substance under the ATA.

Plaintiffs quadruple the length of the complaint's introduction but add no new substantive allegations to it. *Compare* Compl. ¶¶ 1–17 *with* AC ¶¶ 1–70. Plaintiffs add 421 paragraphs—none of which mentions the MTN Defendants—about how the IRGC carried out attacks on Americans. AC ¶¶ 318–738. Plaintiffs repeat the undefined term "IRGC Conspiracy" 34 times without alleging in more than conclusory fashion that MTN Group participated in any such conspiracy. And Plaintiffs essentially cut and paste into the body of their new complaint articles that they had already cited in their original Complaint.[2]

## II.   Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

MTN Group is a South-African-headquartered telecommunications company that does not operate in the United States. Plaintiffs cannot establish general personal jurisdiction over MTN Group. *See* ECF No. 36 at 1. Plaintiffs also fail, yet again, to plead specific jurisdiction over ATA claims based on alleged conduct that occurred outside the United States.

**A.** The Amended Complaint, like the original Complaint, fails to plead facts establishing that MTN Group "expressly aimed" its conduct at the United States by participating in a telecommunications joint venture in Iran. *Id.* at 1–2. This argument remains unchanged.

**B.** The Amended Complaint does not allege that MTN Group purposefully availed itself of doing business in the United States. Like the original Complaint, the Amended Complaint cites three purported U.S. contacts: (1) the alleged procurement, by unnamed "agents," of embargoed U.S. goods and technology, AC ¶¶ 1092, 1118; (2) payments associated with those goods that touched "the New York financial system," *id.* ¶¶ 1094, 1102, 1118–19; and (3) an alleged $400,000 bribe that was routed indirectly through a U.S. bank account, *id.* ¶¶ 1104–1106. These alleged contacts do not establish purposeful availment.

Plaintiffs have still failed to plead that MTN Group controlled any "agent" who procured U.S. goods and technology. ECF No. 36 at 2. The Amended Complaint continues to allege a convoluted chain of events in which *other actors* obtained U.S. technology. AC ¶¶ 1118–1130. And while Plaintiffs now say that MTN Group or one of its affiliates retained a company called "Exit40," *id.* ¶ 862—an allegation short on details and recycled nearly verbatim from the paragraphs alleging that ZTE and Huawei retained the same company, *id.* ¶¶ 868, 874—Plaintiffs do not allege any non-conclusory facts showing that MTN Group directed or controlled Exit40.

Plaintiffs also continue to misplace reliance on alleged use of U.S. wires. At best, Plaintiffs allege the happenstance use of U.S. correspondent accounts to complete foreign transfers, which cannot alone form a basis for jurisdiction in the United States. ECF No. 36 at 2. New allegations that MTN Group guaranteed a loan to an affiliate from Citibank, AC ¶ 1097, fail to show the type of repeated use of a U.S. account that could constitute purposeful availment, *see* ECF No. 36 at 2.

---

[2] In one glaring example, Plaintiffs use over 1,100 words to describe a 1,900-word *Reuters* series from 2012 that they cited in part in the original Complaint. *Compare* AC ¶¶ 976–983, 1001–1005 *with* Compl. ¶¶ 256–257.

**C.** Like the original Complaint, the Amended Complaint fails to connect Plaintiffs' claims to MTN Group's alleged U.S. contacts. *See id.* Plaintiffs still rely on an attenuated chain of events and implausible inferences to link the alleged sourcing of U.S. goods to their claims. *See id.* And Plaintiffs again fail to identify any relationship between the 2007 bribe allegedly paid in Iran and attacks committed by unrelated militants in Iraq several years later. *See id.*

**III.     Failure to State a Claim Pursuant to Rule 12(b)(6)**

Plaintiffs' core claim against MTN Group remains the same: that it participated in a joint venture that sold mobile phone services in Iran. Plaintiffs do not plausibly allege that MTN Group aided and abetted or conspired with the militants who injured Plaintiffs. Plaintiffs' theory remains legally insufficient and is still repeatedly contradicted by the sources on which they rely.

**A.** Like the original Complaint, the Amended Complaint fails to state any plausible claim that MTN Group aided and abetted acts of international terrorism.

**1.** Plaintiffs still do not plead that MTN Group, by investing in a joint venture, was generally aware that it was assuming a role in a terrorist enterprise. *Id.* at 3. Plaintiffs also still fail to plead that MTN Group provided any "assistance" to "the person who committed" the attacks that injured Plaintiffs, 18 U.S.C. § 2333(d)(2)—primarily the "Joint Cells." Nor could any such assistance have been "substantial" under the applicable legal standard. ECF No. 36 at 3.

**2.** Plaintiffs' new aiding-and-abetting claim—that the MTN Defendants assisted a RICO enterprise by the IRGC, the Taliban, and al Qaeda to harm Americans in Afghanistan, AC ¶¶ 118–121—fails for the same reasons. It also fails because a years-long terrorist "campaign" is not an "*act* of international terrorism," 18 U.S.C. §§ 2331, 2333(d)(2) (emphasis added), as required by the ATA, *see Retana v. Twitter, Inc.*, 1 F.4th 378, 381 (5th Cir. 2021).

**B.** Plaintiffs' new conspiracy claim fares no better. Plaintiffs fail to plead the elements of a conspiracy between MTN Group and the shareholders of Irancell. That failure aside, Plaintiffs also have not pleaded that either of the MTN Defendants "conspire[d] with *the person who committed*" the "act[s] of international terrorism" that injured Plaintiffs, as the ATA requires. 18 U.S.C. § 2333(d)(2) (emphasis added); *see Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 97–98 (E.D.N.Y. 2019) (rejecting JASTA conspiracy claim on this ground).

**C.** Plaintiffs still cannot plead any secondary liability claim because they again must resort to pleading artifice to try to circumvent the statutory language that expressly limits aiding and abetting and conspiracy liability under the ATA to acts of international terrorism "committed, planned, or authorized" by a U.S.-designated Foreign Terrorist Organization. ECF No. 36 at 3.

We have conferred with counsel for Plaintiffs and the ZTE Defendants, and all agree that it would be beneficial for the respective motions to dismiss the Amended Complaint to proceed on the same schedule. The parties jointly propose that the MTN Defendants and ZTE Defendants' motions be due 45 days from the date of the pre-motion conference; Plaintiffs' opposition be due 45 days from service of the motions; and replies be due 30 days from service of the opposition.



    Respectfully submitted,

    */s/ Timothy P. Harkness*
    Timothy P. Harkness

CC: Counsel of Record (via ECF)