

1920 L Street, N.W., Suite 835
Washington, D.C. 20036

150 South Wacker Drive, Suite 2400
Chicago, IL 60606

May 23, 2022

**Via ECF**
The Honorable Carol Bagley Amon, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Zobay et al. v. MTN Group Ltd., et al.*, No. 1:21-cv-3503

Dear Judge Amon,

Plaintiffs are U.S. citizens—and their families— who were killed or wounded in terrorist attacks while serving in Iraq between 2011 and 2017 or in Afghanistan in 2019. Plaintiffs' First Amended Complaint [D.I. 52] (the "FAC") sets forth detailed allegations regarding how each of Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device USA Inc., Futurewei Technologies, Inc., and Skycom Tech Co. Ltd. (the "Huawei Defendants" or "Defendants")[1] facilitated illicit transactions to provide notorious terrorist front companies with financing and embargoed U.S. technologies for use by designated foreign terrorist organizations ("FTOs") in their attacks against Americans in Iraq and Afghanistan.  *See* FAC ¶¶ 1221-1309.  Plaintiffs' injuries directly and foreseeably resulted from Defendants' conduct.

**The Amended Complaint Complies with Federal Rule of Civil Procedure 8.**

Dismissal under Rule 8 is an extreme measure "reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Defendants do not claim that the FAC is "unintelligible," and cannot plausibly do so, so this attack fails. Notably, none of their co-defendants have raised a similar objection.

Nor does the FAC engage in impermissible "group pleading."  Many allegations specifically name Huawei Co. (*e.g.*, FAC ¶¶ 49, 60-62, 132-34, 871-76, 1348, 1350-51, 1555); others are specific to Huawei Co. and Skycom (*e.g., id*. ¶¶ 1250-52); others to Huawei Co. and Huawei Device USA (*e.g., id*. ¶ 1273); and others to all but Skycom (*e.g., id*. ¶ 1303).  Where the FAC at times refers to all five Defendants, it is because all five are charged with the same conduct. And "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Feldman v. Comp Trading, LLC*, 2021 WL 930222, at *3 (E.D.N.Y. March 11, 2021) (citing cases).

---

[1] The letter motion [D.I. 74] is submitted on behalf of just three of the five entities: Huawei Technologies USA Inc., Huawei Device USA Inc., and Futurewei Technologies, Inc.



**This Court May Exercise Personal Jurisdiction Over the Huawei Defendants.**

Plaintiffs allege personal jurisdiction over the Huawei Defendants under Fed. R. Civ. P. 4(k)(1) and 4(k)(2). FAC ¶ 83. Personal jurisdiction is available here (at least) under Rule 4(k)(2), which provides for jurisdiction where the defendant "is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." Defendants argue that "Plaintiffs' reliance on 18 U.S.C. § 2334(a) is … misplaced" because "personal jurisdiction must be assessed claim-by-claim … and only three Plaintiffs connected to just one of the attacks can arguably satisfy § 2334(a)'s venue requirement." Defendants misapprehend the law: §2334(a) makes venue proper in any jurisdiction where "any plaintiff" resides. Because Defendants concede that at least three plaintiffs reside in this District, venue here is proper, and jurisdiction is available to the extent consistent with due process. The Defendants baldly assert that "[t]he complaint also fails to satisfy the constitutional requirements for personal jurisdiction," but do not explain why. Without any warrant for their due process argument, this does not provide a basis to allow Defendants to file a motion to dismiss.

**Plaintiffs Successfully State Claims for Secondary Liability Under the ATA.**

Plaintiffs plausibly allege both conspiracy and aiding and abetting liability under JASTA, which "'[p]rovide[s] civil litigants with the *broadest possible basis* . . . to seek relief against persons [ and] entities … wherever they may be found, that have provided material support, *directly or indirectly*, to … persons that engage in terrorist activities against the United States.'" *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 494 (2d Cir. 2021) (quoting JASTA § 2(b)).

**Aiding-and-Abetting Liability (Count I)**. Plaintiffs successfully allege secondary liability under *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854–67 (2d Cir. 2021), and this Court's opinion in *Bartlett v. Société Générale de Banque Au Liban SAL*, 2020 WL 7089448, at *8–16 (E.D.N.Y. Nov. 25, 2020). The FAC alleges that Defendants aided and abetted and knowingly provided substantial assistance to the IRGC and the terrorist proxies who launched the Joint Cell attacks on Plaintiffs by (a) providing funds and technical support to known fronts for the IRGC that aided those attacks, (b) contracting with TCI to modernize the IRGC-controlled Iranian communications systems, thereby generating substantial revenue for the IRGC and its proxies, and (c) illegally providing U.S.-origin technology, all of which the Joint Cells used in furtherance of Hezbollah's terrorist enterprise against Americans in Iraq. FAC ¶¶ 1594, 1597.

The FAC plausibly alleges Defendants were "generally aware … [they were] playing a role in unlawful activities from which [terrorist] attacks were foreseeable." *Honickman,* 6 F.4th at 498-99. Defendants' counterparties were widely known to be fronts for the IRGC, Qods Force, and Hezbollah. *E.g.,* FAC ¶¶ 776, 781, 1027, 1111, 1328. Defendants' efforts to obtain embargoed U.S. technology for provision to the IRGC in knowing violation of U.S. law was an "unlawful activity" from which terrorist attacks were (at least) foreseeable. *See, e.g., id.* ¶¶ 1290-99.

The FAC also sufficiently alleges that Defendants "substantially assisted" terrorist acts. Defendants quibble that "Plaintiffs have not alleged that Hezbollah or the Qods Force actually received any of the proceeds or technology Defendants allegedly provided or that Defendants knew they might." Not so. The FAC pervasively alleges that funds and technology sourced by the Defendants foreseeably flowed through to Hezbollah and the Qods Force. *E.g.,* FAC ¶¶ 823, 827,

**SPARACINO**
PLLC

829, 832-33, 835, 863, 916, 935, 997-1000, 1004-05, 1007, 1009-12. This is more than sufficient to support an allegation of substantial assistance. See *Bartlett*, 2020 WL 7089448, at *13.

Finally, the FAC sufficiently alleges that the attacks that injured Plaintiffs were "authorized, planned, or committed" by a designated FTO. The FAC alleges that all 10 Iraq attacks involved, either Hezbollah or al-Qaeda, which at all relevant times were FTOs.[2] FAC ¶¶ 1406, 1428, 1446, 1453, 1468, 1477, 1492, 1500, 1514, 1546. And both Afghanistan attacks are alleged to have been committed by one or more of al-Qaeda, the Haqqani Network, and Lashkar-e-Taiba (all FTOs in 2019).

**Aiding-and-Abetting Liability (Count III).** The Huawei Defendants baldly assert without any explanation that "Plaintiffs' claim based on an alleged RICO enterprise"—Count III—"fails to establish liability under the ATA." This conclusory assertion does not justify allowing Defendants' motion.

**Conspiracy Liability (Count II).** The FAC alleges Defendants' participation in a broad criminal conspiracy involving the IRGC and its front companies, other corporate conspirators, and the IRGC's terrorist proxies in the Middle East and Afghanistan. *E.g.*, FAC ¶¶ 10-12, 48, 57, 137-59, 1602-03, 1623-31. The common goal of that conspiracy "was to finance, arm, and logistically support the IRGC" in its campaign to "force the United States to withdraw from Iraq, Afghanistan, and the rest of the Middle East."[3] *Id.* ¶¶ 1605, 1607. Defendants acted in furtherance of the conspiracy when they (a) entered into a scheme to acquire embargoed U.S. technology, (b) exported such technology to the IRGC; (c) used export methods to avoid detection, including comingling embargoed items with legal ones; (d) misappropriated American technology for use by Irancell; and (e) concealed its role by operating through subsidiaries passed off as independent counterparties. *See id.* ¶¶ 1221-23, 1225, 1228-47. Plaintiffs also plausibly allege that Defendants' provision of technology and other resources to known IRGC fronts helped terrorists commit the attacks that injured Plaintiffs.

**Plaintiffs' Claims Are Timely.**

Plaintiffs filed their original complaint on June 22, 2021 and the First Amended Complaint on February 9, 2022. The Huawei Defendants assert that because eight of the 12 terrorist attacks at issue occurred no later than November of 2011, Plaintiffs' claims relating to those attacks are barred by the 10-year statute of limitations. Not so. The statute of limitations for all the attacks is tolled by the Huawei Defendants' fraudulent concealment of their role in the terrorist enterprise. FAC ¶¶ 21, 53, 55, 66, 887, 1251.

---

[2] The FAC also alleges that Hezbollah "planned and authorized" all the Iraq attacks. ¶ 287.

[3] Defendants' suggestion that Plaintiffs are required to allege that "Defendants shared the common goal of committing an act of international terrorism" is incompatible with the *Halberstam* standard that Congress instructed courts to use in determining JASTA conspiracy liability, which requires only a showing that the Defendants conspired to participate in an unlawful act, and that the ultimate tort—i.e., the terrorist act—was committed in furtherance of that conspiracy. *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).



Sincerely,

/s/ Eli K. Oliphant
SPARACINO PLLC

cc: All counsel of record (via ECF)