# Freshfields Bruckhaus Deringer US LLP

**TIMOTHY P. HARKNESS**

601 Lexington Avenue
New York, NY 10022

Tel +1 212-230-4610
timothy.harkness@freshfields.com

<u>VIA ECF</u>　　　　　　　　　　　　　　　　　　　　January 6, 2023

Honorable Carol Bagley Amon, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **MTN Defendants' Notice of Supplemental Authority,**
    <u>*Zobay v. MTN Group Ltd., et al.*, No. 1:21-cv-3503 (E.D.N.Y.) (CBA)</u>

Dear Judge Amon,

We, along with Covington & Burling LLP, represent Defendants MTN Group Limited and MTN (Dubai) Limited in this action. We write to inform the Court of two recent decisions that underscore the deficiencies of plaintiffs' Anti-Terrorism Act ("ATA") claims against the MTN Defendants: *Freeman v. HSBC Holdings PLC*, __ F.4th __, 2023 WL 105568 (2d Cir. Jan. 5, 2023) (Ex. A), and *Wildman v. Deutsche Bank AG*, 2022 WL 17993076 (E.D.N.Y. Dec. 29, 2022) (Gonzalez, J.) (Ex. B).

## I. *Freeman v. HSBC Holdings PLC*

The plaintiffs in *Freeman* were American service members wounded by terrorist attacks in Iraq and family members and estates of service members killed in such attacks. *Freeman*, 2023 WL 105568, at *1. They brought ATA conspiracy claims under 28 U.S.C. § 2333(d)(2) against several financial institutions for allegedly "helping Iranian banks and institutions circumvent U.S. sanctions against Iran." *Id.* The district court dismissed those claims for failure to state a claim.

The Second Circuit affirmed. Although the Second Circuit explained that a plaintiff need not allege that the defendant conspired *directly* with the person who committed, planned, or authorized a terrorist attack, *cf.* MTD at 38–39, it held that the plaintiffs failed to allege a valid conspiracy claim for two of the same reasons that Plaintiffs here fail to do so.

*First*, the court held that in order to plead an ATA conspiracy claim, a plaintiff must "allege that the coconspirators were 'pursuing the same object.'" *Freeman*, 2023 WL 105568, at *7 (quoting *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983)). The *Freeman* complaint did not satisfy this requirement because it "fail[ed] to allege that the [defendants] and the terrorist groups shared any 'common intent.'" *Id.* (citing *Halberstam*, 705 F.2d at 480). "In the absence of any allegation that the [defendants] and the terrorist groups 'engaged in a common pursuit,'" the *Freeman* court held, there was no basis for JASTA conspiracy allegations between those defendants and the terrorist groups. *Id.* More specifically, the plaintiffs alleged that the defendants' objective was to enable Iran and Iranian banks to transfer billions of dollars through the United States, whereas the



terrorist groups' objective was to plan and perpetrate the murder and maiming of Americans in Iraq. *Id.*

The same defect defeats Plaintiffs' conspiracy claim here. All parties agree that the object of the alleged "IRGC [Islamic Revolutionary Guard Corps] Conspiracy," as the complaint defines it, is to "force the U.S. out of the Middle East." Opp. at 44; Reply at 21. Yet Plaintiffs fail to allege that the MTN Defendants ever agreed to a scheme with that object. At most, Plaintiffs allege that MTN Group signed an agreement with Iranian shareholders outlining the terms of its investment in the Iranian telecommunications network Irancell, invested in Irancell, and sourced American technology for use by Irancell. MTD at 42–43; Reply at 21. None of these purported actions suggests that MTN Group shared a "common intent" with the terrorist groups to force the U.S. out of the Middle East. *Freeman*, 2023 WL 105568, at *7.

*Second*, again relying on *Halberstam*, the Second Circuit held that the plaintiffs failed to allege that "the terrorist attacks that killed or injured the service members were in furtherance of the conspiracy" to which the defendants there allegedly agreed—the object of which was "to circumvent U.S. sanctions." *Id.* at *1. In so holding, the Second Circuit rejected the plaintiffs' theory that the attacks qualified as "overt acts," regardless of whether they were in furtherance of the conspiracy, so long as they were a foreseeable consequence of that conspiracy. *Id.* at *8–9. What matters instead is whether the defendant performed "an overt act to further the '*overall object*' of the conspiracy." *Id.* at *9 (quoting *Halberstam*, 705 F.2d at 487).

Although the Amended Complaint here clearly defines the object of the alleged conspiracy as expelling the United States from the Middle East, at times Plaintiffs refer to a purported "sanctions-evasion scheme." Opp. at 47; *see id.* at 33 (referring to supposed "'overt acts' in the United States in furtherance of the effort to evade U.S. sanctions and provide embargoed telecommunications equipment to Iran"). As in *Freeman*, however, Plaintiffs "simply have not explained how the [attacks in Afghanistan and Iraq] furthered" any purported "conspiracy with Iranian entities to circumvent U.S. sanctions." *Freeman*, 2023 WL 105568, at *9; *see* Reply at 22 n.15.

## II. *Wildman v. Deutsche Bank AG*

Plaintiffs in *Wildman* were American service members and civilians, and their family members, killed or wounded by terrorist attacks in Afghanistan between 2011 and 2016. 2022 WL 17993076, at *1–2. Plaintiffs brought aiding-and-abetting claims under the ATA against financial institutions for allegedly "knowingly facilitat[ing] transfers of hundreds of millions in USD to . . . terrorists" through an "international criminal network" (referred to as the "Syndicate"), which was allegedly organized and led by al-Qaeda, included the Haqqani Network and other Foreign Terrorist Organizations ("FTOs"), and depended on support from the IRGC. *Id.* at *3. As in this case, the *Wildman* plaintiffs did not allege that the defendants directly supported the terrorist perpetrators, but that the defendants worked with third parties, including purported IRGC "fronts," which in turn supported the terrorists. *Id*. The court concluded that the complaint did not adequately plead the general awareness or substantial assistance requirements of ATA aiding-and-abetting liability, or state a valid aiding-and-abetting claim based on a so-called "RICO Predicate." *Id.* at *2.

General Awareness. The court explained that under the Second Circuit's decision in *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 496 (2d Cir. 2021), "there must be a sufficient nexus between the services the defendant provided and the terrorist acts" that injured the plaintiffs in order to "support the plausible inference the defendant was generally aware it played a role in those acts." *Wildman*, 2022 WL 17993076, at *7; *see also* MTD at 44–45. The court rejected the plaintiffs' arguments for a "less stringent" standard. *Wildman*, 2022 WL 17993076, at *6–7. The *Wildman* complaint failed to adequately plead general awareness, for several reasons that apply here:

- *First*, the plaintiffs alleged that the banks provided services to Al Zarooni and Mazaka, two "front companies" that were "controlled" by the "Khanani Money Laundering Organization," which in turn supported the terrorist Syndicate. *Id.* at *11. Yet to establish the defendants' general awareness of the front companies' association with terrorists, the complaint relied on sources published *after* the attacks occurred. *Id.* at *9, *16, *26. So too here, the Amended Complaint relies heavily on sources published after the last attack to try to establish awareness that Bonyad Mostazafan and IEI, Irancell's Iranian shareholders, were fronts for IRGC terrorism. *See* MTD at 45–46.

- *Second*, "even if Plaintiffs did plausibly plead that Defendants were aware of [those] connections, . . . the Court would still find that insufficient to establish that Defendants were 'generally aware' of their role in Syndicate attacks in Afghanistan." *Wildman*, 2022 WL 17993076, at *12. The *Wildman* court held plaintiffs' general awareness allegations to be insufficient because the Khanani Money Laundering Organization, whose "fronts" the defendants allegedly aided, "financially supported a myriad of organizations *in addition to* the FTOs which caused Plaintiffs' injuries." *Id.* Thus, the defendants' alleged activities in *Wildman* "could just as easily have supported" "legitimate business ventures," as well as different illegitimate ventures around the world, given the "breadth of organizations and activities supported" by the defendants' allegedly illicit customers. *Id*. Again, so too here: even if Plaintiffs adequately alleged that MTN Group was aware that Bonyad Mostazafan and IEI had some link to the IRGC, Bonyad Mostazafan and IEI both had extensive non-terroristic activities, as Plaintiffs' own sources confirm. *See* MTD at 9–10, 46–48; Reply at 24–25. As a result, Plaintiffs cannot establish a "sufficient nexus between the services the [MTN Defendants] provided *and the terrorist acts*." *Wildman*, 2022 WL 17993076, at *7 (emphasis added).

- *Third*, in finding a lack of connection between the defendants' activities and the terrorist acts, the court rejected an inference that providing "cell phones" would support terrorism because of their "operational advantages for terrorists," since "cell phones . . . have a wide variety of other non-nefarious uses." *Id.* at *14. The same commonsense conclusion applies to Plaintiffs' attempt here to connect to terrorism the alleged procurement of cell phones and other telecommunications equipment for Irancell, despite an obvious alternative explanation: that the point of such equipment was to run a large mobile phone network in Iran. *See* MTD at 32–33; Reply at 7 (explaining that Plaintiffs' own sources recognize that

the allegedly sourced equipment was sought for technical reasons relating to operating a network).

- *Fourth*, the complaint did not provide any factual allegations to support the "bald conclusory statements" that defendants knew that certain "government-owned Iranian companies" "served as a front for Iranian terrorism through the IRGC's Hezbollah Division and Qods Force." *Wildman*, 2022 WL 17993076, at *14. Here as well, Plaintiffs pepper their Amended Complaint with the conclusory label "IRGC front," but cannot identify any sources suggesting MTN would have known that Bonyad Mostazafan and IEI were mere "fronts" for the IRGC. More importantly, they offer nothing suggesting awareness that Bonyad Mostazafan and IEI were closely intertwined with the IRGC's *terrorist activities*, as opposed to its vast economic and other activities throughout Iran. *See* MTD at 9–10, 46–48; Reply at 2–5, 24.

<u>Substantial Assistance</u>. The court also concluded that the *Wildman* complaint failed to show that any of the defendants provided "substantial assistance." Applying the six *Halberstam* factors, the court held that the allegations were "too vague, and the connection between the alleged support and the terrorist attacks at issue is too attenuated, to support a finding of substantial assistance." *Wildman*, 2022 WL 17993076, at *15, *20, *22, *24, *26. Similarly, Plaintiffs here have alleged only that the MTN Defendants invested in Irancell, the second-largest mobile phone network in Iran, whose other investors supposedly had connections to parts of the Iranian government. *See* MTD at 49–54; Reply at 26–27. Even if a few stray media references to the IRGC were enough to establish general awareness, Plaintiffs' allegations would still be "too vague" and "too attenuated" to make plausible the claim that assistance in running a mobile phone network used by tens of millions of ordinary Iranians substantially assisted the commission of terrorist attacks. *See id.*

<u>RICO Predicate Claim</u>. The *Wildman* plaintiffs also alleged an "Aiding-And-Abetting Liability, RICO Predicate" claim, which the court noted "fail[ed] to cite any legal support." 2022 WL 17993076, at *27. The court rejected that claim, relying on two District of Columbia district court decisions that "have rejected reading a RICO theory of liability into the ATA" (*Atchley* and *Cabrera*, the same cases cited by the MTN Defendants, *see* MTD at 56–57), which "persuasive[ly]" explained that a "RICO claim is not a valid theory of liability under the ATA." *Wildman*, 2022 WL 17993076, at *27. Here, Plaintiffs' sole theory of aiding-and-abetting liability for the Afghanistan attacks is a similar "RICO Predicate" claim, and it fails for the same reasons as in *Wildman*. *See* MTD at 56–57; Reply at 27–28.

Respectfully,

/s/ Timothy P. Harkness
Timothy P. Harkness

CC: Counsel of Record (via ECF)