

1920 L Street, N.W., Suite 835
Washington, D.C. 20036

June 21, 2023

**BY CM/ ECF**
The Honorable Carol Bagley Amon, U.S.D.J.
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Zobay v. MTN Group Ltd.*, No. 1:21-cv-03503 (E.D.N.Y.)

Dear Judge Amon:

Plaintiffs respectfully submit this notice of supplemental authority regarding the Second Circuit's decision in *Spetner v. Palestine Investment Bank*, No. 20-839, 2023 WL 4035924 (2d Cir. June 16, 2023) (Attachment A). *Spetner* confirms the broad scope of personal jurisdiction under the Due Process Clause, which is the only limitation on jurisdiction under the federal long-arm statute. It strongly supports jurisdiction over the MTN Defendants here.[1]

In *Spetner*, the Second Circuit considered personal jurisdiction under New York's long-arm statute over the Palestine Investment Bank (PIB), a Palestinian financial institution that allegedly made U.S. dollar payments to organizations that funded Hamas attacks on Americans. PIB itself had no branches, employees, accounts, or other contacts with New York. 2023 WL 4035924, at *1-2. Lacking U.S. correspondent accounts held in its own name, PIB "instead used a correspondent account with" a Jordanian bank that "held correspondent banking accounts at three banks in New York." *Id*. at *1. This arrangement gave PIB "indirect access" to the U.S. financial system via the Jordanian bank, which acted as its agent. *Id*.

The Second Circuit had no difficulty finding that such indirect but purposeful access was sufficient to satisfy the due process requirement of "minimum contacts" with New York. "While the contacts with the forum must be 'created by the defendant itself,'" the court confirmed that a "defendant can purposefully avail itself of a forum through the action of a third party by directing its agents … to take action there." *Id*. at *7. In that circumstance, "the foreign defendant is not haled into the forum based solely on the 'unilateral activity' of a third party," but by its own purposeful conduct—namely, by "affirmatively direct[ing]" the third party to act in the United States. *Id.* at *7-8.

*Spetner* does not affect Plaintiffs' primary "targeting" theory of jurisdiction (*see* ECF 86 at 17-25), which alleges that MTN "expressly aimed" its wrongful conduct at the United States and caused effects here (in the form of violations of U.S. export laws and provision of dual-use

---

[1] The MTN Defendants are the only non-U.S. defendants that have appeared in the case. Personal jurisdiction over the U.S.-based defendants is available under Rule 4(k)(1)(C) and 18 U.S.C. § 2334(a), which provides for personal jurisdiction in any district where "any plaintiff" resides. Because the ZTE and Huawei U.S. Defendants are U.S. entities, there is no reasonable dispute that they have "minimum contacts" with the relevant forum, which is the United States as a whole. *See* ECF 87 at 58-59; ECF 105 at 59-60.



technology to the IRGC for use in terrorist attacks on Americans) that would have led each of them to "reasonably anticipate being haled into court" in the United States. ECF 86 at 17-18 (quoting *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). Plaintiffs' targeting-based allegations provide an independent ground for personal jurisdiction.

*Spetner* does, however, support multiple aspects of Plaintiffs' separate availment-based allegations.

*First*, Plaintiffs allege that MTN intentionally reached into the United States via agents to obtain U.S.-sourced equipment and technology not available anywhere else. *See* ECF 86 at 30-33. A senior MTN executive confirmed that MTN Group directed and controlled its agents' illegal acquisitions, explaining that the company "was directly involved in procuring U.S. parts for MTN Irancell," and that "[a]ll the procedures and processes around procurement [for Irancell] were established by MTN." ¶1007. The way the scheme worked, MTN would generate a list of specific U.S. technologies it wanted to acquire for its Iranian partner. ¶¶981-82, 1005-07. It would then provide its wish list to third-party agents with instructions on exactly what to acquire. Those agents included Exit40, an export firm with offices in the United States and the Middle East that MTN personnel were instructed never to mention in writing or in telephone conversations, ¶¶859-64; Mohammad Hajian, an Iranian-born U.S. citizen who pled guilty to selling supercomputers and other embargoed dual-use U.S. technology "intended to facilitate" the MTN Irancell joint venture, ¶¶1107-11; and one of Hajian's co-conspirators charged with "service[ing] embargoed US technology for a 'front company' of MTN Irancell," ¶1107.

Under *Spetner*, these allegations state a prima facie case of personal jurisdiction over MTN. Here, as there, the foreign defendant deliberately reached into the United States using agents to obtain products and services available here. Agency-based jurisdiction applies where the agent acted in the forum "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Spetner*, 2023 WL 4035924, at *4 (quotation omitted). Here, Plaintiffs allege that MTN created and managed the illegal procurement scheme and instructed its agents which embargoed equipment it wanted to acquire. The agents' actions benefited MTN, which obtained specific products it requested; were undertaken with the knowledge and consent of MTN, which created the managed the illegal procurement scheme itself; and operated under at least "some control" by MTN, which specified exactly which U.S.-origin products the agents were to procure. *See id*. at *4 (finding "some control" where the agent's decision to use a U.S. account was not "unilateral"); *see also Dish Network L.L.C. v. Kaczmarek*, No. 19-4803, 2021 WL 4483470, at *6 (E.D.N.Y. June 24, 2021), *adopted in relevant part*, 2021 WL 4485870 (E.D.N.Y. Sept. 30, 2021) (stating that "control" only requires allegations that the defendant was "a primary actor in the specific matter in question").

*Second*, Plaintiffs allege that MTN subjected itself to jurisdiction by purposefully availing itself of the U.S. financial system. ECF 86 at 25-34. It used a U.S bank to clear a U.S. $400,000 bribe that enabled it to secure the relationship with the IRGC that gave rise to all Plaintiffs' claims.



Judge Amon
June 21, 2023
Page 3

¶¶995, 1103-06. It "routed millions of dollars each year to its U.S. agents, and sourced the sensitive dual-use U.S. technology, via transactions through the New York banking system, by causing money to be wired to MTN's U.S. agents to pay for MTN's U.S. agents to provide services, or obtain sensitive dual-use U.S. technology." ¶1118. And it "regularly engaged in large six- and seven-figure U.S. dollar transactions that flowed through the New York financial system before leaving the United States to flow into accounts controlled by an IRGC 'buffer.'" ¶1094. Under *Spetner*, it does not matter whether those funds were routed through MTN's own accounts or a third party's—only that MTN directed the money to be routed through U.S. financial institutions, which Plaintiffs allege it did.

*Finally*, *Spetner* supports Plaintiffs' allegation that their injuries "arise from" MTN's U.S. activities. As the Second Circuit explained, the "arising from" requirement "simply ensures that the transaction is not completely unmoored from the claim." 2023 WL 4035924, at *6 (quotation omitted). It was sufficient for plaintiffs to allege that "by directing the transfers to" the Jordanian bank's "account in New York, PIB used New York's financial system to facilitate financial support for Hamas that is the basis of certain of plaintiffs' claims." *Id*. Similarly here, Plaintiffs allege that MTN directed its U.S. agents to acquire embargoed technology and utilized the U.S financial system to funnel money and equipment to the IRGC—conduct that is "the basis of" Plaintiffs' claims. *Id*. No additional "nexus" is required to satisfy due process. MTN is subject to personal jurisdiction.

Respectfully submitted,

*/s/ Geoffrey P. Eaton*

Geoffrey P. Eaton
Ryan R. Sparacino
Eli J. Kay-Oliphant
Sparacino PLLC
1920 L Street, NW, Suite 835
Washington, D.C. 20036
Tel: (202) 629-3530
geoff.eaton@sparacinopllc.com
ryan.sparacino@sparacinopllc.com
eli.kay-oliphant@sparacinopllc.com

*Counsel for Plaintiffs*