```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                                 :
STEPHANIE ZOBAY, ET AL,          : 21 cv 3503 (CBA)
                                 :
        Plaintiff,               :
                                 :
                                 : United States Courthouse
    -against-                    : Brooklyn, New York
                                 :
                                 :
                                 : Tuesday, October 31, 2023
MTN GROUP LIMITED, et al,        : 2:00 p.m.
                                 :
        Defendant.               :
                                 :
                                 :
- - - - - - - - - - - - - - - - X

        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE CAROL BAGLEY AMON
              UNITED STATES SENIOR DISTRICT JUDGE


                    A P P E A R A N C E S:

For the Plaintiff:     SPARACINO PLLC
                          1920 L Street, NW
                          Suite 835
                          Washington, DC 20036
                       BY: GEOFFREY P. EATON, ESQ.
                           ADAM GOLDSTEIN, ESQ.

For the Defendant:     FRESHFIELDS BRUCKHAUS DERINGER US LLP
                          601 Lexington Avenue
                          31st Floor
                          New York, New York 10022
                       BY: TIMOTHY P. HARKNESS, ESQ.
                           KIMBERLY ZELNICK, ESQ.
                           SCOTT EISMAN, ESQ.
```

```
 1   For the Defendant:    COVINGTON & BURLING LLP
                           620 Eighth Avenue
 2                         New York, New York 10018
                           BY: MICAELA R.H. MCMURROUGH, ESQ.
 3

 4

 5

 6

 7

 8

 9

10

11

12

13
     Court Reporter:    Nicole J. Sesta, RMR, CRR
14                      Official Court Reporter
                        E-mail:  NSestaRMR@gmail.com
15
     Proceedings recorded by computerized stenography.  Transcript
16   produced by Computer-aided Transcription.

17

18

19

20

21

22

23

24

25
```

NJS  OCR  RPR  RMR  CRR

1    THE LAW CLERK:  This is Zobay versus MTN Group, No.
2    21 cv 3503, calling for a status conference.  Can the parties
3    please state their appearances, beginning with counsel for
4    defendants.
5    MR. HARKNESS:  Tim Harkness from Freshfields
6    Bruckhaus Deringer US LLP for MTN Group.
7    MS. MCMURROUGH:  Micaela McMurrough from Covington &
8    Burling for MTN Group.
9    MS. ZELNICK:  Kim Zelnick from Freshfields for MTN
10   Group.
11   MR. EISMAN:  Scott Eisman from Freshfields for MTN
12   Group.
13   THE COURT:  Good afternoon.  And for plaintiff?
14   MR. EATON:  Geoffrey Eaton of Sparacino PLLC for
15   plaintiffs, Your Honor.
16   THE COURT:  Good afternoon.  You all can be seated.
17   It's easier to speak into the microphones.  To the extent that
18   you seek to amend your complaint, that also implicates other
19   defendants who are not represented here.  Correct?
20   MR. EATON:  Your Honor, in our view it does not.  In
21   our view, the grounds in your opinion of September 28th for
22   dismissing those plaintiffs apply equally to the amended
23   complaint.
24   THE COURT:  So you wouldn't be adding them to the
25   amended complaint?

1     MR. EATON:  The amended complaint would add the
2  count.  The rest of the complaint would be the same.  We
3  wouldn't be naming new parties.
4     THE COURT:  I can't hear you.
5     MR. EATON:  I'm sorry.  The complaint would have the
6  same parties named.  The amendment would add Count 4.  We
7  believe that based on Your Honor's ruling of September 28th,
8  that claims -- the attack predicate claim that we raise in
9  Count 4 would fall within the scope of your ruling and,
10 therefore, would not be live claims.
11    They would remain dismissed on the same grounds Your
12 Honor has already dismissed them.
13    THE COURT:  So you would only be amending as to MTN?
14    MR. EATON:  Well, MTN would be the only party
15 affected by the complaint.  The amended complaint will still
16 name all the same parties.
17    THE COURT:  I understand that.  But as to that
18 count, the count that you want to add, I'm trying to get a
19 response to that.
20    MR. EATON:  I think I understand your question, Your
21 Honor.  I have to admit, I haven't thought about it in quite
22 these terms.  I think in some hypothetical future where claims
23 against the US based subsidiaries, defendants of the Chinese
24 companies were brought back into the case, or when the Chinese
25 defendants came into the case, that that count would

1  theoretically apply to them, but I haven't really thought
2  about how it would apply to them.
3             THE COURT:  The question is, when you amend, do you
4  intend to name them?  The parties that I had dismissed, do you
5  intend to name them in the new Count 4, or not?
6             MR. EATON:  They are not specifically named in the
7  new Count 4, I don't think.  I have it here.  I can check.  I
8  think MTN is the only named defendant.
9             MR. HARKNESS:  Just to help you out, it says all the
10  defendants.
11             MR. EATON:  Forgive me for getting that wrong.
12  You're quite right.  It does name them all.
13             THE COURT:  Is that how you intend to amend it, if I
14  were to permit you to do that?
15             MR. EATON:  Yes, Your Honor.
16             THE COURT:  So then, what happens, we have a whole
17  new round of motions to dismiss?
18             MR. EATON:  No.  As I said, I think that the parties
19  who have been served, I think we would concede that we don't
20  stay a claim against those parties or don't have personal
21  jurisdiction over them, based on your opinion.
22             I think the only additional work for anybody would
23  be potentially around a briefing on the narrow issue of claim
24  of a new Count 4 against the remaining defendant, which is the
25  MTN Group.

1            THE COURT:  So you'll agree that once you amend and
2    add all the parties that I've dismissed that I should dismiss
3    them?
4            MR. EATON:  Yes, I think the appropriate course of
5    action would be to dismiss the two -- two or three entities.
6            THE COURT:  They would not have to --
7            MR. EATON:  Our intention is not to implicate them
8    in this potential new round of briefing, Your Honor.
9            THE COURT:  If you've named them in the complaint,
10   you've implicated them.
11           MR. EATON:  I understand that, Your Honor.  My point
12   is merely that.
13           THE COURT:  Let me ask another question, which is
14   why didn't you do this before?  We have spent a lot of time,
15   effort, and I'm sure the clients have spent an enormous amount
16   of money, just a wild guess on my part, and you could have
17   easily made this claim before.
18           Why didn't you do it?
19           MR. EATON:  Your Honor, the truth of the matter is
20   that when we -- at the time that we pled, we felt, as it turns
21   out unduly confident, in our RICO based claim.  We thought it
22   had a strong textual basis.  We thought a limited amount of
23   authority that existed on it in *Cabrera* and *Ashley* was not
24   persuasive, and we thought it was a strong claim and was
25   sufficient to support the claims of our Afghanistan

 1    plaintiffs.
 2              In hindsight, I think we would have done it
 3    differently.  Clearly we did it differently in subsequent
 4    complaints.  In hindsight we probably should have pled RICO as
 5    to both and attack predicate as to both.  We didn't do that.
 6    But it was, simply, I suppose at worst an error in litigation
 7    judgment, Your Honor, about whether that claim was likely to
 8    survive.  My own view that our claims attack predicate and
 9    RICO predicate were likely to rise and fall together.  That
10    turns out to have been wrong.
11              But there's not, just to perhaps jump ahead, that
12    kind of error is not in any sense bad faith.
13              THE COURT:  Do you have a statute of limitations
14    problem?  Could you bring this case as a separate case and
15    then move to have it joined to this case?
16              In other words, I'm just talking practically.
17    Assuming I deny your motion to amend, is there anything that
18    would preclude you from bringing a separate case with just the
19    Afghanistan count against the same defendants?
20              For instance, the statute of limitations, do you
21    know whether you have a statute problem?
22              MR. EATON:  Hold on one second, Your Honor.
23              (Pause.)
24              MR. EATON:  Your Honor, I'm not sure, to answer your
25    question.  I don't know off the top of my head.  I think there

 1  would be, my colleague points out, there well might be a res
 2  judicata problem with respect to such a new case because the
 3  plaintiffs are in this case.
 4          And that case, that that claim has been litigated to
 5  an extent.  I could be wrong about that.  But off the top of
 6  my head, I think that potentially could be a problem.
 7          THE COURT:  Res judicata.  I denied a motion to
 8  dismiss.  That would be res judicata?  I mean, if I denied the
 9  motion to amend, I'm sorry, that would be res judicata?
10          MR. EATON:  Your Honor, forgive me.  I don't know
11  the answer off the top of my head.
12          THE COURT:  Mr. Harkness, I understand your being
13  incredibly peeved by counsel wanting to do this at this point
14  in time.
15          But how do you deal with the law that talks about
16  leave to amend being freely granted?  There hasn't been
17  discovery in this case.  Doesn't the law sort of tip towards
18  plaintiffs here?
19          MR. HARKNESS:  In some of the cases it does, but
20  there certainly have been some cases that we've cited.  The
21  state case we cited, specifically, addressed an instance like
22  this where there's a motion to dismiss and an attempt to plead
23  around the Court's decision.  And the Second Circuit held it's
24  perfectly appropriate to deny a motion to amend.
25          Here, we're looking at the field more broadly than

1   just this case. We have five cases naming the MTN defendants.
2   Plaintiff's counsel is the plaintiff's counsel in all of them.
3   They're co-counsel in one of those. There's the sixth case,
4   the *Lau* case, that is before you, where MTN hasn't been named
5   but certainly it's a carbon copy of this.
6          So our fundamental question is, where does this end?
7   Where do we keep moving around with these pleadings?
8   Particularly, whereas here we have pre-motion conference and
9   you expressed your views about primary liability, so they
10  brought primary liability claims elsewhere.
11         And so we're looking at this on the whole. So when
12  you take all those factors --
13         THE COURT: Where have the primary liability claims
14  been brought?
15         MR. HARKNESS: In Washington, D.C., in *Chand* and
16  *Davis*. My point being is that there seems to be some shifting
17  based on what one judge says, then moved somewhere else, and
18  so we're at a point where I think it's perfectly within your
19  discretion to deny them leave to amend.
20         I do take your point that it is usually freely
21  granted. But your discretion is informed by the totality of
22  the circumstances, and we think on balance the merit moved it
23  ahead with a piece of the case that's supposed to move ahead.
24  We've obviously made a 1292 application, so that would be
25  something we have to deal with. But adding Afghanistan here,

1    where two years ago they could have pled, as they did in
2    *Cabrera*.  I mean, this all could have been done years ago,
3    literally years ago.  So that's why we think on balance, your
4    discretion should be informed not to grant an amendment.
5              THE COURT:  Assuming that the statute hasn't run,
6    what would legally preclude plaintiffs from simply bringing a
7    new action, one count against this defendant, or these
8    defendants, and simply moving it to consolidate with this
9    case?  Again, I'm talking practically.
10             MR. HARKNESS:  Practically, I'm looking at the
11   complaint and seeing a 2011 Baghdad attack.  So I'm not sure
12   that we can assume away a statute of limitations, Your Honor.
13   So practically speaking, I think that there would be some
14   problems.
15             THE COURT:  This is the Afghanistan?
16             MR. HARKNESS:  Excuse me.  Not Baghdad.  There was
17   an older -- I'm just looking at this quickly.  So there's --
18   we'd have to look.  It could be, maybe, they don't have an
19   issue.  But --
20             THE COURT:  Do both sides agree that we don't need
21   any further briefing on this?  I know these were just
22   pre-motion letters.  Do we really need further briefing on
23   this?  Do you agree we can stand by your letter?  Mr.
24   Harkness, do you agree we can stand by yours?
25             MR. EATON:  My only hesitation is that in our

1   initial letter we only addressed prejudice, and then in their

2   response they didn't claim prejudice.  They only claimed bad

3   faith.  We haven't had an opportunity to respond to that.

4              THE COURT:  You just told me that it was good faith.

5              MR. EATON:  Indeed I did, Your Honor.  And I think

6   there's -- they have not identified what the bad faith is.  So

7   I think it would be strange to take on faith.  Their assertion

8   that the mere fact of delay establishes bad faith on our part,

9   there's no law to support that conclusion and, in fact, there

10  is no bad faith at issue in this case.

11             The conflict potentially to plaintiffs, the

12  Afghanistan plaintiffs, not allowing to amend would be quite

13  dramatic.  It would be out of this case.  If we were --

14             THE COURT:  Why shouldn't their lawyers have thought

15  about that ahead and named them in the alternative count?

16             MR. EATON:  In hindsight, Your Honor, we clearly

17  should have.  But I think under the rule, leave is to be

18  freely given if justice so requires.  I think the prejudice to

19  my plaintiffs, whether it's my fault or simply a function of

20  error on our part that is forgivable or understandable, would

21  be severe and the prejudice to the other side really doesn't

22  exist.  There's no prejudice in having to brief a single

23  issue.

24             THE COURT:  Well, you will agree that in terms of

25  it, if I permit you to amend, that for instance, you would

1   agree based on my prior rulings that MTN Group Dubai would be
2   dismissed?
3            MR. EATON:  Yes, Your Honor.
4            THE COURT:  Well, I'm not particularly pleased by
5   what happened here.  I think counsel should have thought about
6   this in terms of -- I mean the complaint couldn't have
7   possibly been any longer than it was.  You could have
8   obviously added this count.
9            But I think in light of the law that it's supposed
10  to be freely given, and the fact that no discovery has taken
11  place and your concession that the Court's rulings, earlier
12  rulings, would apply to this account, I'm going to permit the
13  amendment.  Can you do that?  You've already got the draft.
14  You can file it by the end of the week.  Right?
15           MR. EATON:  Yes, Your Honor, we can.
16           THE COURT:  While you're at it, if there are any
17  paragraphs that you can remove from the original claim, that
18  would be helpful.
19           MR. EATON:  There are certainly the ones that we've
20  already withdrawn.  I'm reluctant -- I would be delighted to
21  have the complaint to be shorter.  I'm reluctant to promise a
22  reduction in paragraph.
23           THE COURT:  You want me to give you longer, so you
24  can take -- only on the promise that you take more paragraphs
25  out.  Otherwise, why don't you file ten days from now.

1  MR. EATON: Thank you, Your Honor.
2  THE COURT: Now the interlocutory appeal issue, Mr.
3  Harkness, I know this was pre-motion letters. Do you want to
4  further brief this?
5  MR. HARKNESS: We would welcome the opportunity to
6  brief it, Your Honor, yes.
7  THE COURT: Okay. Now I wasn't real sure of
8  plaintiff's position. You're opposing the interlocutory
9  appeal of the defendants because you want this case to move
10 forward?
11 MR. EATON: Correct, Your Honor.
12 THE COURT: But you talk about some other motion you
13 may make in response to it that you want to appeal certain
14 issues?
15 MR. EATON: Your Honor, all we said was, and this is
16 from my understanding that people fairly, commonly do it in
17 these circumstances, is that if Your Honor were to certify the
18 interlocutory appeal, there might be issues we would take up
19 at the same time for judicial efficiency, which the Second
20 Circuit has amended jurisdiction over, if Your Honor didn't
21 certify them.
22 THE COURT: Wouldn't every issue have to meet the
23 standard of an interlocutory appeal?
24 MR. EATON: It would be to certify it, Your Honor,
25 by the Second Circuit. They could actually exercise pendant

1  jurisdiction.  Theoretically, the entire order is certified,
2  not just the questions you certify.  So they have the
3  jurisdiction.
4           THE COURT:  I would have to indicate specific
5  questions.
6           MR. EATON:  You do, Your Honor.  And in most cases
7  the Second Circuit limits itself to those questions, but it's
8  not required to.  It can extend to other questions if it feels
9  that they need to be resolved in the course of resolving the
10 questions presented.
11          THE COURT:  Do you intend to respond to defendant's
12 motion by also identifying issues that you think ought to be
13 covered by the interlocutory appeal?
14          MR. EATON:  Your Honor, if there was additional
15 briefing on the issue we might choose to do that.  I haven't
16 given thought to this point.
17          THE COURT:  Mr. Harkness, you said you want to
18 further brief this.  Correct?  Can you file that brief in two
19 weeks?
20          MR. HARKNESS:  Yes, Your Honor.
21          THE COURT:  Okay.  Silvie.
22          THE LAW CLERK:  November 14th.
23          THE COURT:  And you want to respond by November
24 28th.  Is the 28th a day that isn't something?
25          THE LAW CLERK:  That should be fine.

1        THE COURT:  November 28th, and any reply a week

2   later, which would be December 7th.

3        THE LAW CLERK:  December 5th.  I'm sorry.

4        THE COURT:  All right.  So I think that resolved the

5   issues I called you here to discuss.  Is there anything else

6   we need to resolve, counsel for the plaintiff?

7        MR. EATON:  Not that we need to resolve today.

8        THE COURT:  Mr. Harkness?

9        MR. HARKNESS:  No, Your Honor.

10       THE COURT:  Okay.  Thank you.

11          (Proceedings concluded at 2:21 p.m.)

12

13          - - - - - - - - - - - - - - - -

14

15       I certify that the foregoing is a correct transcript

16  from the record of proceedings in the above-entitled matter.

17

18  */S/ Nicole Sesta, RMR, CRR*
    *Court Reporter/Transcriber*

19

20  *November 2, 2023*
         *Date*

21

22

23

24

25