# Freshfields Bruckhaus Deringer US LLP

**TIMOTHY P. HARKNESS**
601 Lexington Avenue, 31st Floor
New York, NY 10022

Tel +1 (212) 230-4610
timothy.harkness@freshfields.com

November 20, 2023

**VIA ECF**

Honorable Carol Bagley Amon, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Zobay v. MTN Group Ltd., et al.*, No. 1:21-cv-3503 (E.D.N.Y.) (CBA)

Dear Judge Amon,

      We, along with Covington & Burling LLP, represent Defendants MTN Group Ltd. ("MTN Group") and MTN Dubai Ltd. ("MTN Dubai") (together, "MTN Defendants") in this action. Under the Court's rules, we respectfully request a conference prior to filing a motion to dismiss the Second Amended Complaint. Alternatively, if the Court is prepared to grant leave to file the motion without a conference, the parties have agreed upon a proposed briefing schedule, with MTN Defendants' motion, limited to 20 pages, due on December 4, 2023; Plaintiffs' opposition, limited to 20 pages, due on December 21, 2023; and MTN Defendants' reply, limited to 10 pages, due on January 4, 2024.[1] The parties have conferred, and Plaintiffs are amenable to the Court's entering this briefing schedule without a conference, if the Court so chooses.

      All counts of the Second Amended Complaint should be dismissed as to MTN Dubai, and Counts 2 and 3 should be dismissed as to MTN Group, for the reasons provided in this Court's ruling on the motion to dismiss the First Amended Complaint. MTN Group also believes that the Second Amended Complaint should be dismissed in its entirety as to it, and expressly incorporates all arguments made in its motion to dismiss the First Amended Complaint, including its objection to personal jurisdiction. However, MTN Defendants do not intend to re-brief issues decided by this Court in its ruling of September 28, 2023. Instead, MTN Defendants' motion will focus on why Plaintiffs' new claim ("Count 4") should be dismissed for distinct reasons that are consistent with the Court's prior ruling. Count 4 presents two theories on which MTN Group is allegedly liable for aiding and abetting two attacks in Afghanistan in 2019: participating in the Irancell joint venture and allegedly acting in response to violent extortion by the Taliban. Both theories fail.

---

[1] If the Court holds a pre-motion conference, we respectfully request that it not be scheduled during the week of December 4, 2023, during which counsel for MTN Defendants will be unavailable.

1

**Failure to Satisfy the FTO Requirement**

Both of Plaintiffs' theories require them to sufficiently plead that the two Afghanistan attacks were "committed, planned, or authorized" by a designated Foreign Terrorist Organization ("FTO"). The Second Amended Complaint fails to do so.

Plaintiffs' allegations about the January 2019 suicide bombing are conclusory. The Second Amended Complaint alleges no specific facts about the attack, these various groups' alleged roles, or even any details about their activities in Afghanistan more generally. It alleges only that the attack was "jointly committed" by al-Qaeda, the Haqqani Network, and Lashkar-e-Taiba. SAC ¶ 1439. This bare assertion is not enough to "give rise to the reasonable inference" that any designated FTO committed, planned, or authorized the attack. Order at 39-40.

Plaintiffs' allegations about the July 2019 "insider" attack are likewise insufficient. Plaintiffs allege that the attack was committed by "the Taliban, including its Haqqani Network," SAC ¶ 1450, thus improperly conflating two groups the U.S. Government treats as distinct for designation purposes: the Haqqani Network is a designated FTO, while the Taliban is not. Nor can Plaintiffs satisfy the FTO requirement with a conclusory assertion, solely on information and belief, that an individual "polyterrorist" planned the attack. Consistent with this Court's prior opinion (Order at 31), this is not a proper "information and belief" allegation: it is neither uniquely within the knowledge of the defendant, nor a fact that can plausibly be inferred based on other facts alleged in the complaint. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

**Failure to Plead Aiding and Abetting**

Separate from the FTO requirement, both of Plaintiffs' theories fail to meet the elements of aiding-and-abetting liability.

*Irancell Theory*

The first theory underlying Count 4 is that MTN Group aided and abetted the Afghanistan attacks because MTN Group's partners in Irancell were allegedly "IRGC fronts," and that the IRGC supported the Taliban, such that MTN Group "indirectly" funded the Taliban. SAC ¶¶ 1519, 1521.

1. Plaintiffs have not alleged facts sufficient to show that MTN Group was "generally aware" it was "itself assuming a role in the terrorist activities" in Afghanistan by the Taliban and al-Qaeda. *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 224 (2d Cir. 2019). As to the Iraq attacks, this Court has held that there were sufficient public sources providing notice that Irancell's shareholders were linked to the IRGC, *and* of the allegedly close relationship between the IRGC and Hezbollah. *See* Order at 48. Yet as to the Afghanistan attacks, while the complaint alleges reports of weapons supplies from the Qods Force to the Taliban, it falls short of pleading the "closely intertwined" relationship needed to demonstrate general awareness. *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 (2d Cir. 2021). And although the complaint alleges that *Iran* provided al-Qaeda support by allowing its fighters to transit through the country, it contains no specific allegations about the *IRGC's* relationship with al-Qaeda.

2. Plaintiffs also fail to plead that MTN Group "consciously and culpably participated" in the Afghanistan attacks through its Irancell investment. As to the Iraq attacks, this Court has concluded that the complaint alleges "direct and extraordinary" assistance. Order at 59. While MTN Group respectfully disagrees, *see* ECF No. 143, Plaintiffs' Afghanistan allegations are different: they admit that their theory is that MTN Group "*indirectly* financed the Taliban's terrorist attacks." SAC ¶ 1511 (emphasis added). Given that Plaintiffs admit the "attenuated" nexus with respect to Afghanistan, their burden is to plead "culpable participation through intentional aid that substantially furthered the tort." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023). They cannot meet that burden. This Court has already held that Plaintiffs do not adequately allege that MTN Group intended to support terrorism. Order at 74. And in contrast to what the Court concluded with respect to the Iraq-related allegations, Plaintiffs plead no facts supporting a plausible inference that cellphones or other telecommunications technology were material to a suicide bombing or small-arms attack by an Afghan army "insider" in Afghanistan in 2019.

*Extortion Theory*

The second theory is that the Taliban allegedly extorted MTN Group's Afghanistan subsidiary: ordering it to pay "taxes" and to shut down towers or else face extreme violence.

1. The complaint fails to plead facts demonstrating that MTN Group was "generally aware" that it was "assuming a 'role' in terrorist activities" by being extorted by the Taliban. *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018). The complaint alleges that the Taliban, which controlled substantial territory in Afghanistan, gave MTN Afghanistan orders at the barrel of a gun. Allegations that MTN Afghanistan acceded to those orders does not support a plausible inference of awareness of assuming an affirmative role in terrorist activities.

2. Plaintiffs' extortion-based theory also fails because it does not qualify as "conscious, voluntary, and culpable participation in another's wrongdoing." *Taamneh*, 598 U.S. at 493. To "abet" "carr[ies] an implication of purposive attitude towards [the act]." *United States v. Peoni*, 100 F.2d 401, 402–03 (2d Cir. 1938), *cited in Taamneh*, 598 U.S. at 488–90. Providing funds or other support to terrorists because they order you to do so—and threaten to kill your employees or destroy your ability to serve your customers if you do not comply—is not fairly characterized as a "voluntary" or "culpable" decision to participate in a terrorist act.

Beyond this fundamental flaw, there is also a temporal disconnect between the two Afghanistan attacks and MTN Afghanistan's allegedly coerced assistance to the Taliban. The two Afghanistan attacks occurred in 2019. But Plaintiffs allege that MTN Afghanistan paid "protection payments" only "through 2016." SAC ¶ 936. As for the alleged tower shutdowns, Plaintiffs allege no timeframe at all, and all of their specific allegations refer to the period from 2008 to the early 2010s. SAC ¶¶ 937–50. These alleged actions cannot be said to have substantially assisted a small-arms insider attack and a suicide bombing several years later. *See Siegel*, 933 F.3d at 224 (no aiding and abetting where alleged assistance "ceased" "ten months before" the attacks at issue); *Honickman*, 6 F.4th at 500 (considering "whether the alleged aid . . . would be important to the nature of the injury-causing act").

3

Respectfully,

s/Timothy P. Harkness
Timothy P. Harkness

CC: Counsel of Record (via ECF)