**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHANIE ZOBAY, et al., <br><br> Plaintiffs, <br><br> -v.- <br><br> MTN GROUP LIMITED, et al., <br><br> Defendants. | Case No.: 1:21-cv-03503-CBA-VMS |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MTN GROUP LIMITED'S MOTION TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND TO STAY PROCEEDINGS**

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I. This Case Is Effectively Two Cases In One—And Both Warrant Certification. | 2 |
| II. The Court Should Certify Plaintiffs' Targeting Theory of Personal Jurisdiction for Interlocutory Appeal. | 4 |
| III. MTN Group's Proposed Questions on *Taamneh* Apply to Both the Iraq and Afghanistan Claims. | 9 |
| CONCLUSION | 10 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Geophysical Union v. Texaco, Inc.*,
    802 F. Supp. 1 (S.D.N.Y. 1992)...................................................................................................4

*Ariel Invs., LLC v. Ariel Cap. Advisors LLC*,
    881 F.3d 520 (7th Cir. 2018) ......................................................................................................7

*Batalla Vidal v. Nielsen*,
    2018 WL 333515 (E.D.N.Y. 2018).........................................................................................4, 5

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
    42 F.4th 948 (8th Cir. 2022) .......................................................................................................8

*Cabrera v. Black & Veatch Special Projects Corp.*,
    2021 WL 3508091 (D.D.C. 2021) ..............................................................................................6

*Capitol Records, LLC v. Vimeo, LLC*,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013)........................................................................................4

*Controles v. Super Sys., Inc.*,
    617 F. App'x 406 (6th Cir. 2015) ...............................................................................................7

*Est. of Klieman v. Palestinian Authority*,
    923 F.3d 1115 (D.C. Cir. 2019), *reinstated*, 820 F. App'x 11 (D.C. Cir. 2020) .......................6

*In re Gen. Motors LLC Ignition Switch Litig.*,
    427 F. Supp. 3d 374 (S.D.N.Y. 2019)........................................................................................3

*Hawkins v. i-TV Digitális Távközlési zrt.*,
    935 F.3d 211 (4th Cir. 2019) .................................................................................................7, 8

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990).........................................................................................................3

*Linde v. Arab Bank, PLC*,
    97 F. Supp. 3d 287 (E.D.N.Y. 2015) .........................................................................................4

*O'Neill v. Asat Trust Reg.* (*In re Terrorist Attacks on Sept. 11, 2001*),
    714 F.3d 659 (2d Cir. 2013).................................................................................................7, 8

*United States ex rel. Quartararo v. Cath. Health Sys. of Long Island, Inc.*,
    521 F. Supp. 3d 265 (E.D.N.Y. 2021) ...................................................................................3, 4

*Republic of Colombia v. Diageo N. Am. Inc.*,
   619 F. Supp. 2d 7 (E.D.N.Y. 2007) ....................................................................................1, 4

*SEC v. Credit Bancorp, Ltd.*,
   103 F. Supp. 2d 233 (S.D.N.Y. 2000)....................................................................................3

*Sotloff v. Qatar Charity*,
   674 F. Supp. 3d 1279 (S.D. Fla. 2023), *vacated*,
   2023 WL 6471413 (S.D. Fla. 2023) ......................................................................................7

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023)...................................................................................................2, 9, 10

*Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*,
   779 F. App'x 66 (2d Cir. 2019) .............................................................................................8

*United States v. Hansen*,
   599 U.S. 762 (2023)...............................................................................................................9

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016)...................................................................................................3

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................................. 2, 3

**Other Authorities**

Br. of United States, *AstraZeneca UK Ltd. v. Atchley*,
   2024 WL 2384229 (2024)....................................................................................................10

# INTRODUCTION

When this case was only about Iraq attacks, it was already the paradigmatic "big" case for which certification is "more freely granted." *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 9 (E.D.N.Y. 2007) (citations omitted). Plaintiffs are poised to launch globe- and decade-spanning discovery. They are setting out to prove that a South African company's participation in a telecommunications venture serving Iranian consumers actually funneled critical military equipment to several terrorist militias in Iraq, making MTN Group a *culpable participant* in virtually every battlefield injury suffered in that country. To get to this point, Plaintiffs prevailed on a legal theory of jurisdiction that another court expressly rejected. And they relied on a conception of aiding and abetting that raises difficult questions of how to interpret a brand-new Supreme Court decision—a decision the Solicitor General reads differently from this Court. On its own, Plaintiffs' Iraq case checks every box for interlocutory appeal and then some.

But now, after Plaintiffs' belated amendment of their complaint and this Court's order of September 16, 2024 (ECF No. 178) ("2024 Order"), the case is even bigger. Now it adds a claim that MTN Group culpably participated in attacks in a *different* country (Afghanistan), committed by *different* terrorists (the Taliban, al-Qaeda, and others), based on *different* theories of jurisdiction ("targeting" the U.S. forum) and liability (alleged protection payments and tower shut-downs under threat of Taliban violence). As with Iraq, Plaintiffs' case-within-a-case about Afghanistan depends on a jurisdictional theory that other courts have rejected, and raises difficult questions beyond the frontiers of existing Second Circuit precedent. The 2024 Order supplies added reason why interlocutory appeal is vitally warranted. This Court should certify both orders.

1

## ARGUMENT

**I.     This Case Is Effectively Two Cases In One—And Both Warrant Certification.**

Plaintiffs' Second Amended Complaint presents two completely different theories of how MTN Group culpably participated in attacks in two different countries. In one, Plaintiffs maintain that MTN Group's participation in the Irancell venture furthered the IRGC's efforts to provide technology and support to terrorist proxies and "joint cells" that included (among others) the Qods Force, Hezbollah, and Jaysh al-Mahdi. SAC ¶¶ 684, 814–70, 880–96, 1476–77, 1484–87, 1519. In the other, Plaintiffs maintain that complying with payment and cell tower shut-down demands by the Taliban substantially assisted an entirely different set of terrorists, including al-Qaeda, the Haqqani Network, Lashkar-e-Taiba, and Jaysh-e-Mohammed, carry out attacks in Afghanistan. SAC ¶¶ 922–23, 926–30, 932–48, 1511, 1521. Plaintiffs' Iraq case depends on a jurisdictional theory rooted in Irancell's alleged procurement of U.S.-origin goods, Order at 27–32, Sept. 28, 2023, ECF No. 129 ("2023 Order"), whereas the Afghanistan case depends on a jurisdictional theory focused on MTN Afghanistan's compliance with Taliban demands and whether the decision to do so "targeted" the United States, *id.* at 33–35.[1]

Because of these many distinctions, a legal question that could dispose of either set of Plaintiffs' claims suffices on its own to satisfy 28 U.S.C. § 1292(b). The Second Circuit has explained that "the resolution of an issue need not necessarily terminate an action in order to be

---

[1] Plaintiffs presented an alternative theory of liability for their Afghanistan claim that relied on an attenuated connection between the Irancell venture and the Afghanistan attacks. SAC ¶¶ 1511, 1521. The Court did not resolve whether this alternative theory was viable. 2024 Order at 12 n.4. Even under this Court's approach in its 2023 Order, that theory is insufficient because Plaintiffs do not allege that MTN Group was generally aware of the alleged connection between the IRGC and the Taliban, or that the IRGC had the same close relationship with the Afghanistan terrorists as the Iraq terrorists. Defs.' Mot. to Dismiss 12–17, ECF No. 167-1. Further, a decision from the Second Circuit adopting MTN Group's reading of *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), with respect to the Iraq attacks would necessarily foreclose Plaintiffs' Irancell-based theory of liability for the Afghanistan attacks.

2

'controlling'" for purposes of § 1292(b). *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (citations omitted). In other words, questions certified for interlocutory appeal need not dispose of *every* claim or issue presented in a litigation; it is enough that the appellate court's "determination 'could significantly affect the conduct of the action.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019) (quoting *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 233, 227 (S.D.N.Y. 2000)); *see United States ex rel. Quartararo v. Cath. Health Sys. of Long Island, Inc.*, 521 F. Supp. 3d 265, 276 (E.D.N.Y. 2021) (an issue is "controlling" if "the resolution of the issue should 'materially affect the litigation's outcome'" (citation omitted)).

MTN Group has already explained why Plaintiffs' Iraq case warrants interlocutory appeal. *See* ECF No. 152-1 ("2023 Mot."); ECF No. 153; ECF No. 176. As explained below, the Afghanistan case warrants interlocutory appeal, too. Thus, the questions that should be certified for appeal do, collectively, control this entire sweeping case, and could result in its complete termination. But questions going to either part of the case independently satisfy the certification standard. Moving forward, a case that is about only the Iraq claim or only the Afghanistan claim would be narrower, and discovery more focused, than one involving both claims.

The controlling questions of law that MTN Group has raised would at minimum streamline the litigation process. Discovery in this case promises to be exceptionally costly and burdensome, including on the U.S. Government and potentially foreign governments. *See* 2023 Mot. 29. An eventual trial would consume substantial judicial resources; a much less sprawling ATA case took seven weeks to try, before the Second Circuit reversed because it disagreed with the district court's personal jurisdiction analysis. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 322 (2d

3

Cir. 2016).[2] An interlocutory appeal could at least "advance the time for trial or . . . shorten the time required for trial," a factor that "carries particular weight." *Quartararo*, 521 F. Supp. 3d at 279 (certifying interlocutory appeal because "a dismissal of [some] claims will streamline discovery").[3]

## II. The Court Should Certify Plaintiffs' Targeting Theory of Personal Jurisdiction for Interlocutory Appeal.

The "targeting" theory of jurisdiction on which Plaintiffs' Afghanistan case is based raises a controlling question of law on which reasonable jurists can disagree, and in fact already have disagreed. According to Plaintiffs, MTN Afghanistan's alleged payments and shutdowns at the Taliban's behest were expressly aimed at (or "targeted") the United States. The Court held that such support established jurisdiction because it was allegedly provided "directly to a terrorist group" that "was known to be targeting United States forces." 2023 Order at 33–34.[4]

The Court's order raises the following question of law:

---

[2] Another ATA case in this District had a six-week trial. *See Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 299 (E.D.N.Y. 2015). That verdict also was vacated for legal error. 882 F.3d 314 (2d Cir. 2018).

[3] *See also Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 554 (S.D.N.Y. 2013) (certifying appeal that could narrow instances of infringement "because a definitive answer may save the Court and parties 'vast amounts of expense and time'" (quoting *Am. Geophysical Union v. Texaco, Inc.*, 802 F. Supp. 1, 29 (S.D.N.Y. 1992)); *Diageo*, 619 F. Supp. 2d at 11 ("[P]ermitting an interlocutory appeal will expedite this litigation" because "[i]f [d]efendants were to prevail on even one of the[ir] defenses, the action would be dismissed in whole or in part, thus eliminating or significantly reducing the costs of discovery."); *Batalla Vidal v. Nielsen*, 2018 WL 333515, at *3 (E.D.N.Y. 2018) (certifying appeal because the Second Circuit's ruling could require dismissal of some claims, which "would not only simplify this court's task but might also reduce the scope of discovery").

[4] The Court reached this jurisdictional conclusion in the 2023 Order. Because it then dismissed Plaintiffs' Afghanistan claims on the merits, the Court's conclusion on targeting jurisdiction was not a controlling question of law at that time. Now it is, following Plaintiffs' amendment and the 2024 Order sustaining Plaintiffs' new Afghanistan claim.

4

> Is a defendant's foreign conduct "expressly aimed" at the United States when the defendant allegedly provided support to terrorists that attack Americans, but did not share the terrorists' objectives of harming Americans or the United States?

That question is controlling, and its resolution could materially advance the termination of this litigation. If the Second Circuit agrees with MTN Group that Plaintiffs' "targeting" theory cannot support personal jurisdiction, then Plaintiffs' Afghanistan-based claims and theory of liability based on Taliban payments and tower shut-downs would fall out of the case.[5]

There is also substantial ground for difference of opinion about Plaintiffs' targeting theory, for two independent reasons: "there is conflicting authority on the issue," and "the issue is particularly difficult and of first impression for the Second Circuit." *Batalla Vidal*, 2018 WL 333515, at *2 (citation omitted).

**Conflicting Authority.** This Court approved Plaintiffs' targeting theory based on the "direct" nature of the alleged Taliban support and "know[ledge]" of the Taliban's attacks on Americans. 2023 Order at 34. The Court held that such conduct is expressly aimed at the United States even if it is "made under duress," so long as it reflected "a bilateral bargain" with the Taliban. *Id.* at 35. In its 2024 Order, the Court described that alleged "bargain" as MTN Group making a "cold, commercial calculus" that "it was cheaper to pay the Taliban than it would have been to rebuild the towers in the face of Taliban threats" to destroy them. 2024 Order at 7. In the Court's view, this allegedly commercial decision was expressly aimed at the United States because MTN Group was "warned" that acquiescing to the Taliban "threaten[ed] Coalition forces"; in other words, the effects of that commercial decision on Americans were foreseeable. 2023 Order at 34–35.

---

[5] The same idea applies in reverse if the Second Circuit rejects Plaintiffs' jurisdictional theory supporting their Iraq-based claim. *See* 2023 Mot. 6–12.

Other jurists have reached the opposite conclusion about this precise jurisdictional theory, and very similar ones. Indeed, the 2023 Order recognized that a magistrate judge considered and rejected "an identical targeting theory." 2023 Order at 34 (citing *Cabrera v. Black & Veatch Special Projects Corp.*, 2021 WL 3508091, at *12 (D.D.C. 2021) (report and recommendation)).[6] In *Cabrera*, the magistrate judge concluded that MTN Group's alleged payments to the Taliban and shutting down of cell towers was "far too attenuated to establish personal jurisdiction in American courts" because there were "no facts [to] suggest that the conduct was aimed at the United States, especially considering that all of the alleged tortious conduct occurred abroad." 2021 WL 3508091, at *12.

*Cabrera* does not stand alone. For instance, in *Ofisi v. Al Shamal Islamic Bank*, the court rejected targeting jurisdiction over a Sudanese bank that "knowingly maintained and serviced bank accounts used by al Qaeda operatives." 2019 WL 1255096, at *1, 6 (D.D.C. 2019). Under this Court's view, jurisdiction would have existed: the bank provided "direct aid" to terrorists notorious for targeting the United States. 2023 Order at 34. But the court there found no jurisdiction because "[t]he 'purposefully directed' activities plaintiffs pled in connection with the bombing are al Qaeda's, not [the bank's]." 2019 WL 1255096, at *6. And while this Court found non-dispositive MTN Group's lack of "intent" to harm Americans, 2023 Order at 34–35, several courts have described intent as central to whether a defendant expressly *aimed* its conduct at the United States. *See Est. of Klieman v. Palestinian Authority*, 923 F.3d 1115, 1125–26 (D.C. Cir. 2019) (no jurisdiction because defendants did not "endeavor[] to injure American nationals"), *reinstated*, 820

---

[6] The district court in *Cabrera* later vacated the report and recommendation as moot because the plaintiffs further amended their complaint, mooting the motions to dismiss that the report concerned. 2024 WL 1435146, at *9 (D.D.C. 2024). That procedural development does not change the fact that Judge Faruqi is (like this Court) a reasonable jurist who carefully considered this question of law and reached a differing conclusion.

6

F. App'x 11 (D.C. Cir. 2020); *Mwani v. bin Laden*, 417 F.3d 1, 13–14 (D.C. Cir. 2005) ("unabashedly malignant actions [of Osama bin Laden and al-Qaeda were] *directed at* . . . this forum" (emphasis added) (citation omitted)); *Sotloff v. Qatar Charity*, 674 F. Supp. 3d 1279, 1313 (S.D. Fla. 2023) (upholding targeting jurisdiction because "factors weigh in favor of finding that [defendant] *intended* for its support to cause harm in the United States" (emphasis added)), *vacated*, 2023 WL 6471413 (S.D. Fla. 2023)).

Beyond terrorism cases, courts hold that direct aid to a wrongdoer, with knowledge of forum effects, is not expressly aimed at the forum. The Fourth Circuit has stressed the "important limitations" on express-aiming jurisdiction, such that "aiding-and-abetting . . . does not necessarily involve the sort of 'express aiming' at the forum that the effects test requires." *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 231 (4th Cir. 2019). Thus, a person that acts "for selfish reasons that make him merely indifferent to any effect in the forum"—even with "knowledge" of the "in-forum effect"—"falls short of express aiming." *Id.* That is *exactly* how this Court construed Plaintiffs' allegations here: a "cold" commercial decision that was indifferent to "warn[ings]" of the harms to Americans. 2023 Order at 34–35; 2024 Order at 7. In the Fourth Circuit and beyond, that would fail to establish jurisdiction. *See also Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) ("Knowing about a potential for harm in a particular state is not the same as acting *in* that state . . . ."); *Maxitrate Tratamento Termico e Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408 (6th Cir. 2015) (Defendant's "know[ledge] that its intentional acts will cause effects in [the forum]" is insufficient for targeting jurisdiction.). All of this conflicting authority establishes substantial grounds for a difference of opinion.

**Difficult Question of First Impression**. Plaintiffs' targeting theory also presents a novel question for the Second Circuit. This Court relied on *O'Neill v. Asat Trust Reg. (In re Terrorist*

7

*Attacks on Sept. 11, 2001*), 714 F.3d 659 (2d Cir. 2013), to conclude that targeting jurisdiction is proper here. 2023 Order at 34. In *O'Neill*, the relevant defendants "controlled and managed purported charitable organizations" that "directly provided financial and other resources to al Qaeda," while "knowing that al Qaeda was engaged in a global campaign of terror directed at that the United States." 714 F.3d at 667–78. "Nevertheless," the court held, "factual issues persist[ed] with respect to whether this support was 'expressly aimed' at the United States" (and in the circumstances warranted jurisdictional discovery). *Id.* In other words, the defendants provided "direct aid" to terrorists "known to be targeting United States [citizens]," 2023 Order at 34, but that without more was insufficient to establish targeting jurisdiction. Moreover, the *O'Neill* defendants ran *pro-al-Qaeda charities*, suggesting alignment with the terrorists' anti-American goals, in contrast to the commercial motivations Plaintiffs allege here.

It is at least a novel and difficult question whether the Second Circuit would extend *O'Neill* to hold that "direct aid" plus "knowledge" now *is* enough to plead jurisdiction, even where the defendant's alleged aims are commercial and *not* aligned with the terrorists' goals of striking Americans. Indeed, since *O'Neill*, the Second Circuit has highlighted the defendant's "*specific intent* to further terrorism in the United States" as important to targeting jurisdiction. *Underwriting Members of Lloyd's Syndicate 2 v. Al Rajhi Bank*, 779 F. App'x 66, 68–69 (2d Cir. 2019) (emphasis added). Whether the Second Circuit would find that a "cold, commercial" "bargain for economic advantage" in Afghanistan is expressly aimed at the United States, 2024 Order at 7, is a particularly difficult question given other circuits' warnings that express-aiming jurisdiction has "important limitations," *Hawkins*, 935 F.3d at 230, and is "construe[d] . . . narrowly," *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 954 (8th Cir. 2022).

8

### III. MTN Group's Proposed Questions on *Taamneh* Apply to Both the Iraq and Afghanistan Claims.

This Court should also certify its 2024 Order for interlocutory appeal in tandem with the questions MTN Group has already proposed for appeal following the Court's 2023 Order. This Court's 2023 Order, and now its 2024 Order, raise a question of law about what it means to consciously and culpably participate in a terrorist act as required by *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). *See* 2023 Mot. 19. That question includes considerations such as the role of a defendant's intent to assist the underlying terrorist attacks, what kind of acts suffice to establish a defendant's "culpable participation" in the attacks, and what type of assistance is necessary to plausibly allege expansive liability for every one of a group's attacks. *See* 2023 Mot. 19–28.

The answers to these questions about how to interpret *Taamneh* will apply not only to the Iraq claim, but also to the Court's Afghanistan ruling in its 2024 Order. For instance, this Court held that MTN Group's actions were "plausibly culpable under *Taamneh*" even though MTN Group allegedly had "commercial interests in mind," 2024 Order at 8, such that the 2019 terrorist attacks were not "something that [MTN Group] wishe[d] to bring about," *Taamneh*, 598 U.S. at 498 (citation omitted). Reasonable jurists could read *Taamneh* as not supporting liability where a defendant acquiesces in a terrorist's demands for payment because "it was cheaper to pay the Taliban than it would have been to rebuild the towers in the face of Taliban threats" to destroy them. 2024 Order at 7. *See* 2023 Mot. 19–22. Indeed, since *Taamneh*, the Supreme Court's one-sentence summary of that decision was that "aiding-and-abetting" is "the provision of assistance to a wrongdoer *with the intent to further* an offense's commission." *United States v. Hansen*, 599 U.S. 762, 771 (2023) (citing *Taamneh*, 598 U.S. at 490–91) (emphasis added).

The 2024 Order is also relevant to MTN Group's arguments about the types of allegations that are necessary under *Taamneh* to conclude that a defendant has expansive liability for all of a

9

terrorist group's activity. *See* 2023 Mot. 26–27. Here, the Court's reasoning would allow MTN Group to be deemed a culpable participant in every Taliban attack anywhere in Afghanistan over more than a decade. Reasonable jurists could read *Taamneh* to preclude such a reading. The Supreme Court explained that holding a defendant liable for "every wrongful act committed by [an] enterprise . . . begins to blur with conspiracy liability." *Taamneh*, 598 U.S. at 496. But this Court correctly held that Plaintiffs failed to state a conspiracy claim because "they have not adequately alleged an agreement in furtherance of a common scheme." 2023 Order at 73. And this Court's view of the Afghanistan allegations—that MTN Group made a "cold, commercial calculus" in response to Taliban threats, 2024 Order at 7—is even further away from the type of extraordinary, conspiracy-like culpability supporting such sweeping liability. *See* Br. for United States, *AstraZeneca UK Ltd. v. Atchley*, 2024 WL 2384229, at *14 (2024) (D.C. Circuit erred because it "focuse[d] on [defendants'] alleged assistance to Jaysh al-Mahdi in general, rather than the terrorist attacks that injured [plaintiffs]," and therefore "did not undertake to trace a 'definable nexus'" between the alleged support, "on the one hand, and the attacks that injured [plaintiffs], on the other").

Because the merits of all of Plaintiffs' claims—Iraq and Afghanistan—hinge on an interpretation of *Taamneh* that is subject to substantial grounds for difference of opinion, certification is warranted and appropriate before this sprawling and unprecedented case moves forward.

## CONCLUSION

For the reasons provided here, in MTN Group's opening and reply memoranda, and its letter regarding the *Atchley* vacatur and Solicitor General brief, the Court should grant certification and a stay.

10

Dated: October 15, 2024               Respectfully submitted,

**COVINGTON & BURLING LLP**          **FRESHFIELDS US LLP**

s/ *David M. Zionts*\*                s/ *Timothy P. Harkness*
David M. Zionts (admitted *pro hac vice*)   Timothy P. Harkness
Covington & Burling LLP               Kimberly H. Zelnick
One CityCenter                        Scott A. Eisman
850 Tenth Street N.W.                 Freshfields US LLP
Washington, DC 20001                  3 World Trade Center
Telephone: (202) 662-5987             175 Greenwich Street
Facsimile: (202) 778-5987             New York, New York 10007
dzionts@cov.com                       Telephone: (212) 277-4000
                                      Facsimile: (212) 277-4001
Benjamin S. Haley (admitted *pro hac vice*)   timothy.harkness@freshfields.com
Covington & Burling (Pty) Ltd.        kimberly.zelnick@freshfields.com
Rosebank Link                         scott.eisman@freshfields.com
173 Oxford Road, 7th Floor
Johannesburg 2196, South Africa
Telephone: +27 (11) 944-6914
Facsimile: (202) 778-5194
bhaley@cov.com

Micaela R.H. McMurrough
Covington & Burling LLP
The N.Y. Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1131
mmcmurrough@cov.com

                                      *Counsel for Defendant MTN Group Limited*

---

\* Signed with permission.