UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE ZOBAY, et al., <br>                    Plaintiffs, <br>    -against- <br> MTN GROUP LIMITED, et al., <br>                    Defendants. | NOT FOR PUBLICATION <br> **MEMORANDUM & ORDER** <br> 21-cv-3503-CBA-VMS |
| DAVID LAU, et al., <br>                    Plaintiffs, <br>    -against- <br> ZTE CORPORATION, et al., <br>                    Defendants. | 22-cv-1855-CBA-VMS |
| SHEILA LONG, et al., <br>                      Plaintiffs, <br>    -against- <br> MTN GROUP LIMITED, et al., <br>                    Defendants. | 23-cv-5705-CBA-VMS |

**AMON, United States District Judge:**

Before me are appeals from three Orders of the Honorable Vera M. Scanlon, United States Magistrate Judge, allowing Plaintiffs to serve ZTE Corporation ("ZTE") and Huawei Technologies Co., Ltd. ("Huawei," and with ZTE "Defendants") via Defendants' U.S. counsel. (ECF Docket Entry ("D.E.") # 180 ("Zobay Order")[1]; Long, et al. v. MTN Grp. Ltd., et al., No. 23-cv-5705-CBA-VMS ("Long"), D.E. # 38 ("Long Order").) Defendants are Chinese companies headquartered in China. (Zobay Order 6.) Plaintiffs in Zobay and Lau have unsuccessfully attempted to effectuate service on Defendants in compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361 (the

---

[1] Magistrate Judge Scanlon ordered service by alternative means in Zobay and in Lau, et al. v. ZTE Corp., et al., No. 22-cv-1855-CBA-VMS ("Lau"), in a single opinion filed on both dockets. See Lau D.E. # 87 ("Lau Order").

1

"Hague Convention") through the Chinese Central Authority. (Zobay Order 8-11; see also Long Order 3-5.) Plaintiffs in each of the three actions, who are represented by the same counsel, moved to permit service by alternative means, specifically via Defendants' U.S. counsel, in light of the difficulties of achieving service in China. Magistrate Judge Scanlon granted their motions, reasoning that service via U.S. counsel was necessary, proper under Fed. R. Civ. P. 4(f)(3), and constitutionally sufficient. (Zobay Order 26-27; Long Order 21-23.) Defendants appealed, arguing Magistrate Judge Scanlon's allowance of service via U.S. counsel violated both Fed. R. Civ. P. 4(f) and the Hague Convention. (Zobay D.E. # 187 ("ZTE App."); Zobay D.E. # 189 ("Huawei App.").[2]) I adopt Magistrate Judge Scanlon's findings that service via U.S. counsel is necessary and constitutionally sufficient in this case. However, I find that such service is proper under Fed. R. Civ. P. 4(e)(1) and (h)(1)(A) applying New York C.P.L.R. §§ 308 and 311.

## BACKGROUND

Plaintiffs in the three cases seek damages pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2333, for Defendants' alleged aiding and abetting of terrorist attacks in Iraq, Afghanistan, and Syria. I have discussed the substance of their allegations in prior opinions (see Zobay D.E. ## 129, 178; Lau D.E. # 73), and need not recount those details here. As relevant here, Zobay Plaintiffs began attempting to serve ZTE in September 2021, and then attempted to serve Huawei in Zobay and Lau beginning in February 2022. (Zobay Order 8.) Zobay and Lau Plaintiffs sought to serve Defendants through the Chinese Central Authority, the body China has designated to receive requests for service from those in other countries party to the Hague Convention. (Id. 8-10, 14-15.) The Convention contemplates that the Central Authority will either complete and certify

---

[2] The appeals address the Zobay, Lau, and Long Orders together, so I will consider their arguments as applicable to each case. (ZTE App. 1 n.2; Huawei App. 1 n.1.) For purposes of this Memorandum & Order, I will consider the Lau Order as identical to the Zobay Order and focus my discussion on the latter. I will refer to all three Orders as "the Orders."

service of process or certify that process has not been served, see Hague Convention Arts. 6 and 13, but the Chinese Central Authority has yet to issue a formal certificate. (Zobay 9.) In July 2023 the Chinese Central Authority told Zobay and Lau Plaintiffs via email and a website tracker that their application had been rejected because "the execution of the request would infringe [on] the sovereignty or security of the People's Republic of China." (Id. 9-10.) Thereafter, Zobay and Lau Plaintiffs consulted with the Ministry of Justice of China to confirm the denial of their request, to which the Ministry responded "[t]hat the rejected means that the requests would not be executed so there will not be any certificate of service. Thank you." (Id. 13.) Due to the roadblock on service in China, Zobay and Lau Plaintiffs moved for service by alternative means. And in light of the cost and difficulty of serving Defendants in Zobay and Lau, Long Plaintiffs did not attempt to serve Defendants through the Chinese Central Authority; instead, they directly moved for service by alternative means as in Zobay and Lau. (Long Order 5.)

Magistrate Judge Scanlon granted Plaintiffs' requests. She found that Plaintiffs made reasonable attempts to achieve service via the Central Authority, which would justify using "other means not prohibited by international agreement." (Zobay Order 18-21 (quoting Fed. R. Civ. P. 4(f)(3)).) She explained that the Court's intervention is necessary because service "has not been and likely will not be made by China's Central Authority" despite "Plaintiffs' good-faith attempts to serve Defendants." (Id. 21.) In light of the service difficulties in Zobay and Lau, Magistrate Judge Scanlon found the need to intervene in Long because a similar attempt of service would be futile. (Long Order 14-15.) After considering several other options, Magistrate Judge Scanlon settled on service via U.S. counsel as the best alternative means. (Zobay Order 23-26.) Magistrate Judge Scanlon ordered Plaintiffs to serve Defendants via their U.S. counsel under Fed. R. Civ. P.

3

4(f)(3). (Id. 26-27.) Finally, she found this method complied with due process because it was "reasonably likely to put the defendants on notice." (Id. 28-30.)[3]

Defendants appealed, focusing their arguments on the impropriety of using Fed. R. Civ. P. 4(f)(3) to serve U.S. counsel in Hague Convention cases. Given that this issue has sparked debate among the courts, I asked for supplemental briefing and argument on the alternative ground of affirmance Plaintiffs raised of applying New York law. (See Docket Order dated Jan. 2, 2025); compare, e.g., Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V., 970 F.3d 1269, 1294-95 (10th Cir. 2020) (U.S. counsel may properly be served under Rule 4(f)(3) in Hague Convention cases because the Hague Convention does not prohibit such service), with e.g., Stansell v. Revolutionary Armed Forces of Colombia, No. 16-MC-405 (LGS) (SN), 2023 WL 6173524, at *5 (S.D.N.Y. Sept. 22, 2023) (U.S. counsel may not be served under Rule 4(f)(3) in Hague Convention cases because the Hague Convention does not authorize such service), and S.E.C. v. Lahr, No. 22-2497, 2024 WL 3518309 (3d Cir. July 24, 2024) (Schwartz, J.) (methods of service not authorized by the Hague Convention are impermissible where it applies). In response to that alternative theory, Defendants raise several objections. First, they argue that Plaintiffs waived this alternative argument by raising the theory in reply briefs. (Zobay D.E. # 200 ("Huawei Ltr.") 2; Zobay D.E. # 201 ("ZTE Ltr.") 1.) Second, ZTE argues that New York state law does not permit alternative service via counsel in Hague Convention cases. (ZTE Ltr. 4-5; see also Huawei Ltr. 4 n.4.) Third, Huawei argues that service via U.S. counsel is preempted by the Hague Convention because it is not explicitly authorized by the Convention and China has objected to service via counsel. (Huawei Ltr. 2-4; see Huawei App. 4-16.) ZTE similarly argues that the Federal Rules and the ATA preempt the incorporation of New York's

---

[3] Magistrate Judge Scanlon also denied the Lau Plaintiffs' motion for default judgment as moot. (Id. 31.)

alternative service rule. (ZTE Ltr. 2-4.) Lastly, Defendants argue that Plaintiffs have not shown alternative service is warranted under New York law in this case and that New York law should not provide an end-run around the Hague Convention. (ZTE Ltr. 4-5; see also ZTE App. 9-10; Huawei Ltr. 5; Huawei App. 15.)

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(A), a district court may set aside a magistrate judge's order on a non-dispositive pretrial matter if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(a). Motions for service by alternative means are non-dispositive pretrial matters. Werremeyer v. Shinewide Shoes, Ltd., No. 19-cv-10228 (MAS) (LHG), 2021 WL 3291683, at *2 (D.N.J. July 31, 2021); see also Gamboa v. Ford Motor Co., No. 18-10106, 2020 WL 7021690, at *1-2 (E.D. Mich. Nov. 30, 2020).[4] An order is clearly erroneous if the Court is "left with the definite and firm conviction that a mistake has been committed." Mental Disability Law Clinic v. Hogan, 739 F. Supp. 2d 201, 203 (E.D.N.Y. 2010) (quoting Easley v. Cromartie, 532 U.S. 234, 235 (2001)). An order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." Weiner v. McKeefery, No. 11-CV-2254 (JFB) (AKT), 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014) (citation omitted).

---

[4] Huawei argues Magistrate Judge Scanlon's order was dispositive because it "dispose[d] of a party's 'claim or defense,'" namely Huawei's "two defenses: failure to serve and improper service." (Huawei App. 3 (quoting Cates v. Columbia Univ. in N.Y., 330 F.R.D. 369, 372 (S.D.N.Y. 2019), and citing Lau D.E. # 82).) But Huawei raised these claims in response to Plaintiffs' request for default judgement, which Magistrate Judge Scanlon denied as moot. (Lau D.E. # 82 at 2-8; Zobay Order 30-31.) Defendants both claim that Magistrate Judge Scanlon's order disposes of their arguments for dismissal for improper service (Huawei App. 3; ZTE App. 4), but given that motions to dismiss for failure to serve do not always result in dismissals with prejudice, see 5B Wright & Miller, Federal Practice and Procedure ("Wright & Miller") § 1354 (4th ed. 2024), and Defendants do not provide any authority holding that orders granting motions to serve by alternative means are in fact dispositive to contrast Plaintiffs' authorities (Zobay D.E. # 191 ("Pl. Resp.") 5 & n.7), I will review the Orders under section 636(b)(1)(A). I note that "[f]or questions of law there is no practical difference between a district judge's review of a magistrate judge's ruling on a nondispositive manner and the de novo review suited to a dispositive manner." Wright & Miller § 3069 n.20 (citing, inter alia, In re Fin. Oversight & Mgmt. Bd. for P.R., 392 F. Supp. 3d 244 (D.P.R. 2019) (Swain, J.)).

## DISCUSSION

### I. Affirming the Order on Alternative Grounds

I may affirm a magistrate judge's order on grounds that she did not rely upon in her decision. Veras v. New York City Dept. of Educ., No. 22-cv-56 (JLR) (SN), 2024 WL 3446498, at *7 (S.D.N.Y. July 17, 2024); City of New York v. Beretta U.S.A. Corp., No. 00-cv-3641 (JBW) (CLP), 2005 WL 1279183, at *1 (E.D.N.Y. May 26, 2005). Defendants argue that I should not adopt this alternative ground of service pursuant to New York law because Plaintiffs only raised the availability of service under New York law in their reply brief before Magistrate Judge Scanlon and so have forfeited that argument. (Huawei Ltr. 2; ZTE Ltr. 1.) But I do have discretion to consider arguments first advanced in a reply brief. Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003); see also Compania de Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela, 341 F. App'x 722, 724-25 (2d Cir. 2009). I "may choose to admit such [arguments] where the opposing party will suffer no prejudice." Dixon v. NBCUniversal Media, LLC, 947 F. Supp. 2d 390, 396 (S.D.N.Y. 2013) (citation omitted). Here, Defendants were not blindsided by Plaintiffs' argument because Plaintiffs raised it, albeit briefly, in front of Magistrate Judge Scanlon, and they were not prejudiced because I allowed them to file responsive letters and heard oral argument on the issue. Therefore, I will exercise my discretion to consider this alternative ground. Black v. Wrigley, No. 16-cv-430 (CBA), 2021 WL 4932129, at *12 n.7 (E.D.N.Y. Sept. 21, 2021) (considering dispositive argument raised in reply brief when other party had a chance to respond to the argument).

### II. Merits of Service Under New York Law

Federal Rule 4(h)(1)(A) permits a foreign corporation to be served in a judicial district of the United States "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule

4(e)(1) permits service "following state law for serving a summons in an action brought in the courts" of the forum state or the destination state, here, New York. New York C.P.L.R. §§ 308(5) and 311(b) allow for service "in such manner as the court . . . directs, if service is impracticable" otherwise. Parallel practice in New York courts has confirmed this procedure. (See Pl. Resp. 23-24.) New York law clearly permits the court to order alternative service via counsel, see Doe v. Hyassat, 337 F.R.D. 12, 17 (S.D.N.Y. 2020) (collecting cases), and, as in many other states,[5] considers such service complete when counsel receive the operative legal papers, Korea Deposit Ins. Corp. v. Mina Jung, 59 Misc.3d 442, 447 (N.Y. Sup. Ct. 2017) (Billings, J.); Invar Intl., Inc. v. Zorlu Enerji Elektrik Uretim Anonim Sirketi, 32 Misc.3d 1216(A), at *1, 4-5 (N.Y. Sup. Ct. 2010) (Fried, J.), aff'd, 86 A.D.3d 404 (1st Dep't 2011).[6]

The Hague Convention applies in cases "where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention Art. 1. When service is to be accomplished through sending judicial documents abroad, the Hague Convention provides certain mechanisms to effectuate service. Id. Arts. 5, 8, 10. When service is complete and valid within the United States according to the applicable procedural law, the Hague Convention does not apply, and parties are free to operate under the domestic rules. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 706-07 (1988). The Supreme Court recognized the

---

[5] E.g., Ackelson v. Manley Toys Ltd., 871 N.W.2d 520 (Table) (Iowa Ct. App. 2015); Leach v. City Nat. Bank of Laredo, 733 S.W.2d 578 (Tex. App. 1987); see also Hotel Emps. and Rest. Emps. Int'l Union Welfare Fund v. Printer's Row, LLC, No. 06-cv-4630, 2008 WL 5142187 (N.D. Ill. Dec. 5, 2008).

[6] Magistrate Judge Scanlon's Order required Plaintiffs to deliver service via U.S. counsel but did not require Defendants' U.S. counsel to forward the documents to their clients. (Zobay Order 31.) Courts have found that U.S. counsel acts as a conduit for service occurring abroad when the court orders counsel to forward the documents to their client, because ultimately service is effected when the documents are sent abroad. See Bazarian Intl. Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A., 168 F. Supp. 3d 1, 14 (D.D.C. 2016) (citing In re Cathode Ray Tube (CRT) Antitrust Litig., 27 F. Supp. 3d 1002, 1009-10 (N.D. Cal. 2014)); see also SEC v. Unifund SAL, 910 F.2d 1028, 1034 (2d Cir. 1990) (service was proper under former Rule 4(i) (current Rule 4(f)) when service of process was "forwarded to Unifund in Beirut" so "Unifund's acknowledged receipt of that process renders service effective as having been completed in a foreign country"). However, where the court's order does not contemplate the need for U.S. counsel to send the documents abroad, service may be complete when U.S. counsel receives the complaint. See Invar, 32 Misc.3d 1216(A), at *5; (see Pl. Resp. 22).

applicability of this principle with respect to service on a domestic agent that was valid pursuant to an Illinois statute, id. at 707, but the principle has been applied to situations such as service on agents authorized by federal or state law,[7] substitute service via publication,[8] and substitute service on relatives.[9] New York courts have held that this theory applies to substituted service on U.S. counsel. Invar, 86 A.D.3d at 405. Because substituted service via U.S. counsel is complete under New York law when counsel receives the complaint, the Hague Convention is not implicated under Schlunk. Id.

ZTE argues that the decisions of the courts in Invar and Korea conflict with the New York Court of Appeals' decision in Morgenthau v. Avion Res. Ltd., 11 N.Y.3d 383 (2008). (ZTE Ltr. 4; see Transcript of Oral Argument dated Jan. 21, 2025 ("Tr.") 10-20.) This is wrong. In Morgenthau, the New York Court of Appeals held that personal service in Brazil could properly be made under the C.P.L.R. despite the lack of authorization under Brazilian law because Brazil was not a signatory to the Hague Convention. 11 N.Y.3d at 389-90. It did not consider whether service on counsel in the United States would be permissible under the C.P.L.R. or the Hague Convention. So, there was nothing in Morgenthau that the Invar court should have "grappled" with (Tr. 14), because Morgenthau is inapposite.[10] ZTE's citation of Sardanis v. Sumitomo Corp. is also inapposite because that case concerned service under New York law which required the

---

[7] Peake v. Suzuki Motor Corp., No. 19-cv-382 (JMC), 2019 WL 5691632, at *5-8 (D.S.C. Nov. 4, 2019) (Childs, J.) (service via Secretary of State for foreign corporation which is not authorized to do business in state was complete upon service on the Secretary); San Antonio Winery, Inc. v. Jiaxiang Micarose Trade Co., 53 F.4th 1136, 1140-44 (9th Cir. 2022) (service on Director of the Patent and Trademark Office pursuant to statute was complete upon service to the Director).
[8] Piatek v. Siudy, 351 F. App'x 232, 233 (9th Cir. 2009) (service on defendant in Poland by publication in Washington does not implicate the Hague Convention).
[9] Willhite v. Rodriguez-Cera, 274 P.3d 1233 (Colo. 2012) (en banc) (substitute service on defendant's sister was complete domestically under Colorado law so did not implicate the Hague Convention).
[10] The Court of Appeals noted the unpreserved assertion that certain "corporate defendants incorporated in the British Virgin Islands were served in conformity with the Hague Convention" when the Supreme Court ordered service by alternative means under C.P.L.R. § 311(b) by mailing the summons and complaint to their New York attorneys. Morgenthau, 11 N.Y.3d at 387, 391 & n.11.

mailing of documents to Japan to complete service. 279 A.D.2d 225, 228-29 (1st Dep't 2001); N.Y. B.C.L. § 307. The same applies to Huawei's citation of Zantaz Enter. Archive Sol., LLC v. Adecco IT Servs., Inc., 79 Misc.3d 1225(A) (N.Y. Sup. Ct. 2023), which considered service by mail or email. Finally, the argument that Invar and Korea are trial court outliers does not hold water. (Huawei Ltr. 4 n.4.) First of all, the Supreme Court's decision in Invar was affirmed by the Appellate Division. Second, New York state cases have ruled consistently with Invar. E.g., Fontanez v. PV Holding Corp., 182 A.D.3d 423 (1st Dep't 2020); Alexander v. Tao Constr. Co., Inc., No. 113969/09, 2013 N.Y. Misc. LEXIS 2117 (N.Y. Sup. Ct. May 6, 2013) (Freed, J.).

## III. Preemption by Federal Law

Defendants argue service on U.S. counsel is not available to Plaintiffs in this case because the Hague Convention, the Federal Rules, or the ATA preempt it. Huawei argues that the Hague Convention preempts New York courts' authorization of ad hoc service because Defendants are foreign and the Hague Convention could apply to service on them. (Huawei Ltr. 2-4.) This argument is contrary to Schlunk. The Hague Convention applies only when the actual method of service implemented requires a transmission of documents abroad and the New York courts who have addressed this issue have held service on U.S. counsel is complete in the United States. Invar, 86 A.D.3d at 405-06. Defendants attempt to distinguish Schlunk because Volkswagen of America was "the parent's [unwilling] service agent" under Illinois law, while black-letter law in New York does not consider a defendant's lawyer his agent for service of process. (Huawei Ltr. 4-5; ZTE Ltr. 4; Tr. 30-32.) It is true that service on a lawyer does not suffice under New York law in general, but that is beside the point because New York law permits the court to direct service in alternative manners, including via counsel. N.Y. C.P.L.R. §§ 308(5), 311(b). When alternative service is authorized and completed in the United States, even when received by a non-subsidiary

9

agent, the Hague Convention is not implicated.  San Antonio, 53 F.4th at 1140-44; Willhite, 274 P.3d at 1238.

ZTE argues that service under Rule 4(e)(1) is unavailable for a statutory-specific reason. The Anti-Terrorism Act, under which Plaintiffs bring this suit, provides for nationwide service of process "in any district where the defendant resides, is found, or has an agent."  18 U.S.C. § 2334(a).  Rule 4(e)(1) is not applicable if federal law provides for service otherwise; ZTE argues the ATA has done so.  (ZTE Ltr. 2.)  This is incorrect: section 2334(a) provides for one option for showing proper venue, but service may be accomplished using other provisions.  Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012).  Fed. R. Civ. P. 4(k)(1)(C) provides for personal jurisdiction based on service authorized by a federal statute, including § 2334(a) of the ATA, but it does not displace Fed. R. Civ. P. 4(k)(1)(A) (providing for jurisdiction based on service according to state law).  Licci, 673 F.3d at 60.  In a similar vein, ZTE's argument that Fed. R. Civ. P. 4(h)(1)(B), which authorizes service on a corporation via officers, managing or general agents, or agents for service, precludes service according to New York law is plainly wrong.  (See ZTE Ltr. 3-4; Tr. 21-22.)  Rule 4(h)(1) provides two equal alternatives for service within a judicial district of the United States—by delivery to an officer or agent under subsection (B) or by following state law under subsection (A).  Accordingly, federal courts in New York have regularly entered orders providing for alternative service on corporations under New York law.  E.g., Pearson Educ., Inc. v. Aggarwal, No. 17-cv-203 (KMW), 2022 WL 3700142, at *3 (S.D.N.Y. Aug. 26, 2022); Silverman v. Sito Mktg. LLC, No. 14-cv-3932 (WFK) (RLM), 2015 WL 13651281 (E.D.N.Y. Mar. 9, 2015).  Because resort to alternative service under New York law is not preempted by federal law, it is permissible in this case.

## IV. Alternative Service is Warranted in This Case

Finally, Defendants protest that Magistrate Judge Scanlon did not appoint U.S. counsel as Defendants' agents to accept service of process and Plaintiffs have not made the required showing of impracticability for Magistrate Judge Scanlon to order such alternative service. (Huawei Ltr. 5; ZTE Ltr. 4-5.) It is true that Magistrate Judge Scanlon did not precisely address whether service by alternative means is appropriate under New York law; nonetheless, her analysis of why the Court's intervention is warranted under Rule 4(f)(3) and the record before her is instructive. See Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc., No. 17 Civ. 5553 (LGS) (GWG), 2020 WL 4497160, at *7 (S.D.N.Y. Aug. 5, 2020) ("[D]efendants identify no difference between the broad scope of authority given to the Court under N.Y. C.P.L.R. [§] 308(5) . . . and Rule 4(f)(3) . . . ."), report and recommendation adopted, 2020 WL 7093592 (S.D.N.Y. Dec. 4, 2020).

Magistrate Judge Scanlon explained that Plaintiffs' efforts to effectuate service in compliance with the Hague Convention has cost tens of thousands of dollars and has led them to spin their wheels waiting for the Chinese Central Authority to effectuate service for over a year and a half. (Zobay Order 18-21.) She found this caused an outsized delay and burden, justifying the Court's intervention to permit alternative service. (Id. 22.) She also reasoned that Plaintiffs' experiences in Zobay and Lau were informative of the likely experience in Long and reasoned that "requiring Plaintiffs to serve Defendants through the Hague Convention in this case would be futile." (Long Order 11-14.)

N.Y. C.P.L.R. § 311(b) allows a corporation to be served by court order if the ordinary methods described in section 311(a) are shown to be impracticable. Section 311(a) allows service via an officer or agent, or the Secretary of State combined with a mailing or personal delivery to the corporation. Id. § 311(a)(1); N.Y. B.C.L. § 307. Both of these methods would implicate the

11

Hague Convention in this case. Plaintiffs have made a good faith effort to serve Defendants according to the Hague Convention. See Oglesby v. Barragan, 135 A.D.3d 1215, 1216 (3d Dep't 2016) (noting that "the movant is required to make competent showings as to actual efforts made to effect service"). They hired a competent agent to serve process and tracked the progress of their request to the Chinese Central Authority. Service has taken much longer than can be reasonably anticipated, and such extraordinary delays and considerable expense show impracticability under New York law. Invar, 86 A.D.3d at 405; Born to Build, LLC v. Saleh, 139 A.D.3d 654, 655-56 (2d Dep't 2016); LTD Trading Enters. v. Vignatelli, 176 A.D.2d 571 (1st Dep't 1991) (authorizing alternative service on foreign defendant based on the "considerable expense plaintiff [incurred in retaining] the services of an international service company"); cf. Joseph II. v. Luisa JJ., 201 A.D.3d 43, 49 (3d Dep't 2021) (alternative service not warranted when movant did not show service under the Hague Convention was atypically delayed). Because service under the Hague Convention would be futile in Long, I find Long Plaintiffs have shown it would be impracticable there. Fontanez, 182 A.D.3d at 423-24 ("[T]he motion court properly concluded that plaintiff's attempts to serve through the Chinese Central Authority in accordance with the Hague Convention would have been futile . . . Plaintiff was not required to show due diligence to meet the impracticability threshold under CPLR 308(5) . . . ."). I agree with Magistrate Judge Scanlon's conclusion that alternative service is warranted and apply that conclusion resting on Rule 4(f)(3) grounds to New York law.

Defendants raise two policy arguments against this conclusion. Huawei argues allowing alternative service via U.S. counsel would be an impermissible "limitless end-run around a federal treaty" and there will be "myriad instances where parties simply [do not] have to use the Hague Convention." (Huawei Ltr. 5; Tr. 31.) But the application of N.Y. C.P.L.R. §§ 308(5) and 311(b)

is limited by the court based on the particular facts of the case. (Tr. 31.) That is why some New York courts have declined to order alternative service, and others—Huawei claims only two in 15 years (Huawei Ltr. 4 n.4)—permit it in appropriate circumstances. Such appropriate circumstances exist in this particular case.

ZTE argues that because China has objected to Plaintiffs' attempted service in this instance pursuant to the Hague Convention, and the Convention directs that "[d]ifficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels," Plaintiffs must resort to diplomatic channels rather than "skirt the Hague Convention . . . and instead effectively serve [Defendants] by alternative means." (ZTE App. 5-9 (quoting Hague Convention Art. 14) (emphasis added); see also ZTE Ltr. 5 n.3.) This is all the more true here where, Defendants assert, China has objected to service as infringing "on its sovereignty or security." (ZTE App. 5-9 (citing Hague Convention Art. 13); see also Huawei App. 11 (citing Khan Res. Inc. et al. v. Atomredmetzoloto JSC et al., [2013] 115 O.R. (3d) 1, 5, 13 (Can. Ont. C.A.) (reproduced at Zobay D.E. # 189-2)).

This argument would be compelling if I were considering whether China's proffered reasons for denying Plaintiffs' requests were appropriate under the Hague Convention. E.g., Davoyan v. Republic of Turkey, No. CV 10-05636 (DMG), 2011 WL 1789983, at *2 (C.D. Cal. May 5, 2011) ("To the extent Plaintiffs ask the Court to rule that the Republic of Turkey wrongfully denied service pursuant to Article 13, the Court lacks jurisdiction to consider that issue.") (citing Hague Convention Art. 14). I am not, however, ruling on China's objection to delivering service in China; instead, I am analyzing whether Plaintiffs may serve Defendants via counsel in the United States. N.Y. C.P.L.R. § 311(b) entrusts the court to use its discretion to permit service

when other methods are impracticable, a conclusion that is impartial to the validity of the objections of a Hague Convention country.[11]

## CONCLUSION

For these reasons, Defendants' appeals of the Zobay, Lau, and Long Orders are DENIED. I affirm Magistrate Judge Scanlon's Orders for service via U.S. counsel on alternative grounds as authorized by Fed. R. Civ. P. 4(e)(1) and 4(h)(1)(A) and N.Y. C.P.L.R. § 311(b).[12]

SO ORDERED.

Dated: March 6, 2025
Brooklyn, New York

/s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge

---

[11] The Canadian courts' decisions Defendants raise do not affect my ruling. In Khan Res, Inc, et al. v. Atomredmetzoloto JSC et al., Judge O'Marra held that, as a matter of Canadian law, the Hague Convention applied because the plaintiff "cannot escape the reality that they must transmit the statement of claim for service abroad." [2012] 110 O.R. (3d) 298, 309 (Can. Ont. Sup. Ct. J.) (reproduced at Zobay D.E. # 189-1). I have determined that Plaintiffs do not need to make such a transmission. And on appeal, the Ontario Court of Appeals held that the Canadian rules of civil procedure mandated using the procedures set out in the Hague Convention for service on those in Convention parties abroad. Khan, 115 O.R. (3d) at 8-14. But as made clear in Schlunk and its progeny, this rule is not applicable under American law when foreigners from Convention parties may be served within the United States.

[12] Defendants did not challenge Magistrate Judge Scanlon's finding that service via U.S. counsel complied with due process. I find that service on Defendants' U.S. counsel complies with due process because it is "reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citations omitted). Courts regularly find that service on U.S. counsel satisfies due process when counsel are in active cases and in communication with the client. E.g., United States v. Mrvic, 652 F. Supp. 3d 409, 412 (S.D.N.Y. 2023); United States v. Koehler Oberkirch GmbH, 728 F. Supp. 3d 1322, 1334-36 (Ct. Int'l Trade 2024) (Katzmann, J.).