SPARACINO PLLC

1920 L Street, N.W., Suite 835
Washington, D.C. 20036

October 1, 2025

**BY CM/ECF**
The Honorable Carol Bagley Amon, U.S.D.J.
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Zobay v. MTN Group Ltd.*, No. 1:21-cv-03503

Dear Judge Amon:

MTN Group's attempt to seek reconsideration of years-old orders in light of months-old precedent is as untimely as it meritless. The Court should deny it without further proceedings.

**MTN's Motion is Untimely**

Local Civil Rule 6.3 provides motions for reconsideration must be filed "within 14 days after the entry of the court's order being challenged." The decisions for which MTN seeks reconsideration were issued in September 2023 (*Zobay* ECF 129 ("*Zobay I*")) and September 2024 (*Zobay* ECF 178 ("*Zobay II*")). MTN attempts to justify its delay by pointing to the Second Circuit's decision in *Ashley v. Deutsche Bank Aktiengesellschaft,* 144 F.4th 420 (2d Cir. 2025)—but that decision issued more than two months ago. MTN's motion is too late. *See, e.g.*, *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 378 (2d Cir. 2024) ("a motion for reconsideration based on a change in the law would not be untimely if …[the] motion is made within fourteen days after the change in law or a reasonable time thereafter").

To be sure, the Court has inherent power to reconsider its decisions. But reconsideration is an extraordinary measure, and MTN has offered no justification for its belated motion. In any event, MTN's sudden insistence on *Ashley*'s importance to its defense rings hollow. The company did not bother to file a notice of supplemental authority regarding the case, although it filed other such notices in the same period (and did so within 14 days). *E.g.*, ECF 227. Absent some justification for the delay, MTN's motion should be denied outright.

***Ashley* is not an "Intervening Change in Law" Warranting Reconsideration**

*Ashley* did not alter the substance of Second Circuit aiding and abetting law as this Court applied it in *Zobay*. Rather, the Second Circuit confirmed "that the conclusions we have reached in the past are entirely consistent" with *Twitter v. Taamneh*, 598 U.S. 471 (2023). *Ashley*, 144 F.4th at 437. Consistent with that conclusion, it relied heavily on the same set of pre-*Twitter* JASTA cases on which this Court's decisions also relied, including *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), and *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021). *Ashley*, 144 F.4th at 437-39, 441, 443, 445-46. An appellate decision that reaffirms existing law is not the kind of "intervening change in controlling law" that "might reasonably be expected to alter the conclusion reached by the court" so as to warrant reconsideration. *Est. of Henkin v. Kuveyt Turk Katilim Bankasi A.S.*, 2025 WL 622546, at *6 (E.D.N.Y. Feb. 26, 2025) (internal quotation omitted).



In any event, the aspects of *Ashley* on which MTN relies are readily distinguishable. For example, the *Ashley* plaintiffs' allegations regarding Standard Chartered Bank's assistance to Fatima, the fertilizer maker whose product was used in Afghan terrorist IEDs, failed in part because its customers were not "themselves terrorists" or controlled by terrorists, and the *Ashley* complaint "conspicuously stop[ped] short of alleging that SCB knowingly violated U.S. sanctions or terrorist finance laws." *Ashley*, 144 F.4th at 441 & n.15. Here, Plaintiffs *do* allege that MTN "knowingly violated U.S. sanctions or terrorist finance laws," and that it knew its Iranian counterparties were controlled by terrorists. In these circumstances, *Ashley* explained, MTN could "have reasonably foreseen that its services to" Irancell and IRGC-front owners "were supporting … [the] agency" that controlled them—the IRGC—giving MTN the scienter necessary for liability. *Id.* at 441-42.

As for nexus, MTN points to *Ashley*'s suggestion that the nexus between SCB's financial services to Fatima and the IED attacks on Plaintiffs was "tenuous." ECF 248 at 3 (quoting *Ashley*, 144 F.4th at 440). But the same conclusion does not follow here. In *Ashley*, the court concluded that SCB provided legal, industry-standard financial services to Fatima that merely "allowed [Fatima] to continue producing and selling [its] products," which were "legally produced and sold in Pakistan" and then diverted by others in small quantities to Afghanistan. 144 F.4th at 440. Accordingly, the court concluded that SCB's banking conduct was too far removed from the terrorist attacks. Here, MTN knowingly joined forces with two IRGC fronts *for the purpose* of illegally helping them procure embargoed dual-use technologies and financing, which programmatically flowed to the terrorists who attacked Plaintiffs. *See* Memorandum and Order, *Long v. MTN Grp. Ltd.*, No. 1:23-cv-5705, ECF No. 111, at 12-13 (E.D.N.Y. Sept. 25, 2025) ("*Long* Op.") (describing *Zobay* nexus). Nothing in *Ashley* suggests that the Court's determination of nexus in this case was incorrect.

**The Court's Decision in *Long* Confirms the *Zobay* Decisions' Consistency with *Ashley***

Finally, the Court has already addressed the impact of *Ashley* in its recent decision in *Long*. There, the Court considered *Ashley*'s impact on plaintiff Schrier's allegations. If the Court understood *Ashley* to undermine its rationale for denying MTN's motions to dismiss in this case, the *Long* opinion would have acknowledged it. But the Court did no such thing. Instead, after carefully reviewing the state of JASTA aiding and abetting law after *Ashley*, it explained why Schrier's allegations did not state a claim against MTN—but the *Zobay* Plaintiffs' did. It explained, for example, that "the *Zobay* plaintiffs provided specific facts to make it plausible that the IRGC supported the Iraqi kidnappings"; that "the IRGC provided the EFPs and rockets used in the Iraq attacks"; and that "[t]he IRGC . . . paid for, and helped Hezbollah build and/or deliver, advanced rockets – including upgraded 107mm variants such as the IRGC-manufactured 107mm rockets known as Improvised Rocket-Assisted Munitions ("IRAMs") – which Hezbollah then provided to the Joint Cells at the instruction of the IRGC." *Long* Op. at 12-13. Such detailed allegations, the Court explained, supported a sufficient "nexus between MTN's aid, the IRGC, and the act of international terrorism." *Id*. at 13.

Turning to scienter, the Court in *Long* also found Schrier's allegations wanting compared to those advanced by Plaintiffs here, determining that "the allegations of MTN's intent as to Schrier's attack are less than they were for the Iraq and Afghanistan attacks in *Zobay* and *Zobay II*." *Id.* This "diminished intent" was "fatal" to Schrier's claim because under *Twitter* and

SPARACINO PLLC

*Ashley*, his weaker allegations of nexus required a stronger showing of scienter—one Schrier failed to make but the *Zobay* Plaintiffs did. *Id.* at 13-14. Indeed, *Long* gives the lie to MTN's claim that the Court "has recognized" that "MTN Group lacked intent to benefit the terrorist agenda of Jaysh al-Mahdi and Al-Qaida."[1] ECF 248 at 3. *Long* makes clear that the Court's decisions in *Zobay I* and *II* are based in part on its determination that "the allegations of MTN's intent … for the Iraq and Afghanistan attacks" were sufficient under *Twitter* and *Ashley*. *Long* Op. at 13.

The Court's explanation in *Long* that the *Zobay* plaintiffs plausibly alleged "that MTN intended for [ ] terrorist attack[s] to occur in" Iraq and Afghanistan, *id.*, also defeats MTN's assertion that *Ashley* requires reconsideration of the Court's finding of "pervasive and systemic" assistance, ECF 248 at 3. In *Ashley*, the Second Circuit declined to find "pervasive and systemic" assistance where the "complaint [did] not support the inference that the Banks' money laundering operations were designed or performed with the intent to aid" the terrorists who committed the attacks. 144 F.4th at 445. Even if "pervasive and systemic" assistance required a scienter of intent,[2] *Long* confirms that Plaintiffs' allegations here give rise to a sufficient inference of intent to support liability. And even if the determination of "pervasive and systemic" assistance in *Zobay* were to fall, it would not matter: that determination was reached in alternative to the finding of sufficient nexus as to the Iraq attacks. *Zobay I*, ECF 129 at 61.

The Court should deny MTN's request to file a motion for reconsideration that is long out of time and will not alter the result. Even a pre-motion conference would be an unwarranted waste of the Court's time.

Respectfully submitted,

/s/ Geoffrey P. Eaton
SPARACINO PLLC

cc: All counsel of record (via ECF)

---

[1] The Court's statement that "the allegations do not plausibly support that Defendants shared in [the terrorists'] goal" referred to Plaintiffs' conspiracy claim, which requires a shared "common objective." *Zobay I*, ECF 129 at 74. Whether MTN subjectively shared the terrorists' goals or not, its intent to support their terrorist attacks is readily inferred from their conduct.

[2] *Twitter* established a balancing approach in which greater assistance reduced the scienter required and vice versa. 598 U.S. at 492-93. Taken on its face, the Second Circuit's suggestion that "pervasive and systemic" assistance requires intent—the highest possible scienter—is inconsistent with the *Twitter* balancing that *Ashley* confirms is required, making a facial interpretation implausible. *Ashley*, 144 F.4th at 439. It is possible that the *Ashley* panel used intent as shorthand for some form of scienter (and not intent, specifically); or perhaps the panel meant that because the defendants' money-laundering operation aided both terrorists and other criminals, the inference of intent that could otherwise be drawn from such pervasive support was not warranted. *Id.* at 445. This case presents no such obstacle: MTN's assistance was narrowly focused on the IRGC and its proxies in Iraq and the terrorist Syndicate in Afghanistan.