# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

STEPHANIE ZOBAY, *et al.*,

    Plaintiffs,

v.

MTN GROUP LIMITED, *et al.*,

    Defendants.

Case No. 1:21-cv-03503-cba-vms

JURY TRIAL DEMANDED

**PLAINTIFFS' OPPOSITION TO MTN GROUP LIMITED'S
MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ III

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.     MTN's Motion Is Untimely And Should Be Denied On That Basis Alone. ........................ 1

II.    *Ashley* Does Not Represent An "Intervening Change In Controlling Law." ................... 2

     A.    *Ashley* itself reaffirms the Second Circuit's pre-*Twitter* jurisprudence. ................ 3

     B.    MTN previously told this Court that *Ashley* was not controlling. ......................... 3

     C.    *Long* confirms that *Ashley* did not alter the Court's analysis in this case. ............ 4

III.   Even If It Had Changed The Law, *Ashley* Would Not Support Reconsideration. ............. 4

     A.    *Ashley* supports liability based on MTN's Irancell venture. ................................ 4

        1.    *Ashley* confirms that MTN's highly culpable conduct supports aiding and abetting liability. ...................................................................................... 5

        2.    Nothing in *Ashley* undermines this Court's nexus determination. .............. 7

        3.    *Ashley* supports this Court's conclusion that MTN's assistance was "pervasive and systemic." ................................................................................................. 8

     B.    *Ashley* supports liability based on MTN's Afghanistan misconduct. ................... 9

     C.    District Court rulings on different facts do not support reconsideration. .......... 10

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Ashley v. Deutsche Bank Aktiengesellschaft*,
    144 F.4th 420 (2d Cir. 2025) ............................................................................... *passim*

*Commerzbank AG v. U.S. Bank, N.A.*,
    100 F.4th 362 (2d Cir. 2024) ............................................................................................. 2

*Cuomo v. Office of the New York State Attorney General*,
    727 F. Supp. 3d 231 (E.D.N.Y. 2024) ............................................................................... 2

*Est. of Henkin v. Kuveyt Turk Katilim Bankasi A.S.*,
    2025 WL 622546 (E.D.N.Y. Feb. 26, 2025) ..................................................................... 4

*Finan v. Lafarge S.A.*,
    2025 WL 2504317 (E.D.N.Y. Aug. 29, 2025)............................................................ 13, 14

*Fraenkel v. Standard Chartered Bank*,
    2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025).................................................................. 13

*Honickman v. BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ............................................................................................... 13

*Kaplan v. Lebanese Canadian Bank SAL*,
    999 F.3d 832 (2d Cir. 2021) ............................................................................................... 4

*Long v. MTN Group Ltd.*,
    2025 WL 2827899 (E.D.N.Y. Sep. 25, 2025) ........................................................ *passim*

*McCracken v. Verisma Sys., Inc.*,
    2018 WL 4095104 (W.D.N.Y. Aug. 28, 2018) ................................................................ 13

*Moses v. BNP Paribas, S.A.*,
    2025 WL 2780803 (S.D.N.Y. Sept. 30, 2025).................................................................. 14

*NLRB v Brown*,
    380 U.S. 278 (1965) ........................................................................................................... 7

*Schansman v. Sberbank of Russia PJSC*,
    2025 WL 1288670 (S.D.N.Y. May 5, 2025) ................................................................... 12

*See v. Gov't Employees Ins. Co.*,
    2025 WL 3083866 (E.D.N.Y. Nov. 5, 2025).................................................................... 12

*Siegel v. HSBC N. Am. Holdings, Inc.*,
    933 F.3d 217 (2019)......................................................................................................... 10

*Smalls v. Collins*,
    2020 WL 2563393 (E.D.N.Y. Mar. 16, 2020) ............................................................................ 3

*Twitter v. Taamneh*,
    598 U.S. 471 (2023) ..................................................................................................... *passim*

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*,
    2015 WL 4496374 (S.D.N.Y. July 23, 2015) ..................................................................... 3, 5

*Zobay v. MTN Grp. Ltd.*,
    2024 WL 6475795 (E.D.N.Y. Sep. 16, 2024) ................................................................... 2, 11

*Zobay v. MTN Grp. Ltd.*,
    695 F. Supp. 3d 301 (E.D.N.Y. 2023) ............................................................................ *passim*

**Rules**

Local Civil Rule 6.3…………………………………………………………………………….1

**INTRODUCTION**

MTN seeks reconsideration based on a four-month-old decision that applied existing legal standards to different facts and explicitly stated it was "consistent with prior decisions of this Court." *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 437 (2d Cir. 2025). The motion is untimely, unjustified by any change in controlling law, contradicts MTN's own prior characterizations of *Ashley*, and lacks merit: the Second Circuit's application of *Twitter* to *Ashley's* very different allegations directly supports liability here. The Court should deny MTN's motion and allow this litigation to proceed to discovery.

**ARGUMENT**

MTN's motion should be denied for three independent reasons. First, the motion is untimely because it was filed months after *Ashley* and years after the underlying decisions. Second, *Ashley* does not represent an intervening change in controlling law but rather reaffirms existing Second Circuit precedent. Third, even if *Ashley* were relevant, it supports rather than undermines the Court's decisions because the extraordinary allegations against MTN are culpable conduct that *Ashley* confirms support aiding-and-abetting liability.

**I.     MTN's Motion Is Untimely And Should Be Denied On That Basis Alone.**

A motion for reconsideration must be filed "within 14 days after the entry of the court's order being challenged." Local Civil Rule 6.3. The decisions for which MTN seeks reconsideration were issued in September 2023 and September 2024),[1] making MTN's motion grossly out of time.

MTN attempts to justify its delay by pointing to *Ashley*—but that decision issued three months before MTN first notified the Court of its intention to seek reconsideration. A motion for

---

[1] The two *Zobay* decisions are reported at 695 F. Supp. 3d 301 (E.D.N.Y. 2023) (*Zobay I*) and 2024 WL 6475795 (E.D.N.Y. Sep. 16, 2024) (*Zobay II*). This brief cites to the reported versions of the two cases.

reconsideration based on a purported change in controlling law must still be made "within fourteen days after the change in law or a reasonable time thereafter." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 378 (2d Cir. 2024). Three months is not a "reasonable time" to wait to seek reconsideration based on a decision as to which other litigants filed notices in early July, *see* ECF 242 and 243, and which this Court had already applied to the allegations against MTN in *Long*, 2025 WL 2827899 (E.D.N.Y. Sep. 25, 2025). *See infra* Section II.C. MTN could have brought *Ashley* to the Court's attention months ago, in support of either its motion to dismiss in *Long* or its long-pending motion for interlocutory appeal in this case, as MTN did (within the required 14 days) with respect to other new authority. *See* ECF 227. It chose not to.

MTN's failure even to acknowledge the untimeliness confirms its inability to justify the delay. The motion can and should be denied for that reason alone.

**II.** ***Ashley* Does Not Represent An "Intervening Change In Controlling Law."**

A motion for reconsideration is an "extraordinary request," granted only "in rare circumstances." *Cuomo v. Office of the New York State Attorney Gen.*, 727 F. Supp. 3d 231, 235 (E.D.N.Y. 2024) (quotation omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 2015 WL 4496374, at *1 (S.D.N.Y. July 23, 2015) (quotation omitted).

The "rare circumstance" warranting reconsideration may occur "when there has been an intervening change in controlling law." *Smalls v. Collins*, 2020 WL 2563393, at *2 (E.D.N.Y. Mar. 16, 2020), *rev'd on other grounds*, 10 F.4th 117 (2d Cir. 2021). But there has been no such "intervening change" here, because *Ashley* did not change the law. After reaffirming the Second Circuit's existing JASTA caselaw, it simply applied the existing *Twitter* standards to dramatically different allegations. It provides no basis for reconsideration.

2

### A. *Ashley* itself reaffirms the Second Circuit's pre-*Twitter* jurisprudence.

*Ashley* did not alter the substance of Second Circuit aiding and abetting law as this Court applied it in *Zobay*. Rather, the Second Circuit confirmed "that the conclusions we have reached in the past are entirely consistent" with *Twitter v. Taamneh*, 598 U.S. 471 (2023). *Ashley*, 144 F.4th at 437. Consistent with that conclusion, it relied heavily on the same set of pre-*Twitter* JASTA cases on which this Court's *Zobay* decisions also relied. *Ashley*, 144 F.4th at 437-39, 441, 443, 445-46. An appellate decision that reaffirms existing law is not the kind of "intervening change in controlling law" that "might reasonably be expected to alter the conclusion reached by the court" and so warrant reconsideration. *Est. of Henkin v. Kuveyt Turk Katilim Bankasi A.S.*, 2025 WL 622546, at *6 (E.D.N.Y. Feb. 26, 2025) (quotation omitted).

Reconsideration is particularly inappropriate here in light of *Ashley's* reaffirmation of *Kaplan v. Lebanese Canadian Bank SAL*, 999 F.3d 832 (2d Cir. 2021), on which this Court relied heavily in denying MTN's motion to dismiss. *Zobay I*, 695 F. Supp. 3d at 337-42. By reaffirming *Kaplan*, *Ashley* confirmed that where, as here, a defendant's clients were "clearly and publicly identified as part of the terrorist organization," the defendant "violated sanctions laws" for those clients and provided them with special treatment, an aiding-abetting claim must proceed. *Ashley*, 144 F.4th at 445 (citing *Kaplan*, 999 F.3d at 858, 865).

### B. MTN previously told this Court that *Ashley* was not controlling.

In any event, MTN's sudden insistence on *Ashley's* importance to its defense rings hollow. MTN has consistently denied *Ashley's* relevance to this case: as it explained in 2024 (when *Ashley* was captioned *Wildman*), "*Wildman* will not answer all—or quite possibly any—of the questions presented here…. At most[,] *Wildman* might offer guidance on applying *Taamneh*, but in a significantly different setting." ECF 153 at 18 n.11. Exactly right: *Ashley* merely applied *Twitter* to allegations that—as explained below—are "significantly different" from those presented here.

*Id*. And "[a]n appellate decision that merely applie[s] existing law to the special facts and circumstances of that case" does not constitute a change in law that warrants the extraordinary remedy of reconsideration. *Utica Mut. Ins. Co.*, 2015 WL 4496374, at *2. A party cannot seriously argue that a case is distinguishable when it suits them and controlling when it does not.

### C. *Long* confirms that *Ashley* did not alter the Court's analysis in this case.

Finally, the Court already considered *Ashley's* impact on Plaintiffs' claims against MTN in its decision in *Long*. 2025 WL 2827899, at *4. Far from suggesting that *Ashley* changed the law of aiding and abetting or undermined its holdings in *Zobay I* and *Zobay II*, the Court cited *Ashley* in support of several of *Twitter's* core tenets and effectively reaffirmed the *Zobay* decisions, dismissing the Syria-based claims in *Long* because it concluded that the Syria allegations fell short of what is alleged here. *E.g.*, *Long*, 2025 WL 2827899, at *6. Nothing in *Long* suggests that *Ashley* represented a dramatic change to controlling law, and nothing in MTN's motion—which scarcely acknowledges *Long*—supports a different view.

## III. Even If It Had Changed The Law, *Ashley* Would Not Support Reconsideration.

MTN's litany of cherry-picked sound bites from *Ashley* do not support dismissal of the significantly different allegations against MTN. Given the "highly fact intensive," "case-by-case" nature of aiding-abetting analysis, *Ashley*, 144 F.4th at 443, the very different allegations presented here greatly undermine MTN's claim that *Ashley* supports reconsideration.

### A. *Ashley* supports liability based on MTN's Irancell venture.

Plaintiffs' Irancell-based claims are rooted in extraordinary allegations. The Court allowed those claims to proceed because the Plaintiffs alleged that MTN Group: entered into a "joint venture with a known terrorist front" (*Zobay I*, 695 F. Supp. 3d at 347); negotiated with "notorious IRGC terrorists" to join that venture (*id*. at 341); knew that the "IRGC uses the fruits of its commercial fronts to support anti-American terrorist proxies" (*id*. at 343); signed a "plausibly

4

sinister" secret agreement committing to provide "defensive" and "security" cooperation (*id*. at 346); provided dual-use goods that "were of particular importance to terrorist activities" (*id*. at 348); deliberately "schemed to evade U.S. sanctions" (*id*. at 343); and continued its close involvement long after the entire IRGC had been designated a Foreign Terrorist Organization (*id*. at 346).

The defendant banks in *Ashley* were not alleged to have done *any* of these things—or anything analogous to them. These striking allegations against MTN are more than sufficient to demonstrate that MTN "consciously and culpably 'participate[d]' in" the attacks on Plaintiffs "so as to help 'make [them] succeed.'" *Ashley*, 144 F.4th at 436 (quoting *Twitter*, 598 U.S. at 493).

### 1. *Ashley* confirms that MTN's highly culpable conduct supports aiding and abetting liability.

The Court has already concluded that MTN's alleged conduct is sufficiently "conscious and culpable" to support aiding and abetting liability under both *Twitter* and *Ashley*. *Zobay I*, 695 F. Supp. 3d at 345, 347, 348. In *Long*, the Court explained that because MTN "knowingly joined in an IRGC-linked commercial venture" and "develop[ed] a unique system to skirt U.S. sanctions and provide the IRGC with 'golden' technology that would enhance terrorist attacks… it was foreseeable based on [its] actions that the goods and funds would flow to proxy groups and that the resulting attacks would occur." *Long*, 2025 WL 2827899, at *5. This was sufficient to raise an inference that "MTN *intended* for the [Iraq] attacks to occur," *id*.—a level of scienter that even MTN concedes is sufficient to support liability. Mot. at 9.

MTN obliquely challenges the *Long* ruling, arguing without citation that "[a]fter *Ashley*, foreseeability cannot substitute for intent." *Id*. But *Ashley* emphasizes that foreseeability is a "central tenet" of JASTA liability, 144 F.4th at 444—and this Court in *Long* did not "substitute" foreseeability for intent. Rather, it applied the ancient "common-law rule that a man is held to

5

intend the foreseeable consequences of his conduct." *NLRB v Brown*, 380 U.S. 278, 287 (1965). Where a defendant has behaved culpably, and the terrorist attacks are a foreseeable consequence of its culpable conduct, both *Twitter* and *Ashley* allow the court to infer that the defendant intended to support those attacks—exactly as the Court did here.[2]

Moreover, *Ashley* confirms that Plaintiffs' allegations warrant such an inference. In affirming dismissal of the fertilizer-financing claims against Standard Chartered Bank (SCB), the Second Circuit emphasized that the plaintiffs failed to allege that SCB provided its client with "special treatment," violated U.S. sanctions, or served clients who were "themselves terrorists" or plausibly alleged to be controlled by terrorist-supporting entities. *Ashley*, 144 F.4th at 440-42. Here, Plaintiffs have provided exactly the allegations that were missing in *Ashley*. MTN provided "special treatment" for its IRGC-front counterparties by scheming to illegally provide them with American dual-use goods. *Zobay I*, 695 F. Supp. 3d at 343. It deliberately did so in violation of "United States anti-terrorism laws." *Id*. at 346. And its counterparties were plausibly alleged to be known IRGC fronts involved in funding and equipping the IRGC's terrorist campaigns in Iraq and Afghanistan, from whom MTN's money and equipment flowed programmatically to the IRGC and its proxies. *Id*. at 320, 349. Under *Ashley*, these allegations are more than enough to make MTN highly culpable.

---

[2] *Ashley* held that the terrorist attacks were not a foreseeable consequence of the banks' alleged assistance to several "large-scale" money laundering operations, where those operations were not closely affiliated with terrorists and laundered money for myriad non-terrorist customers. 144 F.4th at 444. In that context, the banks' criminality "writ large," *id*. at 445, was insufficient. But there is no such obstacle to foreseeability where, as here, the defendant's misconduct was directed specifically to IRGC-front companies known to support terrorist operations and involved violation of "United States anti-terrorism laws." *Zobay I*, 695 F. Supp. 3d at 346.

## 2. Nothing in *Ashley* undermines this Court's nexus determination.

Where, as here, the defendant's alleged conduct is highly culpable and substantial, the court may "'more readily infer conscious participation in" the attacks on Plaintiffs. *Zobay I*, 695 F. Supp. 3d at 346 (quoting *Twitter*, 598 U.S. at 492). In such circumstances, even a "more attenuated" nexus will suffice. *Twitter*, 598 U.S. at 506; *Long*, 2025 WL 2827899 at *5-6.

Here, the alleged nexus was anything but attenuated. The Court correctly found that "MTN actively funneled money and goods through Irancell to Hezbollah and other terrorist proxies" who "used IRGC dollars and technologies to train, arm, and support the terrorists responsible for the attacks," and emphasized that the allegations tied particular technologies to specific types of attack. *Long*, 2025 WL 2827899, at *2 (citing *Zobay I*).

Nothing in *Ashley* undermines the Court's nexus determination. None of the *Ashley* defendants did business with a known terrorist front that *programmatically* funneled money and technology to the proxy terrorists who committed the attacks, as MTN did. *Zobay I*, 695 F. Supp. 3d at 320, 349. And in any event, the *Ashley* plaintiffs faced a higher burden in pleading nexus than Plaintiffs here, because none of the *Ashley* defendants were found to have "intended to support" terrorist attacks or to have provided dual-use goods that "substantially furthered" such attacks. *Twitter*, 598 U.S. at 506; *Long*, 2025 WL 2827899 at *5-6.

MTN ignores the material differences from the *Ashley* allegations—and this Court's extensive findings about nexus—in favor of repetitive references to the inadequacy of assistance to "the terrorist organization's activities in general" (four times) and the notion that MTN's assistance is one or more "steps removed" from the terrorist attacks (eight times). But MTN's argument about the "attenuation chain" is the same argument it has been making since the original briefing, years before *Ashley*. The Court has already rejected it, recognizing that when all the intermediary entities are terrorists or complicit pass-throughs to the terrorists, "[a]ny suggestion

of an attenuated chain between MTN, the terrorist groups, and the Attacks themselves collapses." *Zobay I*, 695 F. Supp. 3d at 347. Nor do Plaintiffs allege only assistance to the terrorists' "activities in general" or a "transcendent enterprise." *Twitter*, 598 U.S. at 495, 503. Both *Zobay I* and *Long* explain in detail how MTN's assistance—and contrary to MTN's claim, "*MTN-provided*" goods— supported specific attacks. *Long*, 2025 WL 2827899, at *5; *Zobay I*, 695 F. Supp. 3d at 550.

*Ashley* involved no similar allegations—none of the banks' counterparties there were plausibly alleged to have been terrorists or controlled by terrorists. The fact that they were "one step removed" from the terrorists meant that terrorist attacks were not foreseeable by the banks. This case stands in sharp contrast. Indeed, *Ashley* expressly confirms that where, as here, the defendant "knew or intended that [the terrorists] would receive the funds," the existence of multiple steps in the chain is not the kind of "attenuation" that might present a barrier to liability. *Id*. at 445 (quoting *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2019)).

### 3. *Ashley* supports this Court's conclusion that MTN's assistance was "pervasive and systemic."

Finally, *Ashley* also confirms the Court's finding that MTN's aid was "sufficiently pervasive and systemic that it ha[d] aided and abetted every IRGC-led attack during the period of assistance." *Zobay I*, 695 F. Supp. 3d at 348. To the extent *Ashley* stands for the proposition that even pervasive and systemic assistance requires "intent to aid" the terrorist enterprise, 144 F.4th at 445, *Long* confirms that MTN plausibly had such intent. *Long*, 2025 WL 2827899, at *5.

Even without *Long*, however, Plaintiffs' allegations are more than sufficient to support the necessary inference. MTN's long-lasting, large-scale, on-the-ground involvement in a joint venture with known IRGC fronts (which continues today), knowledge of the IRGC's use of commercial fronts to support terrorist operations, and deliberate violation of U.S. law to provide dual-use technology are exactly the kind of conduct that warrants an inference of intent, because

8

it "intentionally associate[s]" MTN with the IRGC's operations and "form[s] a near-common enterprise" with the terrorists that warrants broad liability. *Ashley*, 144 F.4th at 445; *Twitter*, 598 U.S. at 501-02.

**B. *Ashley* supports liability based on MTN's Afghanistan misconduct.**

*Ashley* offers no support for reconsideration as to Plaintiffs' Afghanistan-based claims, which relies on allegations that simply were not present in *Ashley*. To reprise, Plaintiffs allege— and the Court found plausible—that MTN "supported the Taliban in Afghanistan, despite U.S. and Afghan government opposition, by (1) issuing protection payments, which Plaintiffs allege amount to bribing the Taliban; and (2) deactivating its cell towers at the Taliban's request, which impeded Coalition intelligence efforts." *Zobay II*, 2024 WL 6475795, at *1.

MTN does not explain how *Ashley* undermines those allegations. It quotes *Ashley* for the unremarkable propositions that "it is not enough to say that the defendant assisted the terrorist organization's activities in general" and that "[t]here must be a 'nexus' with 'the attacks committed against Plaintiffs.'" Mot. at 11 (quoting *Ashley*, 144 F.4th at 444). Both those propositions are core tenets of *Twitter*, and *Ashley* did not change them. *Twitter*, 598 U.S. at 503. *Ashley* thus offers no basis for reconsideration. Rather, MTN simply wants a second bite at the apple in the hope that the opposite result will ensue. But "a reconsideration motion is not appropriate to simply secure a 'do-over.'" *See v. Gov't Employees Ins. Co.*, 2025 WL 3083866, at *1 (E.D.N.Y. Nov. 5, 2025).

That is particularly true here, where the "do-over" is based on an argument MTN failed to raise in the original proceedings. There, it argued only that the purported temporal disconnect between the assistance and the attacks was too great, and that MTN Group was too remote from its subsidiary's conduct, to support liability. *See* ECF 167 at 11-12; ECF 169 at 5-6. It did not argue, as it argues now, that Plaintiffs failed to allege any "specific connection between the alleged payments or shutdowns and the 2019 attacks," Mot. at 11. MTN cannot use reconsideration to

9

raise that argument now. *E.g.*, *Schansman v. Sberbank of Russia PJSC*, 2025 WL 1288670, at *2 (S.D.N.Y. May 5, 2025).

Anyway, MTN's belated nexus argument is without merit. The conduct alleged—paying the insurgents as much as $100 million and tactically cooperating with them—is exactly the kind of "culpable participation through intentional aid that substantially furthered the tort" that supports liability even with a "more attenuated" nexus. 598 U.S. at 506; *Long*, 2025 WL 2827899, at *5-6. In these circumstances, it is more than sufficient that MTN's substantial assistance culpably enabled the kinds of attacks that foreseeably injured Plaintiffs.

Finally, MTN argues that Plaintiffs' protection-payment theory of liability "rests solely on money's fungibility, which *Ashley* rejected." Mot. at 11. Even if that were so—and it is not—the limits of "fungibility theory" were announced years ago in *Honickman*, and so could have been raised in the original proceedings—but were not. *Ashley*, 144 F.4th at 444 (citing *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 498-99 (2d Cir. 2021). Anyway, neither *Honickman* nor *Ashley* categorically excludes financial assistance from aiding-abetting liability. To the contrary, *Ashley* confirms that the provision of fungible dollars will support lability—*if* terrorist attacks are a foreseeable result. 144 F.4th at 444 (rejecting a fungibility theory because it would permit liability for unforeseeable acts). And as noted, where (as here and in any ATA case involving the payment of protection money), the defendant "knew or intended that [the terrorists] would receive the funds," the fungibility of money is no barrier to liability. *Id*. (quotation omitted).

**C.  District Court rulings on different facts do not support reconsideration.**

MTN points to two recent District Court rulings that it claims support reconsideration here: *Finan v. Lafarge S.A.*, 2025 WL 2504317 (E.D.N.Y. Aug. 29, 2025) and *Fraenkel v. Standard Chartered Bank*, 2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025). Neither supports MTN's motion.

First, District Court decisions are not binding on this Court and so by definition "cannot constitute an intervening change of controlling law sufficient to warrant reconsideration." *McCracken v. Verisma Sys., Inc.*, 2018 WL 4095104, at *2 (W.D.N.Y. Aug. 28, 2018). Nor does either case suggest that *Ashley* represents such an intervening change: indeed, the 25-page *Finan* decision cites it only once. *Finan*, 2025 WL 2504317, at *18. And *Fraenkel* is at odds with another decision, issued later, that denied a motion to dismiss aiding and abetting claims based on similar allegations. *See Moses v. BNP Paribas, S.A.*, 2025 WL 2780803 (S.D.N.Y. Sept. 30, 2025).

Second, to the extent either case could be read to suggest that JASTA liability requires a "concrete" nexus regardless of the culpability and nature of the defendant's conduct, they are inconsistent with both *Twitter* and *Ashley*, both of which emphasize that a "strict nexus" is not always required. *Twitter*, 598 U.S. at 498, 506; *Ashley*, 144 F.4th at 438-39. *Twitter* contemplates a range of acceptable nexus relationships, depending on the culpability, nature, and substantiality of the defendant's assistance. *Twitter*, 598 U.S. at 506; *Long*, 2025 WL 2827899, at *6.

## CONCLUSION

MTN's motion for reconsideration should be denied.

Dated: November 24, 2025                 Respectfully Submitted,

/s/ Geoffrey P. Eaton

Geoffrey P. Eaton
Adam J. Goldstein
Ryan R. Sparacino
Eli J. Kay-Oliphant
SPARACINO PLLC
1920 L St. NW, Ste. 835
Washington, DC 20026
Tel: (202) 629-3530
geoff.eaton@sparacinopllc.com
ryan.sparacino@sparacinopllc.com
adam.goldstein@sparacinopllc.com
eli.kay-oliphant@sparacinopllc.com

*Counsel for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Opposition to MTN Group Limited's Motion for Reconsideration complies with the length restrictions in Local Civil Rules 6.3 and 7.1(c) and Rule 3.C of the Court's Individual Motion Practices and Rules because it contains 3,484 words, as counted by the Microsoft Word-processing program used to prepare this document. This word count excludes the caption, table of contents, table of authorities, signature blocks, and this certificate as provided for by Local Civil Rules 6.3 and 7.1(c).

/s/ Geoffrey P. Eaton

Geoffrey P. Eaton