UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEPHANIE ZOBAY, et al.,

                                        Plaintiffs,

          -against-

MTN GROUP LIMITED, et al.,

                                        Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
21-cv-3503 (CBA) (VMS)


------------------------------------------------------------x
DAVID LAU, et al.,

                    Plaintiffs,

      -against-


ZTE CORP., ZTE (USA) INC., ZTE (TX) INC.,
HUAWEI TECHNOLOGIES CO., LTD.,
HUAWEI TECHNOLOGIES USA INC.,
FUTUREWEI TECHNOLOGIES, INC., and
SKYCOM TECH CO. LTD.,

                    Defendants.

------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
22-cv-1855 (CBA) (VMS)


------------------------------------------------------------x
SHEILA LONG, et al.,

                                        Plaintiffs,

                    -against-

MTN GROUP LIMITED, et al.,

                                        Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
23-cv-5705 (CBA) (VMS)

**AMON, United States District Court Judge:**

Plaintiffs are a group of American citizens (and their families) killed or injured by terrorist attacks in Iraq, Syria, and Afghanistan. Plaintiffs brought suit against several telecommunication companies in three related cases, seeking damages pursuant to the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130 Stat. 852 (2016). Two of the captioned defendants, Chinese telecommunications companies—ZTE Corp. ("ZTEC") and Huawei Technologies, Co., Ltd. ("Huawei" or "Huawei Co.") (collectively, "Defendants")—now move to dismiss Plaintiffs' Complaints. For the reasons set forth below, both ZTEC's and Huawei's motions to dismiss are GRANTED for failure to state a claim.

## BACKGROUND

### I.     Factual Background

Plaintiffs in three related cases—Zobay v. MTN Grp. Ltd., No. 21-CV-3503-CBA-VMS, Lau v. ZTE Corp., No. 22-CV-1855-CBA-VMS, Long v. MTN Grp. Ltd., No. 23-CV-5705-CBA-VMS—accuse Defendants ZTEC and Huawei of aiding and abetting terrorism through their relationships with front companies for the IRGC. I presume the parties' familiarity with the factual background in each of the three complaints, but I briefly summarize the factual allegations about each attack and about Defendants' conduct below as is relevant to the instant motions. These facts are taken as true for the purpose of these motions. Doe v. Franklin Square Union Free Sch. Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

#### a.    Attacks and Perpetrators

In Zobay, Plaintiffs allege that Defendants aided and abetted ten attacks that took place in Iraq between 2011 and 2017, and two attacks in Afghanistan in 2019. Zobay v. MTN Grp. Ltd.

("Zobay I"), 695 F. Supp. 3d 301, 320 (E.D.N.Y. 2023) (citing Zobay, D.E. # 52 ("Zobay FAC") at ¶¶ 1405-588).[1] Plaintiffs allege that the Iraqi attacks were committed, planned, or authorized by "joint cells" of Hezbollah, Jaysh al-Mahdi, and Qods Force operatives. Zobay I, 695 F. Supp. 3d at 314 (quoting Zobay FAC at ¶ 1393). They allege that the attacks in Afghanistan were committed, planned, or authorized by Hezbollah, (Zobay, D.E. # 142 ("Zobay SAC") at ¶ 1480), as well as a "syndicate" made up of al-Qaeda, the Taliban, the Haqqani Network, Lashkar-e-Taiba, and Jaysh-e-Mohammed. Zobay I, 695 F. Supp. 3d at 314 (quoting Zobay FAC at ¶ 1553).

In Lau, the alleged attacks took place in Afghanistan between 2012 and 2017. Lau v. ZTE Corp., No. 22-CV-1855-CBA-VMS, 2023 WL 9066883, at *1 (E.D.N.Y. Sept. 28, 2023). The Lau Plaintiffs were injured in sixty-four different attacks, id. (citing Lau, D.E. # 41 ("Lau AC") at ¶ 1), using multiple different modes of attack, including IEDs, suicide bombs, kidnapping, and indirect fire attacks, (Lau AC ¶¶ 1089-473.) The Lau attacks were committed by a "syndicate" made up of al-Qaeda, the Taliban, the Haqqani Network, Lashkar-e-Taiba, and Jaysh-e-Mohammed, and planned or authorized by al-Qaeda. Lau, 2023 WL 9066883, at *1 (citing Lau AC at ¶¶ 1077-82).

Finally, in Long, Plaintiffs assert claims stemming from three small arms fire attacks in three different provinces in Afghanistan between 2013 and 2014, planned and committed by the Taliban and its Haqqani Network, al-Qaeda, Lakshar-e-Taiba, and Jaysh-e-Mohammed. (Long, D.E. # 1 ("Long Complaint") at ¶¶ 1255, 1260, 1266, 1272.) They also assert claims stemming from the 2012 kidnapping of Plaintiff Matthew Schrier, committed by al-Nusra Front and planned

---

[1] To distinguish between the three related cases, I refer to docket entries by the short name for the case followed by the docket number where the entry appears on that case's docket. For example, (Zobay, D.E. #1) refers to the first docket entry for Zobay v. MTN Group Ltd., No. 21-CV-3503.

and authorized by al-Qaeda-in-Iraq and al-Qaeda.  See Long v. MTN Grp. Ltd., No. 23-CV-5705-CBA-VMS, 2025 WL 2827899, at *3 (E.D.N.Y. Sept. 25, 2025); (see also Long Complaint at ¶¶ 57, 241, 1279-80).

### b. Defendants' Conduct

Plaintiffs allege that Defendants contracted with IRGC fronts to send sanctioned U.S. technologies to those entities.  Zobay I, 695 F. Supp. 3d at 318-19.  Because the allegations about Defendants' conduct are "materially identical" among all three complaints, see Lau, 2023 WL 9066883, at *1, I collectively describe ZTEC and Huawei's conduct as alleged in all complaints.

### 1. ZTEC

Plaintiffs base their aiding and abetting allegations on ZTEC's relationship with the Telecommunications Company of Iran ("TCI").  Zobay I, 695 F. Supp. 3d at 319-20.  TCI is "Iran's largest telecom company," (Zobay SAC at ¶ 691 (citation omitted)), and it has a "monopoly over Iranian telecommunications," (id. at ¶ 654 (citation and internal quotation omitted).)  Plaintiffs submit that TCI is a front for the IRGC because "a private consortium with reported ties to [the] IRGC" purchased a majority stake in the company in 2009.  (Accord id. at ¶ 1090; see also id. at ¶ 654.)

ZTEC contracted with TCI to "modernize the IRGC-controlled Iranian cellular and landline communications systems" (id. at ¶ 1478), by securing "cellular and landline network infrastructure in Iran," (id. at ¶ 1006.)  Under these contracts, ZTEC allegedly provided twenty million dollars of dual-use American electronics, including "smartphones, cell phone systems, and computer networking gear" to TCI.  (Accord id. at ¶ 1093; see also id. at ¶ 1010.)  Altogether, this "moderniz[ed] Iran's cellular and communications technology."  (Id. at ¶ 1020.)

4

In addition to furthering communication, (see, e.g., id. at ¶¶ 1017-20), ZTEC's services allowed the terrorists to improve their surveillance systems. First, the cellular networks that were administered by ZTE allowed terrorists to track and target U.S. forces. (E.g., id. at ¶ 1022.) Second, ZTEC sold the "ZXMT" monitoring system to Iran, which was utilized to track and target U.S. forces in Iraq, (id. at ¶ 1022): the ZXMT system used the soldiers' cellphone data "to triangulate their positions and monitor their communications" when they were near the Iran's borders, "bolster[ing] the terrorists' ability to conduct successful surveillance" and enhancing "their ability to execute successful attacks." (Id. at ¶¶ 1022-23.) ZTEC continued to send electronics, despite knowing that the IRGC uses it to support its terrorist acts. (Transcript of Nov. 12, 2025 Oral Argument at 38:2-3.)

Further, ZTEC violated U.S. sanctions to sell these American electronics to TCI. (See, e.g., Zobay SAC at ¶ 1003.) In March 2012, an international news source published an Article about ZTEC's sale of embargoed goods to Iran. (Id. at ¶¶ 1013, 1016(viii).) After this public reveal, ZTEC temporarily paused shipments of embargoed goods to Iran, but it renewed shipment over a year later. (Id. at ¶¶ 1013-14.) In 2017, ZTE USA signed a settlement agreement with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") and plead guilty to violating U.S. sanctions. Zobay I, 695 F. Supp. 3d at 319 (citing Zobay FAC at ¶¶ 75-76, 1120, 1125, 1135). Both the settlement agreement and guilty plea contained admissions that ZTEC knowingly participated in a scheme to transfer embargoed U.S. goods to Iran and subsequently attempted to conceal the scheme. Id. (citations omitted).

### 2. Huawei

Plaintiffs allege that Huawei Co. sourced embargoed U.S technology and network infrastructure to Iranian companies like TCI, Irancell (a "joint venture between [co-defendant]

MTN Group and the Iran Electronic Development Company"), and the Mobile Communication Co. of Iran ("MCI") (an alleged IRGC front that is owned by TCI and is MTN Irancell's nominal competitor in Iran). Zobay I, 695 F. Supp. 3d at 318; (Zobay SAC ¶¶ 113, 688, 1104, 1117.) Huawei is alleged to have provided "telecommunications equipment," including computer servers and switches from Hewlett-Packard, (Zobay SAC at ¶¶ 1115, 1117-19), cell phones, (id. at ¶ 1147), and other "dual-use" technologies, (id. at ¶ 1183.)

In furtherance of this scheme, Huawei allegedly "set up subsidiaries disguised as un-related Iranian 'partners' and use[d] those subsidiaries to hide Huawei's business with [the IRGC]." (Id. at ¶ 1107.) One of those subsidiaries, Skycom,[2] had its principal place of business in Iran, and is alleged to have provided embargoed U.S. goods and services to businesses in Iran at the direction of Huawei Co. (Id. at ¶¶ 72, 1111-12, 1117); see also Zobay I, 695 F. Supp. 3d. at 352. Huawei is alleged to have taken "great lengths" to conceal its ownership and control of Skycom. Zobay I, 695 F. Supp. 3d. at 352 (citing Zobay FAC at ¶ 1226).

Plaintiffs support these allegations with a grand jury federal indictment filed against Huawei, Skycom, and Huawei subsidiaries in this District. (See, e.g., Zobay, D.E. # 246 (Plaintiff's notice of supplemental authority discussing United States v. Huawei Techs. Co., Ltd., No. 18-CR-457-AMD-JAM (E.D.N.Y.), D.E. # 547).) Although the indictment does not explicitly mention terrorism, the IRGC, or any of the alleged IRGC proxies, it does detail Huawei's alleged commerce with Iran, which included lying to U.S. government agencies and shipping prohibited

---

[2] Skycom was originally named as a defendant, but the company ceased to exist in 2017. See Zobay I, 695 F. Supp. 3d at 318 (citations omitted).

goods to Iranian consumers "through local affiliates."  Huawei Techs. Co., Ltd., D.E. # 19 at 10, 11 (citations omitted).[3]

## II.     Procedural History

As described above, Plaintiffs assert JASTA claims against Huawei and ZTEC in three separate cases, Zobay, Long, and Lau.  On September 28, 2023, in Zobay I, I ruled on motions to dismiss counts against the ZTE subsidiaries, Huawei U.S. subsidiaries, and MTN.  See Zobay I, 695 F. Supp. 3d. at 356.[4]  First, I allowed Plaintiffs' Count One—aiding and abetting liability of the Iraq attacks—to proceed against co-defendant MTN.[5]  See id. at 351.  I held that MTN culpably assisted the terrorist attacks at issue based on their "unusual business arrangement" with IRGC fronts via the MTN Irancell joint venture.  See id. at 346.  I held that there was a nexus to the

<hr>

[3] Plaintiffs also claim that ZTEC and Huawei made protection payments to the Taliban and Haqqani Network, which assisted the Afghanistan attacks.  (Lau AC at ¶¶ 570, 1479.)  However, as discussed infra, Plaintiffs conceded at oral argument that they are not relying on these allegations, (Transcript of Nov. 12, 2025 Oral Argument at 35:4-6) because I already found them to be insufficient in Lau.  See 2023 WL 9066883, at *5.

[4] ZTEC and Huawei Co. did not move to dismiss at this time because neither party had been served.  In Zobay and Lau, Plaintiffs attempted to serve ZTEC and Huawei Co. through China's Central Authority in accordance with the Hague Service Convention but were unsuccessful.  (Lau, D.E. # 76-1 at 4-5; Zobay, D.E. # 156-1.)  Service was rejected on July 28, 2023, the day the Long Complaint was filed.  (See Long, D.E. # 22-1 at 3.)  On December 6, 2023, Plaintiffs in all three cases moved for alternative service seeking to serve ZTEC and Huawei through their respective U.S. counsel.  (See Zobay, D.E. # 156; Lau, D.E. # 76; Long, D.E. # 22.)  On September 30, 2024, Magistrate Judge Scanlon granted Plaintiffs' motions for alternative service.  (See Zobay, D.E. # 108; Lau, D.E. # 87; Long, D.E. # 38.)  ZTEC and Huawei Co. challenged this Order, and on March 6, 2025, I affirmed the Magistrate Judge's ruling.  (See Zobay, D.E. # 208; Lau, D.E. # 100; Long, D.E. # 77.)  ZTEC and Huawei Co. notified me that they contemplate bringing an interlocutory appeal of my March 6, 2025 Order, (e.g., Lau, D.E. ## 103,104), but in April 2025, agreed to defer briefing until after I resolve their motions to dismiss, (e.g., Lau, D.E. ## 106, 107.)  Seeing as I grant both motions, the contemplated interlocutory appeal is moot.

[5] MTN moved for reconsideration of this decision on December 1, 2025.  (Zobay, D.E. # 252.)  Oral argument was held on February 9, 2026, and I reserved decision on the motion.  (See Minute Entry dated Feb. 10, 2026.)

attacks because "Plaintiffs [did] better than the plaintiffs in [Twitter v.]Taamneh" in linking "MTN's alleged aid to the Iraq Attacks by alleging that the dual-use technologies MTN procured were of particular importance to terrorist activities." Id. at 348. In the alternative, I held that MTN's support of the IRGC was so pervasive and systemic in terms of funding and technology provision that MTN "plausibly assist[ed] each and every IRGC-led terrorist attack." Id. (citation omitted). For the same count—aiding and abetting liability for the Iraq attacks—I dismissed the claim against Huawei's U.S. subsidiaries because there were not enough specific allegations to make it plausible that the subsidiaries culpable and substantially assisted Plaintiffs' attacks. Id. at 351-54. Second, I dismissed Count Two against MTN and Huawei's U.S. subsidiaries for failure to plead civil conspiracy liability, as well as Plaintiffs' Count Three against MTN for failure to plead aiding and abetting liability under a RICO theory. Id. at 354-56.[6] Finally, based on lack of personal jurisdiction, I dismissed ZTE USA and ZTE TX due to Plaintiffs' failure to plead the requisite minimum suit-related U.S. contacts, and MTN Dubai due to Plaintiffs' failure to plead facts about the defendant with the required specificity. Id. at 326, 329-32. On the same day as Zobay I, I dismissed the Lau Plaintiffs' motions against ZTE's U.S. subsidiaries for lack of personal jurisdiction, and against Huawei's U.S. subsidiaries for failure to plead knowing and substantial assistance under Count One. See Lau, 2023 WL 9066883, at *6, *8. I also dismissed Count Two—conspiracy—and Count Three—aiding and abetting with a RICO predicate—for the same reasons explained in Zobay I. See id. at *9.

---

[6] After I dismissed Plaintiffs' conspiracy and RICO predicate claims in Zobay I, the parties stipulated to dismissal of these claims against ZTEC and Huawei Co. in all three actions. (See Zobay, D.E. # 210; Lau, D.E. # 102; Long, D.E. # 79.)

On June 27, 2025, both Defendants moved to dismiss the complaints in all three cases. (Zobay, D.E. ## 231 (ZTEC), 232 (Huawei).)  The claims outstanding which are at issue now are as follows: in Zobay, Count One and Count Four for aiding and abetting liability for the Iraq and Afghanistan attacks respectively; in Lau, Count One for aiding and abetting liability for the sixty-four Afghanistan attacks; and in Long, Count One for aiding and abetting the three Afghanistan attacks and Plaintiff Schrier's kidnapping.[7]

**STANDARD OF REVIEW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must advance sufficient non-conclusory factual allegations that allow the inference of a plausible claim to relief. Buon v. Spindler, 65 F.4th 64, 76 (2d Cir. 2023).  The facts alleged must allow "the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  That burden is not met where a pleading offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement."  Iqbal, 557 U.S. at 678 (alterations adopted) (internal quotation marks and citation omitted).  Facts in a complaint can be plead on information and belief, but "pleading based on information and belief will only make otherwise unsupported claims plausible when [1] the facts are peculiarly within the possession and control of the defendant or [2] where the belief is based on factual information that makes the inference of culpability plausible."  Moreira v. Societe Generale, S.A., 125 F.4th 371, 395 (2d Cir. 2025) (internal quotation marks and citation omitted).

---

[7] On September 25, 2025, I granted MTN's motion to dismiss as to Count One of the Long Complaint.  (Long, D.E. # 111.)  I held that the allegations against MTN for aiding and abetting Plaintiff Matthew Schrier's attack in Syria were insufficient due to the attenuated nexus and diminished showing of culpability.  (Id. at 11-14.)

**DISCUSSION**

Both Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim under JASTA.[8]

**I.    JASTA Standard**

To state a claim for JASTA aiding and abetting liability, Plaintiffs must plead "three elements: (1) 'the party whom the defendant aids must perform a wrongful act that causes an injury;' (2) 'the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance;' and (3) 'the defendant must knowingly and substantially assist the principal violation.'" Siegel v. HSBC N. Am. Holdings, Inc., 933 F.3d 217, 223 (2d Cir. 2019) (citing Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)).  Because it is dispositive, I start with the third element: knowing and substantial assistance.

As I explained in Zobay and Long, "the key question" in analyzing the knowing and substantial assistance prong "is whether Plaintiffs have alleged conscious and culpable participation in acts of terrorism." Zobay I, 695 F. Supp. 3d at 345; see also Long, 2025 WL 2827899, at *4 (citations omitted).  This determination involves balancing "the nature and amount of assistance" to the specific attack of international terrorism "on the one hand, and the defendant's scienter on the other." Twitter v. Taamneh, 598 U.S. 471,

---

[8] Also before me are Defendants' motions to dismiss for failure to allege personal jurisdiction under Rule 12(b)(2).  Because I dismiss the claims against Huawei and ZTEC under Rule 12(b)(6) for failure to state a claim based on JASTA, I need not decide whether Plaintiffs have sufficiently alleged personal jurisdiction in connection with these claims. See, e.g., Wildman v. Deutsche Bank Aktiengesellschaft, No. 21-CV-04400-HG-RML, 2022 WL 17993076, at *2 n.2 (E.D.N.Y. Dec. 29, 2022), aff'd, 144 F.4th 420 (2d Cir. 2025); Fraenkel v. Standard Chartered Bank, No. 24-CV-4484-MMG-RWL, 2025 WL 2773251, at *11 (S.D.N.Y. Sept. 26, 2025).

492-93 (2023); see also Ashley v. Deutsche Bank Aktiengesellschaft, 144 F.4th 420, 439 n.13 (2d Cir. 2025) ("Halberstam and Twitter necessitate balancing scienter with the degree of assistance."). The inquiry is twofold. Courts must examine whether the defendant acted "'with the intent of facilitating the offense's commission,'" Taamneh, 598 U.S. at 490 (quoting Rosemond v. United States, 572 U.S. 65, 70 (2014)), meaning that the defendant intended to further a terrorist organization's goals and "support its causes," Ashley, 144 F.4th at 442. Courts must also examine whether there is a discernable nexus between a defendant's "substantial" aid and "'the act of international terrorism that injured the plaintiffs.'" Ashley, 144 F.4th at 438-39 (citing Taamneh, 598 U.S. at 497). The two sides of the inquiry work "'in tandem,'" with "'a lesser showing of one'" demanding "'a greater showing of the other.'" Id. at 438 (quoting Taamneh, 598 U.S. at 491-92). As such, "less substantial assistance require[s] more scienter before a court could infer conscious and culpable assistance," whereas "if the assistance were direct and extraordinary, then a court might more readily infer conscious participation in the underlying tort." Taamneh, 598 U.S. at 502.

## II.  Application to Defendants

Plaintiffs argue that my findings about MTN in Zobay I and Zobay II should apply equally to Huawei and ZTEC. However, because the allegations about Huawei and ZTEC's scienter and nexus are weaker than the allegations about MTN, I decline to extend Zobay's holding to cover Huawei and ZTEC.

### A.  Scienter

In arguing that they have alleged sufficiently culpable conduct, Plaintiffs point to their allegations that Defendants engaged in "affirmative misconduct" by violating anti-terrorism U.S. laws to procure embargoed dual-use technologies to the Iranian entities (TCI, MCI, Irancell) linked

11

to the IRGC. (<u>Zobay</u>, D.E. # 237 ("Huawei Opp.") at 1; D.E. # 238 ("ZTEC Opp.") at 35-38.) Plaintiffs argue that these actions were especially culpable because Defendants assisted the IRGC fronts despite knowing that they were controlled by the IRGC, and that IRGC fronts direct a portion of their profits to the IRGC. (<u>See, e.g.</u>, ZTEC Opp. at 34-35; Huawei Opp. at 28-29.) They also argue that Defendants' blameworthiness is evidenced by Defendants' efforts to conceal evidence of their operations in Iran from law enforcement and the public. (ZTEC Opp. at 11; Huawei Opp. at 34, 41.) Defendants counter that the evasion of sanctions alone is not sufficient to show intent to aid terrorism, even when the sanctions are aimed at addressing terrorism. (ZTEC Mot. at 38; Huawei Mot. at 41-43.) Defendants assert that sanctions evasions and other potentially "unusual" conduct are better explained by alternative motives such as "moderniz[ing] telecommunications technology," avoiding government interference, and raising profits. (<u>Accord</u> ZTEC Mot. at 39; Huawei Mot. at 40-43.) Huawei and ZTEC assert the Complaints do not make it plausible that they acted to further terrorist activity or to further the "Chinese communist agenda." (ZTEC Mot. at 39 (citations omitted); Huawei Mot. at 44-45.) They further argue that the allegations are lacking the specific conduct that was alleged in the MTN complaint that I found demonstrated consciously and culpable association with terror activity; namely, the joint venture, letter agreement, and military officials in MTN's Iran offices. (ZTEC Mot. at 37-38; Huawei Mot. at 45-46.)

From a careful review of the Complaints, I conclude that even if Huawei and ZTEC are alleged to have engaged in some wrongdoing, they are not plausibly alleged to have "consciously or culpably sought to make [the attacks against Plaintiffs] succeed." <u>Ashley</u>, 144 F.4th at 440. Plaintiffs' allegations amount to claims that ZTEC and Huawei "too willingly maintained an extensive commercial relationship," (ZTEC Opp. at 35), and "knowingly [broke] the law to assist

an Iranian entity controlled by a terrorist group," (id.)  Yet on its own, having a commercial relationship with knowledge that money or goods will flow to terrorists is not enough to show intent, even if the commercial relationship is illegal.  See, e.g., Fraenkel v. Standard Chartered Bank, No. 24-CV-4484-MMG-RWL, 2025 WL 2773251, at *2,*9 (S.D.N.Y. Sept. 26, 2025) (internal quotation and citation omitted) (Defendant-bank did not knowingly and substantially assist plaintiffs' attacks when it "systematically and knowingly enabl[ed] fronts and agents for Iran's Terrorist Sponsors [including the IRGC] to finance terrorist operations by transferring billions of dollars" in violation of "U.S. sanctions and other laws and regulations designed to prevent the U.S. financial system from being used to finance terrorism."); see also Siegel, 933 F.3d at 221, 225; Ashley, 144 F.4th at 445 (In Siegel, "even though the defendant-bank purportedly gave 'hundreds of millions of dollars' to the Saudi bank and helped the bank 'flout' U.S. sanctions laws, plaintiffs failed to plausibly suggest that the U.S. bank 'knew or intended that [the FTO] would receive the funds.'"); O'Sullivan v. Deutsche Bank AG, 2019 WL 1409446, at *10 (S.D.N.Y. Mar. 28, 2019).

Under some circumstances, violating U.S. law to send embargoed goods may contribute to a finding of aiding-and-abetting liability.  Indeed, MTN was alleged to have done this in Zobay I, and I found that the Plaintiffs sufficiently alleged that MTN's actions were culpable; but, "[a]n assessment of a defendant's knowing and substantial assistance under the JASTA framework is highly fact intensive." Ashley, 144 F.4th at 443.  There were other circumstances present in Zobay I that led me to the conclusion that MTN's actions were culpable.  In Zobay I, I found that MTN's aid to the IRGC was sufficiently culpable because MTN's provision of embargoed goods was done under "sinister" circumstances that allowed me to infer that MTN sought to aid the IRGC's terrorism. Zobay I, 695 F. Supp. at 346.  Plaintiffs do not plausibly allege that ZTEC and Huawei

engaged with the IRGC under equally sinister circumstances, and as such, Plaintiffs allege less scienter here than as to MTN.

### a. Comparison to MTN's Scienter

### 1. Joint Venture

First, MTN formed a joint venture with known IRGC fronts. Id. at 318 (citing Zobay FAC ¶ 111). MTN Group launched MTN Irancell as a partnership between itself and the Iran Electronic Development Company, which was made up of two shareholders alleged to be fronts for the IRGC. Id. at 318 (citing Zobay FAC ¶ 764). MTN invested in MTN Irancell and all profits to the organization were alleged to have helped both MTN Group and the IRGC (through the required ten to twenty percent diversions). Id. at 349. Neither Huawei nor ZTEC is alleged to have entered into a joint venture or any other form of partnership with alleged terrorist fronts. Instead, both Defendants were third-party vendors to TCI, MCI, and Irancell. Huawei and ZTEC's more attenuated commercial relationships make it less plausible that they intended to support the IRGC's aims.

Plaintiffs acknowledge that they did not allege that Huawei and ZTEC were joint venturers with IRGC fronts, yet argue that this difference should not change the disposition of the JASTA analysis. (See, e.g., ZTEC Opp. at 35; see also Huawei Opp. at 2.) Plaintiffs argue that any differences in the "legal form" of the commercial relationship between Defendants and the IRGC fronts is immaterial because the ATA does not distinguish between being a contractual counterparty with a terrorist front and forming a joint venture with a terrorist front. (See, e.g., Huawei Opp. at 32 (emphasis omitted).) Although Plaintiffs are correct that a defendant need not form a joint venture with a terrorist front or terrorist group for ATA liability to attach, see generally Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842 (2d Cir. 2021), their argument misses the

mark.  I did not find in <u>Zobay</u> that MTN was culpable because it engaged with terrorists in a particular "legal structure." (<u>See</u> Huawei Opp. at 2 (arguing that primary difference between MTN's relationship with the IRGC fronts and Defendant's relationship is the "particular legal structure" through which each defendant supported the IRGC).)  Rather, because MTN decided to enter a joint venture with the IRGC fronts, I found that it aligned itself closely with the fronts, such that success for the IRGC fronts became success for MTN.  <u>Zobay I</u>, 695 F. Supp. 3d at 347.  The fact that MTN decided to enter such a close partnership with the fronts made it more plausible that MTN intended to support the IRGC.  Because Huawei and ZTEC's relationship is more attenuated, it is less likely they intended to further the goals of the IRGC.  As such, Plaintiffs have alleged less scienter here.

## 2. Sinister Circumstances around MTN Irancell

Second, as described at length in <u>Zobay I</u>, the circumstances surrounding MTN Irancell made it more plausible that MTN had the requisite scienter.  Plaintiffs alleged that MTN entered into this joint venture under a security agreement with IRGC fronts that mandated MTN "'cooperat[e]'" with the IRGC front's "'defensive, security, and political objectives.'"  <u>Id.</u> at 318 (quoting <u>Zobay</u> FAC at ¶¶ 941-42).  The agreement was signed "in the presence of one or more notorious IRGC terrorists."  <u>Id.</u> at 340 (citing <u>Zobay</u> FAC at ¶ 111).  Even after forming the joint venture, MTN continued to show its support of the IRGC:  MTN's Iran office, where MTN conducted business for MTN Irancell, was alleged to be "populated" with terrorist military officials, further indicating that it plausibly supported IRGC's terrorist aims.  <u>Id.</u> at 346 (quoting <u>Zobay</u> FAC at ¶¶ 111, 938, 976-77, 1029).

Huawei and ZTEC's interactions with the alleged IRGC fronts do not plausibly involve any equally suspicious contacts with the IRGC.  Nowhere are Huawei and ZTEC were alleged to

have any close connections with terrorists. To show culpability, Plaintiffs rely in part on their "information-and-belief" allegations that Huawei and ZTEC also signed agreements where they pledged to aid Iran's "defensive, security, and political" interests. (Huawei Opp. at 34-35; ZTEC Opp. at 35-36 n.19; see also Zobay SAC at ¶¶ 1061, 1064, 1174, 1177.) Yet because these allegations are alleged on information and belief, Plaintiffs "must support them by offering facts upon which that belief is founded." Brodie v. Green Spot Foods, LLC, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) (citation omitted). None of these allegations are "supported by specific facts asserting the basis for those beliefs." See Zobay I at 352 (citing Brodie, 503 F. Supp. 3d at 13.) Thus, these allegations have little weight.

### 3. Additional Scienter Allegations as to Huawei and ZTEC

Plaintiffs provide additional allegations to show that Huawei and ZTEC culpably supported the attacks. Yet, none of Plaintiffs' additional allegations support the conclusion that Huawei and ZTEC "consciously or culpably sought to make [the attacks against Plaintiffs] succeed." Ashley, 144 F.4th at 440.

Plaintiffs argue that Huawei was culpable because it had "direct awareness of the 'shadowy second floor in MTN's building that was populated by military intelligence officials.'" (See Huawei Opp. at 2 (quoting Zobay SAC at ¶ 911) (cleaned up).) This allegation is not enough to cure Plaintiffs' deficient scienter allegations. First, the cited allegation in the Zobay SAC only refers to MTN having a shadowy second floor and does not allege that Huawei had any knowledge about the floor, counter to Plaintiff's opposition brief (Zobay SAC at ¶ 911). Plaintiffs do not connect Huawei to MTN's second floor anywhere else in the three complaints. Second, even if properly alleged, it is far less culpable for a company to know about terrorist military officials on the floor of another company than it is to be the company with the terrorists on the floor.

16

Second, as to ZTEC, Plaintiffs rely on their conclusory allegations that ZTEC "supported the object of the conspiracy because it furthered the hostile security strategy of the Chinese Communist Party to force the United States out of . . . the Middle East by aiding the terrorist groups targeting Americans throughout the region."[9] (Zobay SAC at ¶ 1490; see also ZTEC Opp. at 36-37.) However, as I held in Lau with respect to the U.S. defendants, Plaintiffs' allegations about ZTEC's Chinese communist agenda, (see, e.g., Zobay SAC at ¶ 47), are both conclusory and "contradicted by other, more specific allegations 'suggesting that money—and not extremism— was the motivation behind defendants' actions.'" Lau, 2023 WL 9066883, at *8 n.7 (citing Bernhardt v. Islamic Republic of Iran, No. 18-2739, 2020 WL 6743066, at *6 (D.D.C. Nov. 16, 2020), aff'd, 47 F.4th 856 (D.C. Cir. 2022)).

Finally, Plaintiffs attempt to remedy their deficient scienter allegations by arguing that Huawei and ZTEC must have culpably supported the IRGC because they concealed their commerce with the Iranian businesses. (See, e.g., Huawei Opp. at 34.) This argument also fails. Plaintiffs do not plausibly allege that Defendants concealed their conduct because they wanted to ensure their assistance to the IRGC would "keep flowing for years after it would otherwise have been stopped" to further the IRGC's terrorist activities. (Zobay, D.E. # 123 at 14.) Instead, as I found in Zobay I with respect to Huawei's subsidiaries, this conduct was far more consistent with protecting Defendants "from government interference" and the IRGC terrorists "incidentally benefitted as a result." Zobay I, 695 F. Supp. 3d. at 353; see also Freeman v. HSBC Holdings PLC, 465 F. Supp. 3d 220, 232 (E.D.N.Y. 2020) (holding that Defendants did not knowingly and

---

[9] Plaintiffs make the same argument as to Huawei in the Zobay Complaint, (e.g., Zobay SAC at ¶ 47), but do not raise this in their Opposition brief, (see generally Huawei Opp.) Even if they had, the allegations would fail for the same reason as they do with ZTEC.

substantially assist in the commission of terror attacks, despite helping Iranian businesses conceal transactions that violate U.S. sanctions). Thus, the allegations of concealment do not alter my conclusion that Defendants were not sufficiently culpable.

Taking the allegations as a whole, Plaintiffs have not shown that Huawei or ZTEC "consciously or culpably sought to make" the attacks against Plaintiffs succeed. Even if Huawei and ZTEC had knowledge of their indirect role in the attacks, they are not plausibly alleged they "participated in [them] as something they wished to bring about." Taamneh, 598 U.S. at 498. Therefore, this side of the balancing act weighs toward dismissal. See Ashley, 144 F.4th at 440.

### B. Assistance and Nexus to the Attacks

Because Plaintiffs' allegations about scienter are weaker, their allegations about nexus must be stronger for Taamneh's "balancing" analysis to favor a finding of knowing and substantial assistance. However, Plaintiffs allege that Huawei and ZTEC provided less assistance than MTN did.

#### a. Afghanistan Attacks

First, Plaintiffs fail to connect Huawei and ZTEC's aid to the Afghanistan attacks. Plaintiffs allege that ZTEC and Huawei provided free goods as "protection payments" to terrorist groups, which provided the Afghani terrorists with an "important stream of financing to fund their terrorist attacks across the county." (Accord Lau AC at ¶ 707; see also, e.g., id. at ¶¶ 559, 567-68, 570, 574, 698-99, 709-10.) In Zobay II, I relied on allegations about protection payments to find that MTN supported the Plaintiffs' Afghanistan attacks. Zobay II, 2024 WL 647595, at *4-*6. Unlike with MTN, however, Plaintiffs here fail to plead their protection payment allegations as to ZTEC and Huawei with the required specificity. As I found in Lau with respect to ZTE's U.S. subsidiaries, the allegations about Huawei and ZTEC providing protection payments are "are either

conclusory or speculative." See Lau, 2023 WL 9066883, at *5. Indeed, Plaintiffs seem to concede this point by failing to address this argument in their opposition briefing and stating at oral argument that they are not relying on those allegations here. (Transcript of Nov. 12, 2025 Oral Argument at 35:2-5, 53:1-4.) Without these allegations, there is significantly less connecting Huawei and ZTEC to the Afghanistan attacks.

### b. Funds to IRGC Fronts

Second, as to both attacks, Plaintiffs allege that Huawei and ZTEC facilitated a steady flow of funds worth "hundreds of millions of dollars" to the IRGC fonts. (E.g., Zobay SAC at 18); (see also Huawei Opp. at 39; ZTEC Opp. at 35.) However, as conceded at oral argument, neither Defendant is plausibly alleged to have provided any money to the Iranian entities. (Transcript of Nov. 12, 2025 Oral Argument at 45:7-10, 55:18-23.) In fact, assuming Plaintiffs' allegations are true, Defendants would have only been on the receiving end of money from the Iranian entities in exchange for their goods and services. This is a significant difference from the allegations about MTN, whose "primary form of [] aid to the IRGC was money." Zobay I, 695 F. Supp. 3d. at 349.

### c. Important Telecommunications Equipment and Services

Lastly, Plaintiffs allege that Huawei provided telecommunication equipment and related services Iranian entities and that were "of particular importance" to the terrorists' operations and were foreseeably funneled to the terrorist entities that attacked Plaintiffs. (Accord Zobay I, 695 F. Supp. 3d at 348; see, e.g., Zobay SAC at ¶¶ 1008, 1020-24, 1102.) Plaintiffs also alleged that MTN provided technological goods and services that were important to terrorists, and in Zobay I, I found those allegations sufficient to show that MTN substantially aided Plaintiffs' attacks. Zobay I, 695 F. Supp. 3d at 351. Yet to outweigh the deficient intent allegations here, Plaintiffs need to have alleged that the goods and services provided by Huawei and ZTEC more substantially and

directly aided Plaintiffs' attacks compared to MTN. Plaintiffs provide a few additional allegations about ZTEC and Huawei to distinguish the telecommunications aid provided here from the aid MTN provided. However, none of Plaintiffs' additional allegations make it plausible that ZTEC or Huawei's aid was more connected to Plaintiffs' attacks.

Plaintiffs point to ZTEC's provision of the dual-use ZXMT monitoring system as a form of additional aid to Plaintiffs' attacks. Terrorists allegedly used this monitoring system to triangulate U.S. soldiers' positions and "monitor their communications," enhancing "their ability to execute successful attacks." (Zobay SAC at ¶¶ 1022-23.) However, Plaintiffs specify that the monitoring was used to aid attacks near Iran's borders. (Id. at ¶ 1022.) They do not allege specifically that any of the attacks at issue were carried out near Iran's borders nor that terrorists used any intelligence that was gained from Iran's borders. Without any concrete connection between the attacks and the monitoring system, this is just a claim that ZTEC "[gave] substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." Taamneh, 598 U.S. at 495. That is not sufficient to form a "discernable nexus [to] the attacks committed against Plaintiffs." Ashley, 144 F.4th at 444.

Plaintiffs' additional allegations about Huawei likewise fail. They claim that Huawei's role at Irancell included "overseeing parts of [MTN Irancell's] network," which once in 2009, involved Huawei "carr[ying] out government orders on behalf of its client, MTN Irancell, . . . to suspend text messaging and block the Internet phone service, Skype, which is popular among dissidents." (Zobay SAC at ¶ 1139 (internal quotation marks omitted).) However, similar to ZTEC's monitoring system, Plaintiffs provide no additional allegations to make it plausible that this one-time suspension in phone service, as dictated by Iran's second largest mobile phone network operator, (id. at ¶ 900), assisted Middle Eastern terrorism at all, not to mention assisted in

20

the commission of the attacks against Plaintiffs in Iraq, Afghanistan, and Syria that all took place at least two years after this event. Plaintiffs also do not provide any additional allegations about Huawei's role in overseeing parts of MTN's network that would connect Huawei's actions to any of the attacks at issue.

Therefore, because Plaintiffs' remaining allegations about ZTEC and Huawei's assistance fail, I find that ZTEC and Huawei are less connected to Plaintiff's attacks. As such, Plaintiffs fail to outweigh the diminished intent allegations with allegations of a stronger nexus.

### C. Pervasive and Systemic Aid

Alternatively, Plaintiffs fall back on the argument that ZTEC and Huawei's aid was sufficiently "pervasive, systemic, and culpable" to have plausibly aided each and every tort of the IRGC enterprise. (See Huawei Opp. at 39; ZTEC Opp. at 39-40.) When a concrete nexus to the terrorist attack at issue is lacking, a plaintiff may allege that a defendant's assistance to a terrorist group was so "pervasive, systemic, and culpable" that it suffices to establish liability for every attack by that group. Ashley, 144 F.4th at 445. This is a "high bar," id. at 445, because aiding and abetting is "'a rule of secondary liability for specific wrongful acts,'" id. at 448 (quoting Taamneh, 598 U.S. at 494). In Zobay I, I held that MTN met this high bar due to their "leadership role" in IRGC's scheme and provision of extraordinary aid, including "many millions of dollars in funding." See Zobay I, 695 F. Supp. 3d. at 348.

Yet ZTEC and Huawei's alleged conduct cannot be said to be similarly systemic or culpable. As I explained above, neither are plausibly alleged to have entered a joint venture with IRGC or IRGC fronts pursuant to an agreement with "militaristic-coded" language and neither is plausibly alleged to have provided any funds (in fact, they were at the receiving end of funds from TCI and Irancell), such that they were providing pervasive and systemic aid. Further, neither

Huawei nor ZTEC took on a leadership role akin to MTN, who allegedly "'represent[ed] the Iranian Shareholders as their purchasing agent,' and establish[ed] '[a]ll the procedures and processes around procurement.'" Id. at 329 (citing Zobay FAC at ¶¶ 935, 1007.) Without similar allegations, there is simply not enough to say that Huawei or ZTEC "join[ed] both mind and hand" with the IRGC to make the attacks possible." Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos, 605 U.S. 280, 293 (2025) (citation and internal quotation marks omitted). Therefore, the allegations are insufficient to hold ZTEC and Huawei responsible for "each and every" attack committed by the IRGC. Taamneh, 598 U.S. at 501.

## CONCLUSION

For the foregoing reasons, ZTEC and Huawei's motions to dismiss are GRANTED in full.

SO ORDERED.

Dated: March 20, 2026

Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon
United States District Judge

22