UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
STEPHANIE ZOBAY, et al.,

Plaintiffs,

-against-

MTN GROUP LIMITED, et al.,

Defendants.
--------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
21-cv-3503 (CBA) (VMS)

**AMON, United States District Judge:**

Defendant MTN Group Limited ("MTN") requests that I stay these proceedings and certify an interlocutory appeal to the Second Circuit pursuant to 28 U.S.C. § 1292(b) to attain clarity on four issues stemming from my Orders[1] denying Defendant's motions to dismiss. (ECF Docket Entry ("D.E.") # 152-1 at 3 ("MTN Mot."), # 193 at 5 ("MTN Supp.")); see Zobay v. MTN Grp. Ltd., 695 F. Supp. 3d 301 (E.D.N.Y. 2023) ("Zobay I"); (see also D.E. # 178 ("Zobay II").) Specifically, it argues that my reliance on two theories of personal jurisdiction is in tension with decisions of the United States District Court for the District of Columbia. (MTN Mot. at 9; MTN Supp. at 5-7.) It further contends my findings—that Plaintiffs stated claims for aiding-and-abetting liability under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333—implicate questions left unresolved by the Supreme Court's opinion in Twitter, Inc. v. Taamneh, 598 U.S. 471 (2023), and warrant receiving clear guidance on the applicable law from the Second Circuit before engaging in extended discovery and litigation practice. I decline to stay these proceedings and certify an interlocutory appeal because I believe these questions are the natural result of percolating case law, rather than the extraordinary circumstances courts are required to find in order to certify appeals under section 1292(b).

[1] I refer to the September 2023 and September 2024 orders collectively as my "Orders."

## BACKGROUND

### I. The Case

I presume familiarity with the factual assertions in this case, which have been recounted in my Orders, and provide only the background relevant to the instant motion. In February 2022, Plaintiffs filed their first amended complaint, alleging, inter alia, that MTN, a South African telecommunications company, aided and abetted certain terrorist groups committing terrorist attacks in Iraq and Afghanistan between 2011 and 2019. (See D.E. # 52 ("FAC")); Zobay I, 695 F. Supp. 3d at 314-20. In terms of Defendant's jurisdictional arguments in its motion to dismiss, I found that Plaintiffs alleged sufficient facts to allow the exercise of jurisdiction related to attacks because, as alleged, MTN's agents sourced embargoed U.S. technologies for Irancell, its joint venture with the Iran Electronic Development Company, and MTN used the U.S. financial system to bribe the Iranian government for an Irancell contract. Zobay I, 695 F. Supp. 3d at 327-34. I found these contacts related to the Iraq attacks because Plaintiffs alleged a sufficiently tight link between Iran's Islamic Revolutionary Guard Corps ("IRGC"), a known terrorist organization, and Irancell such that MTN's use of American technologies and funding were instrumental to the IRGC's coordination of the Iraq attacks. Id. at 333-34. Additionally, I found that Plaintiffs alleged that MTN expressly aimed its conduct toward the United States with respect to the Afghanistan attacks because MTN allegedly shut down its cell towers at the Taliban's request to facilitate the terrorist group's resistance of American-led coalition forces. Id. at 332-33.

In Zobay I, I allowed Plaintiffs' first count, aiding-and-abetting liability for the Iraq attacks, to proceed against MTN. I explained that "Plaintiffs must plead three statutory elements: (1) an injury arising from an act of international terrorism; (2) that the act was committed, planned, or authorized by a designated Foreign Terrorist Organization; and (3) that defendants aided or abetted

an act of international terrorism by knowingly providing substantial assistance." Id. at 335 (internal quotation marks and citation omitted). The first element was not disputed. Id. I found the second element was satisfied because Plaintiffs sufficiently attributed the attacks to coalitions of Hezbollah, the Qods Force of the IRGC, al-Qaeda, the Haqqani Force of the Taliban, and other terrorist groups. Id. at 335-36. Lastly, I found the third element was met under the framework set by Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983), and Twitter. Id. at 336. I found that Plaintiffs sufficiently pled general awareness because there was sufficient publicly available data suggesting that, at the time of the Irancell joint venture, the IRGC was looking to acquire U.S.-sourced technologies, which could advance its terroristic activities. Id. at 337-43. I also found Plaintiffs alleged sufficient facts to show that MTN knowingly provided substantial assistance because: (1) the active provision of U.S. technologies and dollars to Irancell constituted the active and knowing provision of routine services in an unusual way, and that those proceeds could directly assist in the terrorist attacks in question; and (2) the pervasive, substantial assistance MTN provided the IRGC "could plausibly assist each and every IRGC-led terrorist attack." Id. at 345-48 (citation omitted). This conclusion was bolstered by a consideration of the factors identified in Halberstam, under which I found that MTN provided a large amount of technologies and money to the IRGC over a long period of time, supporting secondary liability. Id. at 348-51.

After I issued Zobay I, MTN requested leave to seek interlocutory appeal. (D.E. # 132.) However, Plaintiffs explained they wanted to amend their complaint to add a claim for aiding-and-abetting liability for the Afghanistan attacks based on a theory parallel to the one I allowed to proceed in Count One. (D.E. # 136.) I directed Plaintiffs to file their second amended complaint and for the parties to brief the interlocutory appeal issue, and I stayed consideration of the interlocutory appeal certification until after deciding whether to dismiss Plaintiffs' additional

claim. (See Minute Entry dated Oct. 31, 2023 and Text Order dated May 13, 2024.) In September 2024, I denied MTN's motion to dismiss the fourth count of Plaintiffs' second amended complaint. See Zobay II at 14. I explained that Plaintiffs' allegations that MTN deliberately shut down its cell towers to benefit the Taliban's resistance of U.S.-led coalition forces sufficed to show knowing and substantial assistance of the Taliban's terrorist activities. Id. at 6-13. Following that Order, the parties filed supplemental briefs seeking interlocutory review of the Orders. (D.E. ## 193, 194, 195.)

## II. The Motions

MTN asks me to certify four issues for interlocutory appeal:[2]

(1) "[I]s a foreign company's participation in the purchase of a good that 'originated' from the United States—but not necessarily purchased within the United States—sufficient to establish personal availment" for the purposes of personal jurisdiction?

(2) Is the second element of ATA liability, general awareness, satisfied "when [a business] participates in a venture with significant legitimate activities, with business partners not regarded by the U.S. Government as affiliated with the IRGC or terrorism?"

(3) Is the third element of ATA liability, knowing and substantial assistance, satisfied via "participating in a commercial venture without an intent to aid terrorism and without dealing with groups perpetrating attacks"?[3] and

(4) "Is a defendant's foreign conduct 'expressly aimed' at the United States [for the purpose of personal jurisdiction] when the defendant allegedly provided support to terrorists that attack Americans, but did not share in those terrorists' objectives of harming Americans or the United States?"

[2] Technically, a § 1292(b) certification permits appellate review of the entire order, not just "the particular question[s] formulated by the district court." Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 205 (1996); accord Donohue v. Milan, 942 F.3d 609, 615 (2d Cir. 2019). This contrasts with certification of a question to a state supreme court, which is ordinarily thought to limit jurisdiction (by state statute) to the questions certified. See generally 17A Vikram David Amar, Fed. Prac. & Pro. Juris. § 4248 (3d ed. 2026).

[3] This is also phrased more generally as "considerations such as the role of a defendant's intent to assist the underlying terrorist attacks, what kind of acts suffice to establish a defendant's 'culpable participation' in the attacks, and what type of assistance is necessary to plausibly allege expansive liability of every one of a group's attacks" under Twitter. (MTN Supp. at 9.)

(MTN Mot. at 3; MTN Supp. at 5, 9-10.)[4] It argues that each of these four questions is a "controlling question[] of law" because an answer of "no" to any of them would justify dismissal of the counts against MTN, or at least "significantly affect the conduct of the action." (MTN Supp. at 3 (quoting In re Gen. Motors LLC Ignition Switch Litig., 427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019)); MTN Mot. at 5.) It also asserts that there is substantial ground for difference of opinion as to each of the four questions, citing supposed tensions with existing caselaw. (See, e.g., MTN Mot. at 7-9.) MTN argues that an immediate appeal will materially advance termination of this litigation because terminating certain, or all, of the claims would avoid the complexity of the allegations relating to years of activities involving multiple federal agencies and parsing the relationships between Iranian corporations and government entities. (Id. at 28-31.) Finally, MTN argues that interlocutory review is more warranted here because, in the Alien Tort Statute context, "the Second Circuit has 'urge[d] greater appellate oversight' of interlocutory orders than in an ordinary case" due to considerations of foreign policy. (MTN Mot. at 31-34 (quoting Balintulo v. Daimler AG, 727 F.3d 174, 187 (2d Cir. 2013)); D.E. # 153 ("MTN Rep.") at 19-20.)

Plaintiffs disagree as to each prong of § 1292(b). (D.E. # 154 ("Pl. Opp.") at 4; D.E. # 195 ("Pl. Supp.") at 4.) They argue that MTN's questions are not controlling because MTN assumes propositions contrary to the allegations in the complaints at issue, which is inappropriate at the motion to dismiss stage. (Pl. Opp. at 5-8; Pl. Supp. at 4.) Plaintiffs also assert that there is not substantial ground for disagreement because MTN points to isolated cases from other districts or decisions I already distinguished in my Orders. (Pl. Opp. at 9-21; Pl. Supp. at 8-10.) Plaintiffs argue that interlocutory appeal is inappropriate for claims relating to insufficient pleadings because of the possibility of amendment and that this case is not especially complex in terms of ATA cases

---

[4] The first three questions are worded in a slightly different manner on a subsequent page in MTN's brief. (See MTN Mot. at 5.) However, the minor semantic differences have no bearing on my analysis of the issues raised.

to warrant exceptional interlocutory appeal. (Pl. Opp. at 21-23.) Plaintiffs distinguish Balintulo because the Alien Tort Statute, which relies on the law of nations and applies to foreigners, poses greater foreign policy concerns than the ATA. (Id. at 23-25.)

**STANDARD OF REVIEW**

Under 28 U.S.C. § 1292(b), a district court may certify its order for interlocutory appeal if the court determines that (1) "such order involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "All three prongs of Section 1292(b) must be met for leave to be granted." DeSimone v. Select Portfolio Servicing, Inc., 786 F. Supp. 3d 509, 514 (E.D.N.Y. 2025). Because of the "basic policy of postponing appellate review until after the entry of a final judgment," Wausau Bus. Ins. Co. v. Turner Constr. Co., 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) (cleaned up), "[i]nterlocutory appeals are strongly disfavored in federal practice" and they are "not intended as a vehicle to provide early review of difficult rulings in hard cases." Adar Bays, LLC v. Aim Expl., Inc., 310 F. Supp. 3d 454, 456 (S.D.N.Y. 2018) (internal quotation marks omitted).

An order presents a "controlling question of law" if reversal on the question could result in the dismissal of the action or "significantly affect the conduct of the action." S.E.C. v. Credit Bancorp, Ltd., 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000). The question must be a "pure question of law," meaning that "the reviewing court could decide it quickly and cleanly without having to study the record." In re WorldCom, Inc., No. M-47 (HB), 2003 WL 21498904, *10 (S.D.N.Y. June 30, 2003) (internal quotation marks omitted). Second, a substantial ground for a difference of opinion may exist when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." Pen Am. Ctr., Inc. v. Trump,

No. 18-CV-9433, 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020) (quoting Whyte v. Wework Cos., Inc., No. 20-CV-1800, 2020 WL 4383506, at *2 (S.D.N.Y. July 31, 2020)). The mere presence of a disputed issue that is a question of first impression is not enough to demonstrate a substantial difference of opinion, Colon ex rel. Molina v. BIC USA, Inc., No. 00 CIV. 3666 (SAS), 2001 WL 88230, at *2 (S.D.N.Y. Feb. 1, 2001): it is the responsibility of the district court "to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute," In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (citation omitted); see also Mills v. Everest Reinsurance Co., 771 F. Supp. 2d 270, 273 (S.D.N.Y. 2009). Finally, "an immediate appeal from the order may materially advance the ultimate termination of the litigation" if the appeal would end the case, "advance the time to trial or shorten the trial." Mills, 771 F. Supp. 2d at 274. Ultimately, because interlocutory appeals are disfavored, "even when the elements of section 1292(b) are satisfied the district court retains 'unfettered discretion' to deny certification." Garber v. Off. of the Comm'r of Baseball, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (quoting National Asbestos Workers Med. Fund v. Philip Morris, Inc., 71 F. Supp. 2d 139, 162 (E.D.N.Y. 1999)).

## DISCUSSION

### I. First Question: Is a foreign company's participation in the purchase of a good that originated from the United States—but not necessarily purchased within the United States—sufficient to establish purposeful availment for the purposes of personal jurisdiction?

Plaintiffs argue none of the three § 1292(b) factors are met for the first question, and I agree that certification is not warranted. This question is not a controlling question of law because it is a hypothetical, meaning that an answer of "no" would not dictate that my holding on personal jurisdiction was wrong. See In re Bernard L. Madoff Inv. Secs. LLC, No. 22-CV-6561 (LGS), 2023 WL 395225, at *2 (S.D.N.Y. Jan. 25, 2023) (question regarding allegations of personal

jurisdiction was not controlling when question assumed findings contrary to those the Bankruptcy Court made). It is a hypothetical question for two reasons: first, Plaintiffs did allege that the goods were acquired within the United States (see, e.g., FAC ¶ 940 ("MTN Group acted as an international logistics and financial agent for the IRGC . . . [by] represent[ing] the Iranian Shareholders as their purchasing agent, and coordinat[ing] efforts to obtain vital U.S. technology . . . reaching into U.S. to acquire such gear"), ¶ 982 ("MTN Group . . . extract[ed] vast amounts of state-of-the-art American technologies from the U.S. marketplace on behalf of MTN Group's IRGC partners.")); second, I also based my holding on MTN's use of the American financial system for an Iranian bribe, Zobay I, 695 F. Supp. 3d at 331-32. Therefore, even if the Second Circuit were to answer "no" to MTN's question about purposeful availment, my decision on personal jurisdiction would not be reversed, but instead but would recast it in light of new controlling precedent. Thus, MTN disagrees with the factual record demonstrated by the "pleadings, affidavits, and supporting materials [that] support a finding of jurisdiction," but that is "not a question of law at all." McGraw-Hill Glob. Edu. Holdings, LLC v. Mathrani, 293 F. Supp. 3d 394, 400 (S.D.N.Y. 2018) (internal quotation marks and citation omitted).

Nor has MTN shown that there is a substantial ground for difference of opinion. It cites to Judge Moss's dismissal of a similar complaint in front of him for the proposition that reasonable jurists can and do have different opinions on this question. (MTN Mot. at 7-9.) Yet Judge Moss did not find, definitively, that plaintiffs there failed to state personal jurisdiction. Instead, he held that "plaintiffs have come close on personal jurisdiction" so there was "a substantial possibility that jurisdictional discovery may be able to clear that hurdle." See Tr. of Status Conf., Davis v. MTN Irancell Telecom. Servs. Co. et al., No. 22-CV-829-RDM (D.D.C. July 28, 2023), D.E. # 58 at 31:11-14. And even if Judge Moss's decision were directly contrary to mine, "the presence of

merely one or two cases, from outside this circuit, that come to a different conclusion is not sufficient to present a substantial ground for dispute. Holding otherwise would risk turning interlocutory appeals from a rare exception into the default rule." In re Brookhaven Nat'l Lab. Trichloroethylene Cases, 514 F. Supp. 3d 546, 551 (E.D.N.Y. 2021) (internal quotation marks omitted). Further, MTN cannot point to their disagreement with my application of Supreme Court precedent in personal jurisdiction cases as showing substantial grounds for dispute, (MTN Mot. at 9-12), because, "[a]though reasonable arguments could be made by both parties regarding the . . . application of [controlling] precedent, that is insufficient to show 'substantial ground for difference of opinion.'" Platinum Partners Value Arbitrage Fund L.P. v. Goldberg, No. 22-CV-6376-GHW, 2022 WL 4357548, at *3 (S.D.N.Y. Sept. 19, 2022) (quoting Picard v. Est. of Madoff, 464 B.R. 578, 582 (S.D.N.Y. 2011)). Because neither of the first two requirements for § 1292(b) certification are met, this first question does not warrant interlocutory review.

## II. Second Question: Is the second element of ATA liability, general awareness, satisfied when a business participates in a venture with significant legitimate activities, with business partners not regarded by the U.S. Government as affiliated with the IRGC or terrorism?

MTN argues that my decision on general awareness warrants interlocutory appeal because there is a substantial ground for difference of opinion on whether a company can be generally aware of assuming a role in terrorism if (1) the company had significant legitimate operations, and (2) the U.S. government's messaging did not indicate that the company's business partners were affiliated with terrorism. (MTN Mot. at 12.) First, MTN argues that it is a "novel and difficult question" whether general awareness can be satisfied when a defendant engaged with an entity with significant legitimate activities. (Id.) To support their argument, MTN argues that my finding that MTN was generally aware of its role in terrorist activities, despite recognizing Irancell's "significant legitimate operations," is in tension with opinions of the Second and D.C. Circuits,

particularly in Siegel v. HSBC N. Am. Holdings, Inc., 933 F.3d 217 (2d Cir. 2019), and Bernhardt v. Islamic Republic of Iran, 47 F.4th 856 (D.C. Cir. 2022). (MTN Mot. at 13-14.) MTN argues that there is a substantial ground for difference in opinion because Siegel and Bernhardt held that general awareness was not met when defendants were connected to companies that had extensive non-terrorist business activities. (Id.) MTN also argues that this is an issue of first impression because "no court of appeals has ever found the general-awareness requirement satisfied when a defendant engages with an entity with significant legitimate activities." (Id. at 14.) Second, MTN argues that my finding of general awareness is further undermined by the U.S. government, which did not affirmatively indicate that MTN's business partners were associated with terrorists. (MTN Mot. at 14-19 (citing, inter alia, Honickman v. BLOM Bank SAL, 6 F.4th 487, 502 (2d Cir. 2021)).) MTN cites to government sources stating that Iran used "deceptive tactics" to ensure that "no legitimate company" knew it was "being used to achieve Iran's illicit aims." (Id. at 15 (citing U.S. Dep't of Treasury, Press Release, Under Secretary Sigal Mandelker Speech before the Foundation for the Defense of Democracies (June 5, 2018)).) It argues that this question warrants interlocutory review because "[n]o court of appeals has found general awareness in such circumstances," presumably meaning circumstances where the U.S. government messaging undermines a finding of general awareness. (Id. at 19.)

At bottom, MTN "ha[s] not identified a substantial ground for a difference of opinion; [it] merely . . . seek[s] to repeat arguments made and rejected on Defendant's previous motion to dismiss." Shinano Kenshi Corp. v. Honeywell Int'l Inc., No. 22-CV-3704 (LGS), 2024 WL 245985, at *4 (S.D.N.Y. Jan. 23, 2024); see also Ralph Oldsmobile Inc v. Gen. Motors Corp., No. 99 Civ. 4567 (AGS), 2001 WL 55729, at *4 (S.D.N.Y. Jan. 23, 2001) ("Since [Defendant] offers only cases that the Court has already deemed distinguishable and unpersuasive, [Defendant] has

not established a substantial ground for difference of opinion."). MTN made these same arguments, relying on the same cases, in its initial briefing. (See, e.g., D.E. ## 82-1 at 45-49 (discussing U.S. messaging), 125 at 2-3 (discussing Irancell's legitimate operations).) In Zobay I, I found these cases distinguishable, and while my analysis may have involved "close and difficult questions about which courts could disagree," Republic of Colombia v. Diageo N. Am. Inc., 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007), "simply because a question is particularly difficult does not mean there is a difference of opinion" warranting interlocutory review. Mills, 771 F. Supp. 2d at 273.

Furthermore, on both issues, it is not truly a question of first impression. The Second Circuit has addressed cases in which banks were alleged to have less general awareness than MTN here, e.g., Siegel and Honickman, as well as situations in which general awareness was alleged under the ATA when there was sufficient public press about Hezbollah, such that general awareness was established, e.g., Kaplan. In Zobay I, I located the Plaintiffs' allegations between these lines of precedent so my finding on general awareness did not constitute a question of first impression because it was merely the application of the Second Circuit's existing guidance. Additionally, an "attorney's contention that one precedent rather than another should apply does not merit interlocutory appeal." Dorato v. Smith, 163 F. Supp. 3d 837, 880 (D.N.M. 2015). Because that is the case here, interlocutory review is not warranted for the second question.[5]

## III. Third Question: Is the third element of ATA liability, knowing and substantial assistance, satisfied via participating in a commercial venture without an intent to aid terrorism and without dealing with groups perpetrating attacks?

Plaintiffs argue that the third question does not present a "substantial ground for difference of opinion," and I agree. MTN provides two primary arguments to show that there is a substantial

[5] Plaintiff also argues that this does not present a controlling question of law. Because I find that there is no substantial difference of opinion, I do not need to reach the issue of whether the second question is a controlling question of law.

ground for difference of opinion: (1) my Zobay I opinion conflicts with other decisions on culpable participation; and (2) the Second Circuit has not yet weighed in about intent, directness, and conscious and culpable participation after Twitter. (MTN Mot. at 19-27.)

First, MTN argues that pre- and post-Twitter cases significantly conflict with my decision in Zobay I. With respect to post-Twitter cases, MTN states that "[o]ther courts have reached the legal conclusion that such a chain [with multiple steps between the defendant and the perpetrator of the attack] cannot establish a direct nexus between a defendant's acts and terrorist attacks." (Id. at 21.) MTN cites to decisions by the Sixth and Seventh Circuits. (Id. at 21-22 (citing Kemper v. Deutsche Bank AG, 911 F.3d 383 (7th Cir. 2018); Crosby v. Twitter, Inc., 921 F.3d 617 (6th Cir. 2019)).) Yet, as MTN concedes, Kemper discusses this in the context of a direct liability claim under 18 U.S.C. § 2333(a), and the cited portion of Crosby also discusses this issue as it pertains to direct liability. (See id. at 21-22 & n.6.)[6] Therefore, neither decision is sufficient to show conflicting rulings on the issue of culpable participation for aiding-and-abetting liability, and, in any event, out-of-circuit cases that may conflict with my Orders do not alone support the certification of an interlocutory appeal. See Ryan, Beck & Co. v. Fakih, 275 F. Supp. 2d 393, 398 (E.D.N.Y. 2003) (internal quotation marks and citations omitted).

MTN does not cite any post-Twitter JASTA cases for the proposition that there is conflicting authority on these questions of culpability; instead, it relies on the fact that the Supreme Court requested the views of the Solicitor General in Atchley. (MTN Mot. at 28 (citing AstraZeneca UK Ltd. v. Atchley, 144 S. Ct. 67 (2023)).) But the Supreme Court did not end up

[6] In any event, the facts in Crosby are distinguishable from the facts alleged in the instant case in terms of the JASTA aiding-and-abetting claim because in Crosby, the act of terror was not alleged to have been "committed, planned, or authorized" by a foreign terrorist organization, but rather by a "lone wolf" and "self-radicalized" individual who was merely inspired by a foreign terrorist organization which later expressed approval of the act. Crosby v. Twitter, Inc., 921 F.3d 617, 626 (6th Cir. 2019) (internal quotation marks omitted).

ruling on the merits in Atchley, instead vacating and remanding the case to the District of Columbia Circuit in light of Twitter. 144 S. Ct. 2675 (2024) (mem.). The District of Columbia Circuit, in turn, again found that culpable assistance had been alleged under the Supreme Court's Twitter standard. See Atchley v. AstraZeneca UK Ltd., 165 F.4th 592, 604-05 (D.C. Cir. 2026). Although a petition for a writ of certiorari has again been filed in that case and is currently pending, none of this shows a substantial ground for difference of opinion requiring interlocutory review from the Second Circuit in this case.

In addition, MTN also argues that my earlier opinion conflicts with pre-Twitter cases (MTN Mot. at 19.) It argues that, even before Twitter, courts dismissed aiding-and-abetting claims where the "defendant 'allegedly violated laws that were designed to prevent terrorist activity.'" (Id. at 23 (citing Wildman v. Deutsche Bank Aktiengesellschaft, No. 21-CV-04400 (HG) (RML), 2022 WL 17993076, at *16 (E.D.N.Y. Dec. 29, 2022), aff'd sub nom. Ashley v. Deutsche Bank Aktiengesellschaft, 144 F.4th 420 (2d Cir. 2025); O'Sullivan v. Deutsche Bank AG, 2019 WL 1409446, at *10 (S.D.N.Y. Mar. 28, 2019); Bernhardt, 47 F.4th at 862).) These cases stand for the proposition that violations of U.S. sanctions laws designed to prevent terrorism are not enough to show that a defendant was generally aware that they had taken a role in the attacks that killed or injured a plaintiff. These cases are not in conflict with Zobay I, which did not solely rely on violations of sanctions but instead found that MTN was alleged to have entered into a joint venture with IRGC fronts that were supporting anti-American terrorist proxies in the Middle East. Zobay I, 695 F. Supp. 3d at 341. In sum, MTN has not shown that there is conflicting authority on the question of culpable participation.[7]

[7] MTN also argues that the Supreme Court's recent decision in Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos, 605 U.S. 280 (2025) supports its case for interlocutory appeal because it supports MTN's limited reading of Twitter as restricting aiding and abetting liability. (D.E. # 227.) But, as Plaintiffs point out, Smith & Wesson is a different case. (D.E. # 228.) The Supreme Court held that Mexico did not adequately allege that Smith & Wesson

MTN also argues that "[Twitter] raises difficult questions about the availability of aiding-and-abetting liability" in diverse situations, and these questions would be an issue of first impression for the Circuit. (MTN Mot. at 19.) MTN argues that there are open questions of whether and when intentional aid is required, whether direct and extraordinary assistance lessens the required scienter, and if so, what "direct" means, what is sufficient to establish culpable participation, whether violating sanctions laws and funding commercial ventures is sufficient, the role of foreseeability for knowing and substantial awareness, and what type of allegations could allow for expansive liability such that a defendant could be liable for "aiding and abetting each and every attack" by a terrorist group. (MTN Mot. at 19-27.)

Of course, applying a multi-factored test and considering new Supreme Court precedent will be difficult, but that does not necessarily mean that there is substantial ground for difference of opinion. If it were, interlocutory appeals would be the norm, not the exception. Instead, the "difficult and of first impression" language "refers to situations in which Second Circuit input could help resolve disagreements among other Courts of Appeals." Garber, 120 F. Supp. 3d at 338. Because MTN does not argue this is the case here, its argument is not persuasive. In addition, since MTN moved for interlocutory appeal, the Second Circuit has weighed in on these questions in Ashley v. Deutsche Bank Aktiengesellschaft, 144 F.4th 420 (2d Cir. 2025), diminishing the need for interlocutory review.

---

aided and abetted Mexican cartel violence by selling guns to middlemen who in turn sold the guns to unnamed distributors, some of which (also unnamed) were "bad apple[s]" who sold to cartels in violation of Mexican law. Smith & Wesson, 605 U.S. at 288-89. All the while, Smith & Wesson treated "rogue dealers just the same as they do law-abiding ones—selling to everyone, and on equivalent terms," just like Twitter offered its platform to anyone on equivalent terms. Id. at 293-96. By contrast, Plaintiffs allege that MTN knew it was selling technologies to an Iranian joint venture which it knew would facilitate the activities of the IRGC and its proxies. Although Smith & Wesson would add another case to color any aiding and abetting decision, it does not provide substantial grounds for disagreement.

Finally, MTN argues that this case's foreign subject matter demands "'greater appellate oversight' of interlocutory orders." (MTN Mot. at 31 (quoting Balintulo, 727 F.3d at 187).) MTN cites a number of Alien Tort Statute cases in which courts found interlocutory appeal appropriate. (Id. at 32.) However, as Plaintiffs rightly point out, the ATA does not share all the same special concerns as the Alien Tort Statute. (Pl. Rep. at 24.) The Alien Tort Statute concerns foreign individuals' right to sue other foreign individuals for certain limited violations of the law of nations as defined by common law. Nestlé USA, Inc. v. Doe, 593 U.S. 628, 635-36 (2021). In Balintulo, the Second Circuit found interlocutory appellate review in ATS cases more appropriate, in part, because "the ATS places federal judges in an unusual lawmaking role as creators of federal common law," by defining a violation of the law of nations. 727 F.3d at 187. In ATA cases, by contrast, courts enforce the laws Congress has enacted. At least some of the special sensitivity of ATS cases the Second Circuit recognized is not applicable here where Congress has made the foreign policy determination to allow Americans to sue for companies' aiding and abetting of terrorist attacks.

Accordingly, none of Defendant's arguments persuade me that interlocutory appeal is warranted on the third question.[8]

## IV. Fourth Question: Is a defendant's foreign conduct expressly aimed at the United States for the purpose of personal jurisdiction when the defendant allegedly provided support to terrorists who attack Americans, but did not share in those terrorists' intentions to harm Americans or the United States?

MTN last argues that my finding of jurisdiction with respect to the Afghanistan attacks warrants interlocutory review because there are substantial grounds for disagreement on the question of whether action at a terrorist group's behest is expressly aimed at the United States

[8] MTN also argues, and Plaintiffs dispute, that this would materially advance the litigation. Because I find that there is no substantial ground for difference of opinion, I do not address this assertion.

when the defendant did not share the objective of terrorizing the United States. (MTN Supp. at 4.) This question does not warrant interlocutory review. MTN's fourth question is not a controlling question of law because it "can[not] be decided by the Second Circuit without significant reference to the record." In re Pall Corp., No. 07-CV-3359 (JS) (ARL), 2009 WL 4282081, at *2 (E.D.N.Y. Nov. 24, 2009). The Second Circuit held in In re Terrorist Attacks on Sept. 11, 2001 that certain defendants who maintained bank accounts for purported front charities that aided al Qaeda did not expressly aim their conduct at the United States but that other defendants who allegedly controlled those charities did expressly aim their conduct at the United States by directly supporting al Qaeda's terrorist activities. 714 F.3d 659, 675-79 (2d Cir. 2013). I held that Plaintiffs' allegations of MTN's direct provision of money to and shutting down cell towers for the Taliban was closer to the second In re Sept. 11, 2001 group than the first. Zobay I, 695 F. Supp. 3d at 332. MTN disagrees with that conclusion, but its disagreement is essentially a factual question of how direct is direct enough. Indeed, MTN lists "a host of factual questions unique to the tower-shutdowns-and-protection-payments theory" of jurisdiction, each of which the Second Circuit would have to dive deep into the record to answer. (D.E. # 194 at 2 (cleaned up).) MTN also argues that this is a controlling question of law because a magistrate judge considered and rejected an identical targeting theory in Cabera v. Black & Veatch Special Projects Corp., No. 19-CV-3833 (EGS) (ZMF), 2021 WL 3508091 (D.D.C. July 30, 2021) (report and recommendation),[9] as well as other terrorism decisions by the District Court for the District of Columbia and non-terrorism decisions in the Fourth and Seventh Circuits. (MTN Supp. at 5-7.) As stated above, "[d]isagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion." BIC USA, 2001 WL 88230, at *2. Therefore, these cases do not sway me towards finding that

---

[9] As MTN notes, the district court later vacated this report and recommendation as moot because the plaintiffs further amended their complaint. (MTN Supp. at 6 n.6 (citation omitted).)

there is conflicting authority over the fourth question. Thus, this fourth question is not a controlling question of law fit for interlocutory review.

Lastly, MTN has not shown there is substantial ground for disagreement on this question. MTN cites tension about how to apply In re Sept. 11, 2001, but disagreements on how to apply controlling precedent do not show there is a substantial ground for disagreement. Platinum Partners, 2022 WL 4357548, at *3. Further, the cases MTN cites are out-of-circuit and were distinguished in my First Order, and so do not warrant interlocutory review. In re Brookhaven, 514 F. Supp. 3d at 551; Ralph Oldsmobile, 2001 WL 55729, at *4. Because MTN has not shown that there is a substantial ground for disagreement on this fourth question, interlocutory review is not warranted.

## CONCLUSION

MTN has not shown that interlocutory review is appropriate under the § 1292(b) factors. Therefore, its motion for certification of interlocutory review and to stay proceedings is **DENIED**.

SO ORDERED.

Dated: September 25, 2026
Brooklyn, New York

/s/ Carol Bagley Amon

Carol Bagley Amon
United States District Judge